## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LEONARDO CACHO, RUBEN CHARLES, CARL CLARK, LINDA CREA, SR., BRANDON DUELING, ROXIE HARRIS, WENDER JEUDY, WANDA JONES, SEAN K. LEE, TINA MARIE, LETITIA MATTHEWS, ROBERT MCCUMSEY, RULESHA MCKINNEY, BIANCA ORTIZ, FRANCY DIAZ PEREZ, JAMES POWELL, ANTHONY PYLES, ELLERY RICHARD, JEFFREY ROBINSON, MARCIO SINELLI, THOMAS STEFANOPOULOS, BETTY WALTON, JENNIFER WALKER, HUEY WILLIAMS, and ANTONIO WYNN, Individually And On Behalf Of All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>v.<br><br><br>MERCEDES-BENZ USA, LLC, MERCEDES-BENZ AKTIENGESELLSCHAFT, and MERCEDES-BENZ GROUP AKTIENGESELLSCHAFT,<br><br>                      Defendants. | **JURY TRIAL DEMANDED**<br><br>**Case No.:** _____ |

## CLASS ACTION COMPLAINT

Plaintiffs Leonardo Cacho, Ruben Charles, Carl Clark, Linda Crea, Sr., Brandon Dueling, Roxie Harris, Wender Jeudy, Wanda Jones, Sean K. Lee, Tina Marie, Letitia Matthews, Robert McCumsey, Rulesha McKinney, Bianca Ortiz, Francy Diaz Perez, James Powell, Anthony Pyles, Ellery Richard, Jeffrey Robinson, Marcio Sinelli, Thomas Stefanopoulos, Jennifer Walker, Betty Walton, Huey Williams, and Antonio Wynn (collectively, "Plaintiffs") bring this action against Mercedes-Benz USA, LLC ("MBUSA"), Mercedes-Benz Aktiengesellschaft ("MBAG"), and Mercedes-Benz Group Aktiengesellschaft ("MBG") (together, "Mercedes" or "Defendants") based upon personal knowledge as to allegations specifically pertaining to Plaintiffs and, as to all other matters, upon the investigation of counsel.[1]

## I.    INTRODUCTION

1.    The ability of a vehicle to stop when the driver pushes on the brake pedal cannot be overstated – it is a vehicle's paramount safety feature. Properly functioning and defect free brakes are essential to the safety of the driver, passengers, occupants of other vehicles in proximity, and innocent bystanders. Despite this, Defendants failed to inform consumers of the potentially deadly braking system installed in certain 2004-2015 ML-Class, GL-Class, and R-Class vehicles ("Class Vehicles"),[2] and – despite issuing a recall – Defendants have no solution in place to repair or replace the defective braking systems in a timely manner and estimate a fix

---

[1]    Counsel's investigation includes an analysis of publicly available information, including Defendants' Manufacturer Communications to the National Highway Traffic Safety Administration ("NHTSA"), NHTSA documents and consumer complaints. Plaintiffs believe that a reasonable opportunity for discovery will reinforce all of these claims.

[2]    Since implementing the United States recalls on May 11, 2022, Defendants have expanded the range of vehicles recalled to include 2004-2015 models of different makes and/or models on a global scale. Discovery may reveal additional makes and/or models affect by the Brake Defect, Plaintiffs shall amend to include additional makes and/or models as necessary.

may take up to two years. To the contrary, Class members who rely upon these vehicles are being forced to park the vehicles and are expected to obtain an alternate means of transportation on their own, often at a significant cost.

2.     The braking systems installed in all Class Vehicles are plagued by a design defect that leads to partial or total loss of braking capability. The defect fails to prevent moisture from accumulating in the brake booster housing unit of the Class Vehicles, which causes corrosion resulting in reduced brake performance or brake failure ("Brake Defect" or "Defect").  This design Defect is uniform and common to all Class Vehicles, is a clear safety hazard that was within the exclusive knowledge of Defendants, and was never disclosed to any member of the Class prior to purchase.

3.     On information and belief, Defendants have at all times had actual knowledge that moisture introduced into the brake booster housing unit may be corrosive. More specifically, Defendants had actual knowledge of the design Defect since at least June 15, 2009, when Mercedes issued a Technical Service Bulletin ("TSB") to its network of dealers that warned of the danger corrosion may have on brake components in Mercedes vehicles, including Class Vehicles. Defendants knew or should have known of the design Defect much earlier due to pre-production testing, failure mode analysis, and reports by vehicle owners to authorized dealers, repair centers, and complaints to NHTSA. Nevertheless, Defendants chose to omit material information about the Brake Defect and not to disclose these problems to Plaintiffs and the Class, so that they could continue to profit from the sale of the Class Vehicles.  It was only in May of 2022 that Mercedes decided to conduct a safety recall of the Class Vehicles.

4.     The untimely and ineffective recall initiated by Defendants on May 11, 2022 (NHTSA Recall No. 22V-315, the "Recall"), which instructs vehicle owners to immediately stop driving their vehicles, is insufficient to remedy the harm caused

2

to Plaintiffs and members of the Class, who overpaid for their Class Vehicles at the point of purchase and are now deprived of the beneficial use of their Class Vehicles.

**URGENT: DO NOT DRIVE THIS VEHICLE**

An urgent safety recall has been issued for this vehicle. Use our VIN lookup tool to see if your vehicle is part of this recall.

If your vehicle is part of this recall, the manufacturer has recommended that **you stop driving this vehicle immediately.**

More information is available under

- NHTSA Recall Number 22V315000.

Indeed, Mercedes has acknowledged the severity of the Brake Defect by advising owners that they should "not to drive their vehicles until the remedy has been performed." The NHTSA database for the Class Vehicles warns users of the following:

5.     Defendant MBUSA "advises customers to stop driving the vehicle until the first inspection is performed." Yet Defendants delayed sending out the Owner Notifications Letter from May 27, 2022 to June 30, 2022. This delay caused additional loss of use and out-of-pocket expenses to Plaintiffs and members of the Class, including Plaintiffs Maadanian and Diaz who paid and are continuing to pay out-of-pocket for rental vehicles. Plaintiff Diaz has spent upwards of $4,000 on loaner vehicles since being informed of the Defect, and her local dealership has refused to pay for towing in order for her Class Vehicle to be inspected. Mercedes Roadside Assistance also failed to provide Plaintiff Diaz with towing for an inspection. Plaintiff Diaz requested reimbursement for the out-of-pocket expenses incurred to date on loaner vehicles but was informed by Defendant MBUSA that she could only recoup those expenses from her local dealership – when Plaintiff Diaz contacted her local dealership, she was informed that she could only recoup those expenses from Defendant MBUSA. As a result, Plaintiff Diaz and the Class are out of options and incurring more out-of-pocket expenses daily.

6.      Even after Defendants inspect the Class Vehicles, should the Class Vehicle suffer from advanced corrosion, the brake booster housing will need to be replaced when parts are available. As stated in Defendants' Remedy Instructions and TSB filed with NHTSA on May 28, 2022 ("Remedy Instructions"), "until then, the vehicle **<span style="color:red">MUST NOT</span>** be driven." Yet these parts may not be available for **two years** and during that time, Plaintiffs and members of the Class will have complete loss-of-use of their Class Vehicle.

7.      As the scope and severity of the Brake Defect became more apparent, on June 6, 2022, Mercedes instituted a global recall increasing the Recall to one million cars around the globe over concerns that the brakes could fail. This recall affects the ML and GL series of sport utility vehicles, both of which are popular with drivers in the United States, as well as the R-Class luxury minivans. Tests showed that advanced corrosion in the joint area of the brake booster housing in some of the vehicles could cause problems with the braking mechanism. Mercedes said it was recalling the cars for inspection, and had 'no way of knowing exactly how many would have corrosion damage.'

8.      Despite Defendants' knowledge, Defendants omitted information regarding the Brake Defect from all advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase. By failing to disclose the Brake Defect to consumers and by failing to correct the problem, delaying the recall, and otherwise failing to act reasonably, Defendants have put their own profits over the safety of Plaintiffs and the Class, who all purchased vehicles of a lesser standard, grade and quality than was represented.  The Class Vehicles do not meet ordinary and reasonable consumer expectations regarding the quality, durability, or value and are unfit for their intended purpose. Moreover, the Brake Defect seriously endangers drivers, passengers, and the general public.

9.      As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered damages, including, inter alia: (1) deprivation of the benefit of their bargain by overpaying for the Class Vehicles at the time of sale; (2) out-of-pocket expenses for past repair or replacement of the defective braking systems; (3) out-of-pocket expenses for rental or loaner vehicles; (4) costs for future repairs or replacements; (5) sale of their Class Vehicle at a loss; (6) loss of use of the Class Vehicles; (7) towing expenses; (8) costs of incorrectly diagnosed repairs or replacements; and/or (9) diminished value of their Class Vehicles.  Should Plaintiffs' demanded legal relief be unavailable or prove insufficient, Plaintiffs seek appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.   JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class, members of the Class (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

11.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction and have purchased vehicles from Defendant MBUSA.

12.     This Court has personal jurisdiction over Defendant MBUSA, which has its principal place of business in this district at One Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

13.     This Court also has personal jurisdiction over each Defendant because Defendants are found, have agents, transact substantial business in this District, and because some or all of the actions giving rise to the complaint, including decisions associated with the faulty braking system, failure to inform customers, and failure to take action to remedy the harm caused by these acts and omissions took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

14.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants have marketed, advertised, sold, and/the Class Vehicles within this District through numerous Mercedes dealers doing business in the District. Defendants' actions have caused harm to Class members, including Plaintiffs, and for the reasons above, venue is proper.

## III.    PARTIES

### PLAINTIFFS

15.     Plaintiff, Leonardo Cacho is a resident and citizen of Cook County, Illinois. Cacho is the owner of a 2006 Mercedes-Benz R350-Class which has the Brake Defect (for purposes of Cacho's allegations, the "Class Vehicles"). Through Cacho's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Cacho relied, and which was a primary reason he purchased Mercedes R Class vehicles. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Cacho. Cacho would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

16.     Cacho had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the

contrary, before acquiring the Class Vehicle, Cacho viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Cacho and consumers. Cacho would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Cacho's Class Vehicle has diminished.

17. Plaintiff, Ruben Charles is a resident and citizen of Camden County, New Jersey. Charles is the owner of a 2008 Mercedes-Benz R350 which has the Brake Defect (for purposes of Charles's allegations, the "Class Vehicles"). Through Charles's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Charles relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Charles. Now that MBUSA has issued a "Stop Drive Notice," Charles is left without a vehicle to drive at all. Charles would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

18. Charles had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Charles viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Charles and consumers. Charles would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material

information about the Brake Defect and as a result, the value of Charles's Class Vehicle has diminished.

19.     Plaintiff Carl Clark is an individual and is a resident of Cuyahoga County, Ohio. Clark is the owner of a Class Vehicle, specifically, a 2012 Mercedes-Benz GL 450 (the purposes of Clark's allegations, the "Class Vehicle"). Through Clark's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Clark relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Clark.    Clark would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

20.     Clark had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Clark viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle.  Defendants concealed the existence of the Brake Defect from Clark and consumers. Clark would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Clark's Class Vehicle has diminished.

21.     Plaintiff, Lindy Crea, Sr. is a resident and citizen of Broome County, New York. Crea is the owner of a 2010 Mercedes-Benz ML350 which has the Brake Defect (for purposes of Crea's allegations, the "Class Vehicles"). Through Crea's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety,

upon which Crea relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Crea. Now that MBUSA has issued a "Stop Drive Notice," Crea is left without a vehicle to drive at all. Crea would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

22.    Crea had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Crea viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Crea and consumers. Crea would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Crea's Class Vehicle has diminished.

23.    Plaintiff, Brandon Dueling is a resident and citizen of Boulder County, Colorado. Dueling is the owner of a 2009 Mercedes-Benz ML320 which has the Brake Defect (for purposes of Dueling's allegations, the "Class Vehicles"). Through Dueling's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Dueling relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Dueling. Now that MBUSA has issued a "Stop Drive Notice," Dueling is left without a vehicle to drive at all. Plaintiff

would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

24.     Dueling had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Dueling viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Dueling and consumers. Dueling would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Dueling's Class Vehicle has diminished.

25.     Roxie Harris is a resident and citizen of Riverside County, California. Harris is the owner of a 2006 Mercedes-Benz R350 which has the Brake Defect (for purposes of Harris's allegations, the "Class Vehicles"). Through Harris's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Harris relied, and which was a primary reason she purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Harris. Now that MBUSA has issued a "Stop Drive Notice," Harris is left without a vehicle to drive at all. Harris would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

26.     Harris had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Harris viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and

reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Harris and consumers. Harris would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Harris's Class Vehicle has diminished.

27.    Plaintiff, Wender Jeudy is a resident and citizen of Cobb County, Georgia. Jeudy is the owner of a 2008 Mercedes-Benz R-Class which has the Brake Defect (for purposes of Jeudy's allegations, the "Class Vehicles"). Through Jeudsy's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Jeudy relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Jeudy. Jeudy would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

28.    Jeudy had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Jeudy viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Jeudy and consumers. Jeudy would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Jeudy's Class Vehicle has diminished.

29.    Plaintiff, Wanda Jones is a resident and citizen of Essex County, New Jersey. Jones is the owner of a 2008 Mercedes-Benz GL450 which has the Brake Defect (for purposes of Jones's allegations, the "Class Vehicles"). Through Jones's

exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Jones relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Jones. Now that MBUSA has issued a "Stop Drive Notice," Jones is left without a vehicle to drive at all. Jones would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

30.      Jones had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Jones viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Jones and consumers. Jones would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Jones's Class Vehicle has diminished.

31.      Plaintiff, Sean K. Lee is a resident and citizen of Utah County, Utah. Lee is the owner of a 2008 Mercedes-Benz ML-Class which has the Brake Defect (for purposes of Lee's allegations, the "Class Vehicles"). Through Lee's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Lee relied, and which was a primary reason he purchased the Mercedes ML Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives

disclose the Brake Defect to Lee. Lee would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

32.     Lee had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Lee viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Lee and consumers. Lee would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Lee's Class Vehicle has diminished.

33.     Plaintiff, Tina Marie is a resident and citizen of Pitt County, North Carolina. Marie is the owner of a 2014 Mercedes-Benz G-Class which has the Brake Defect (for purposes of Marie's allegations, the "Class Vehicles"). Through Marie's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Marie relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Marie. Marie would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

34.     Marie had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Marie viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Marie and consumers. Marie would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material

information about the Brake Defect and as a result, the value of Marie's Class Vehicle has diminished.

35.     Plaintiff, Letitia Matthews is a resident and citizen of Lamar County, Georgia. Matthews is the owner of a 2009 Mercedes-Benz GL 450 which has the Brake Defect (for purposes of Matthews's allegations, the "Class Vehicles"). Through Matthews's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Matthews relied, and which was a primary reason she purchased the Mercedes GL vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Matthews. Now that MBUSA has issued a "Stop Drive Notice," Matthews is left without a vehicle to drive at all. Matthews would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

36.     Matthews had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Matthews viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Matthews and consumers. Matthews would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Matthews's Class Vehicle has diminished.

37.     Plaintiff, Robert McCumsey is a resident and citizen of Orange County, California. McCumsey is the owner of a 2012 Mercedes-Benz ML350 which has the Brake Defect (for purposes of McCumsey's allegations, the "Class Vehicles"). Through McCumsey's exposure to Mercedes, he was aware of Mercedes's uniform

and pervasive marketing messages of superior German engineering, dependability, and safety, upon which McCumsey relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to McCumsey. Now that MBUSA has issued a "Stop Drive Notice," McCumsey is left without a vehicle to drive at all. Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

38.     McCumsey had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, McCumsey viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from McCumsey and consumers. McCumsey would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of McCumsey's Class Vehicle has diminished.

39.     Plaintiff, Rulesha McKinney is a resident and citizen of Harford County, Maryland. McKinney is the owner of a 2012 Mercedes-Benz ML-350 which has the Brake Defect (for purposes of McKinney's allegations, the "Class Vehicles"). Through McKinney's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which McKinney relied, and which was a primary reason she purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect

to McKinney. McKinney would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

40.     McKinney had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, McKinney viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from McKinney and consumers. McKinney would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of McKinney's Class Vehicle has diminished.

41.     Plaintiff, Bianca Ortiz is a resident and citizen of Hudson County, New Jersey. Ortiz is the owner of a 2010 Mercedes-Benz GL350 which has the Brake Defect (for purposes of Ortiz's allegations, the "Class Vehicles"). Through Ortiz's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Ortiz relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Ortiz. Now that MBUSA has issued a "Stop Drive Notice," Ortiz is left without a vehicle to drive at all. Ortiz would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

42.     Ortiz had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Ortiz viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and

reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Ortiz and consumers. Ortiz would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Ortiz's Class Vehicle has diminished.

43.     Plaintiff Francy Diaz Perez  is an individual residing in Cape Coral, Florida. Perez purchased a pre-owned 2012 Mercedes-Benz GL450 (for purposes of Perez's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2019 from Avin Enterprises, Inc. in Tampa, Florida. At the time, Perez reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

44.     Perez has experienced a change in the brake pedal feel and diminished braking capability. Perez brought her Class Vehicle to the Mercedes-Benz of Fort Myers, Florida and spoke with Dena Judah, a Service Advisor, who informed her that there is currently no solution for the Recall. Plaintiff then contacted 1 (888) 548-8514 and spoke with a Mercedes Representative who informed Perez that her Class Vehicle is impacted by the Recall. Perez was informed that she would have to pay out-of-pocket for a loaner vehicle until the Class Vehicle could be examined in multiple rounds of inspections and Defendants have so far refused to reimburse her expenses. Perez proceeded to rent a loaner vehicle for $802.50 until June 8, 2022. On June 3, 2022, having not received an Owner Notification Letter, Perez again called 1 (888) 548-8514. A Mercedes Representative informed Perez that the Owner Notification Letter would be delayed until late June. Because of Defendants' delay, Perez has had to continue renting loaner vehicles. Perez then paid $1,565.43 out-of-pocket to extend her loaner vehicle until June 22, 2022.

45.     Perez has spent upwards of $4,000 on loaner vehicles since being informed of the Defect, and her local dealership has refused to pay for towing in

order for her Class Vehicle to be inspected. Perez requested reimbursement for the out-of-pocket expenses incurred to date on loaner vehicles but was informed by Defendant MBUSA that she could only recoup those expenses from her local dealership – when Perez contacted her local dealership, she was informed that she could only recoup those expenses from Defendant MBUSA. Defendants continue to refuse to provide a loaner, pay for towing, or reimburse Perez for her out-of-pocket expenses despite informing her that her Class Vehicle is unsafe to drive.

46.     Perez had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Perez viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Perez and consumers. Perez would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Perez's Class Vehicle has diminished.

47.     Plaintiff James Powell is an individual and is a resident of Lake County, Indiana. Powell is the owner of a Class Vehicle, specifically, a 2007 Mercedes-Benz GL 450 (the purposes of Plaintiff's allegations, the "Class Vehicle"). Through Powell's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Powell relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Powell.  Powell would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

48.     Powell had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Powell viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle.  Defendants concealed the existence of the Brake Defect from Powell and consumers. Powell would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Powell's Class Vehicle has diminished.

49.     Plaintiff Anthony Pyles is an individual and is a resident of Milwaukee County, Wisconsin. Pyles is the owner of a Class Vehicle, specifically, a 2009 Mercedes-Benz ML 350 (the purposes of Pyles's allegations, the "Class Vehicle"). Through Pyles's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Pyles relied, and which was a primary reason she purchased the Mercedes ML Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Pyles. Pyles would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

50.     Pyles had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Pyles viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle.  Defendants concealed the existence of the Brake Defect from Pyles and consumers. Pyles would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material

information about the Brake Defect and as a result, the value of Pyles's Class Vehicle has diminished.

51.   Plaintiff Ellery Richard is an individual and is a resident of Tarrant County, Texas. Richard is the owner of a Class Vehicle, specifically, a 2011 Mercedes-Benz GL 550 (the purposes of Richard's allegations, the "Class Vehicle"). Through Richard's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Richard relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Richard. Richard would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

52.   Richard had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Richard viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle.  Defendants concealed the existence of the Brake Defect from Richard and consumers. Richard would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Richard's Class Vehicle has diminished.

53.   Plaintiff Jeffrey Robinson is an individual residing in Vineland, New Jersey. Robinson purchased a pre-owned 2010 Mercedes-Benz GL450 (for purposes of Robinson's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2022 from A. Estates Inc. in Vineland, New

Jersey. At the time, Robinson reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

54.     Robinson had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Robinson viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Robinson and consumers. Robinson would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Robinson's Class Vehicle has diminished.

55.     Plaintiff, Marcio Sinelli is a resident and citizen of Orange County, Florida. Sinelli is the owner of a 2007 Mercedes-Benz ML Class  as well as a 2012 Mercedes-Benz ML Class)—both of which have the Brake Defect (for purposes of Sinelli's allegations, the "Class Vehicles"). Through Sinelli's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Sinelli relied, and which was a primary reason he purchased Mercedes ML Class vehicles. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Sinelli. Now that MBUSA has issued a "Stop Drive Notice," Plaintiff is left without a vehicle to drive at all. Sinelli would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

56.     Sinelli had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Sinelli viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and

reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Sinelli and consumers. Sinelli would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Sinelli's Class Vehicle has diminished.

57.    Plaintiff Thomas Stefanopoulos is an individual residing in Williamstown, New Jersey. Stefanopoulos purchased a pre-owned 2008 Mercedes-Benz ML550 (for purposes of Stefanopoulos's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2020 from J&S AutoHaus in New Jersey. At the time, Stefanopoulos reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle. Stefanopoulos has experienced a change in the brake pedal feel.

58.    Stefanopoulos had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Stefanopoulos viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Stefanopoulos and consumers. Stefanopoulos would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Stefanopoulos's Class Vehicle has diminished.

59.    Plaintiff, Jennifer Walker is a resident and citizen of the Claiborne Parish, Louisiana. Walker is the owner of a 2011 Mercedes-Benz GL-Class which has the Brake Defect (for purposes of Walker's allegations, the "Class Vehicles"). Through Walker's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Walker relied, and which was a primary reason she purchased

the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Walker. Now that MBUSA has issued a "Stop Drive Notice," Walker is left without a vehicle to drive at all. Walker would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

60.    Walker had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Walker viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Walker and consumers. Walker would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Walker's Class Vehicle has diminished.

61.    Plaintiff, Betty Walton is a resident and citizen of Solano County, California. Walton is the owner of a 2007 Mercedes-Benz GL-Class which has the Brake Defect (for purposes of Walton's allegations, the "Class Vehicles"). Through Walton's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Walton relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Walton. Walton would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

62.    Walton had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Walton viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Walton and consumers. Walton would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Walton's Class Vehicle has diminished.

63.    Plaintiff, Huey Williams is a resident and citizen of Forrest County, Mississippi. Plaintiff is the owner of a 2011 Mercedes-Benz R350 which has the Brake Defect (for purposes of Williams's allegations, the "Class Vehicles"). Through Williams's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Williams relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Williams. Now that MBUSA has issued a "Stop Drive Notice," Williams is left without a vehicle to drive at all. Williams would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

64.    Williams had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Williams viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Williams and consumers. Williams would not have purchased the Class

Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Williams's Class Vehicle has diminished.

65.    Plaintiff, Antonio Wynn is a resident and citizen of Middlesex County, New Jersey. Wynn is the owner of a 2012 Mercedes-Benz GL450 which has the Brake Defect (for purposes of Wynn's allegations, the "Class Vehicles"). Through Wynn's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Wynn relied, and which was a primary reason he purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to Wynn. Now that MBUSA has issued a "Stop Drive Notice," Wynn is left without a vehicle to drive at all. Wynn would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

66.    Wynn had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Wynn viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Wynn and consumers. Wynn would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Wynn's Class Vehicle has diminished.

## DEFENDANTS

67.    Defendant MBG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. In February 2022, the company was

renamed to "Mercedes-Benz Group AG" from "Daimler AG." MBG is one of the largest automobile manufacturers in the world and is in the business of designing, developing, testing, manufacturing, and selling automobiles. In 2021, MBG was the second-largest German automaker and the sixth-largest worldwide by production. MBG trades on Xetra, the reference market for exchange trading in Germany, under the ticker "MBG."

68.    MBG at all relevant times acted through its operating subsidiaries MBAG and MBUSA (which is headquartered in Georgia) in order to manage its car and van business worldwide and in the United States. Class Vehicles owned by members of the Class residing in Georgia were manufactured and/or designed by MBG specifically for the U.S. market and consistent with U.S. regulations.

69.    Defendant MBAG was created in November 2019, when MBG announced that Mercedes-Benz, up until that point a company marque, would be spun off into a separate wholly-owned subsidiary called "Mercedes-Benz AG." MBAG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. MBAG is a subsidiary of MBG that manages the Mercedes-Benz car and van business worldwide. During the manufacturing and sales of the Class Vehicles in the 2006-2012 period, MBG and MBAG operated as one entity under the name "Daimler AG."

70.    MBAG designs, manufactures, and distributes Mercedes vehicles in the United States through its national distributor, MBUSA (which is headquartered in Georgia), including in Georgia. MBAG directs the activities of other subsidiaries of MBG in the United States in order to maximize profits for MBG and maximize sales of MBUSA, including through advertising subsidieries.

71.    Defendant MBUSA is a corporation headquartered in Sandy Springs, Georgia, within the Northern District of Georgia. MBUSA is a wholly owned U.S. subsidiary of MBAG, and it engages in business activities in furtherance of the

interests of MBAG and MBG, including the advertising, marketing and sale of Mercedes automobiles nationwide. Until the 2019 spinoff of MBAG, MBUSA operated under MBG f/k/a Daimler AG.

72.     At all relevant times, MBUSA acted as an authorized agent, representative, servant, employee, and/or alter ego of MBG and MBAG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Mercedes vehicles in the United States, including substantial activities that occurred within this jurisdiction.

73.     At all times relevant to this action, Defendants manufactured, distributed, sold, and warranted the Class Vehicles under the Mercedes brand name throughout the United States. Defendants and/or their agents designed, manufactured, and/or installed braking systems with the Brake Defect in the Class Vehicles. Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, and other promotional materials relating to the Class Vehicles, and all materials that were available at the point of sale.

## IV.   FACTUAL ALLEGATIONS

### A.   Mercedes Advertises Its Vehicles As "The Best Or Nothing," And Represents That Its Vehicles Are Safe And Reliable.

74.     Defendants manufacture vehicles sold under the Mercedes brand throughout the United States. Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

75.     At all times relevant to this action, Defendants marketed the Class Vehicles as having the highest quality, being the most durable, and maintaining the best resale value of any vehicles on the road.  Mercedes uses tag lines such as "state-

27

of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," and encourages consumers to buy "the best" vehicle on the market (i.e., a Mercedes).

76.    As a result of this extensive and pervasive marketing, the Mercedes name in and of itself has come to represent luxury and prestige, and for owners of Mercedes vehicles, the three-pointed star is a symbol of their success.

77.    During the period in which the Class Vehicles were manufactured, in each of its 2007-2012 Annual Reports MBG stated:

> We invented the automobile – now we are passionately shaping its future. As a pioneer of automotive engineering, we feel inspired and obliged to continue this proud tradition with groundbreaking technologies and high-quality products. Our philosophy is clear: We give of our best for customers who expect the best – and we live a culture of excellence that is based on shared values. Our corporate history is full of innovations and pioneering achievements; they are the foundation and ongoing stimulus for our claim to leadership in the automotive industry.

78.    In contrast to Mercedes's marketing campaign, the Class Vehicles are equipped with defectively designed braking systems that caused Defendants to issue a stop drive order, may fail and result in partial or total loss of braking capability, and which create an inherently dangerous safety risk with potentially disastrous consequences for Plaintiffs and members of the Class. Defendants knew or should have known of the Brake Defect but failed to rectify it.

**B.    <u>Mercedes Knew About The Brake Defect But Has Failed To Correct The Brake Defect.</u>**

79.    Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and members of the Class the Brake Defect in the Class Vehicles even though Defendants knew or should have known of design defects in Class Vehicles if Defendants had adequately tested the braking systems in the Class Vehicles.

80.    Knowledge and information regarding the Brake Defect was in the exclusive and superior possession of Defendants and their dealers. That information was not provided to Plaintiffs and members of the Class. Based on pre-production testing, basic brake systems tests and validation, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, consumer complaints to the NHTSA, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles and fraudulently concealed the Brake Defect and its safety risk from Plaintiffs and members of the Class. Defendants knew, or should have known, that the Brake Defect was material to owners of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Class before they purchased Class Vehicles.

1.    Defendants' Internal Testing

81.    Defendants had actual knowledge of the Brake Defect based on their internal pre-production testing and quality control mandates.  To validate for safety, Defendants perform crash tests, brake systems tests and validation, and extreme weather testing on the braking systems, among other things, to ensure that the brakes in the Class Vehicles meet regulatory requirements.

2.    Customer Complaints Made to Defendants and NHTSA

82.    Defendants' dealerships provide Defendants with early knowledge of defects, including the Brake Defect, through the reporting of customer complaints and warranty claims.  Defendants' employees closely monitor internal databases containing customer complaints and warranty claims to identify, track, and address emerging problems from design and engineering standpoints, among others.

83.    Defendants' engineering and marketing departments likewise routinely monitor public sources of competitor data, like the NHTSA customer complaint

database, to track and compare problems with components on other manufacturers' products.

84.    Defendants have and continue to be under a legal obligation under federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

85.    Notwithstanding Defendants' exclusive and superior knowledge of the Brake Defect, and associated risks to safety, Defendants failed to disclose the Brake Defect to consumers at the time of purchase of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Brake Defect.

86.    Defendants also knew about the Brake Defect through monitoring NHTSA complaints identifying the Brake Defect, below is a sampling of these complaints:

NHTSA ID Number:            10202934
Incident Date:               January 2, 2007
Added to NHTSA Database:     September 13, 2007
Consumer Location:           SAN JOSE, CA
Vehicle Type:                2007 Mercedes-Benz GL450
VIN:                         4JGBF71E77A****

TL*THE CONTACT OWNS A 2007 MERCEDES BENZ GL450. THE CONTACT HEARD A SQUEAKING NOISE WHEN HE DEPRESSED THE BRAKE PEDAL AND THE STOPPING DISTANCE INCREASED. THE DEALER WAS UNABLE TO DIAGNOSE THE CAUSE OF FAILURE, HOWEVER, THEY GRINDED THE EDGES OF THE BRAKE PADS TO REDUCE THE SQUEAKING NOISE. THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 4,000 AND CURRENT MILEAGE WAS 6,600. THE DEALER RECOMMENDED CHAMFERING THE BRAKE PADS TO ALLEVIATE THE NOISE. THE DEALER STATED VEHICLE LOW ON OIL. UPDATED 09/2807 *TR

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••

NHTSA ID Number:            10220937
Incident Date:               February 18, 2008
Added to NHTSA Database:     March 12, 2008
Consumer Location:           SACRAMENTO, CA

Vehicle Type:                    2007 Mercedes-Benz GL450
VIN:                             4JGBF71E07A****

ON FEBRUARY 18, 2008 AT APPROXIMATELY 3:30 PM I WAS
INVOLVED IN AN MVA IN WHICH I STRUCK THE CAR IN
FRONT OF ME AT CONSIDERABLE SPEED. THIS CAUSED
CONSIDERABLE DAMAGE TO MY CAR (2007 MERCEDES
GL450) WITH NO AIR BAG DEPLOYMENT. DURING THE
ATTEMPT AT STOPPING I FELT THE BRAKE PEDAL BECOME
MUSHY AND BE INEFFECTIVE. AT FIRST THE BRAKES
GRABBED STRONG AND THEN LET LOOSE WITH THE
EVENTUAL COLLISION. AFTER CONSULTING WITH AN
INDEPENDENT MERCEDES MECHANIC, IT WAS SUGGESTED
THAT THIS BRAKE BEHAVIOR COULD BE EXPLAINED BY AN
ANTI-LOCKING BRAKE (ABS) SENSOR FAILURE. THIS
WOULD ACCOUNT FOR THE RELEASE OF THE BRAKES
(POSSIBLE DETECTION OF SKID) BUT ALSO THE FALSE
DATA REACHING THE CENTRAL COMPUTER WITH AN
ERRONEOUS SPEED, THUS DISABLING THE AIRBAGS. I
HAVE BEEN IN CONTACT WITH MERCEDES BENZ OR NORTH
AMERICA WHICH HAS YIELDED NO INSPECTION OR
RESOLUTION. I HAVE BEEN ASKING FOR ONE OF THEIR
FIELD ENGINEERS TO EXAMINE THE CAR AND SEE IF THE
ABS SENSOR IS RESPONSIBLE FOR THE POSSIBLE BRAKE
FAILURE. ALTHOUGH THE CRASH MAY STILL BE MY
DRIVER ERROR, I DON'T FEEL COMFORTABLE REPAIRING
THE CAR AND GIVING IT BACK TO MY WIFE FOR
TRANSPORTATION OF THE FAMILY. HAS AN ABS SENSOR
FAILURE BEEN REPORTED FOR THIS MODEL BEFORE? *TR

NHTSA ID Number:                 10263214
Incident Date:                   March 21, 2009
Added to NHTSA Database:         March 27, 2009
Consumer Location:               DARIEN, CT
Vehicle Type:                    2008 Mercedes-Benz ML-Class
VIN:                             4JGBB86E38A****

IT WAS 6:30 IN THE MORNING AND I WAS PULLING INTO MY
GYM'S PARKING LOT. AS I ATTEMPTED TO BRAKE, THE CAR
CONTINUED TO ACCELERATE. I KEPT PUMPING ON THE
BRAKE ONLY TO HAVE THE CAR MAKE A GRINDING SOUND
AS IT CONTINUED TO ACCELERATE (AS IF IT WERE
RESISTING MY ATTEMPTS TO STOP IT). EVENTUALLY, AND
THANKFULLY BEFORE IT HIT THE BUILDING, THE CAR
STALLED TO A STOP. THE CAR ACTUALLY ASCENDED 3
WOODEN PORCH STEPS AND HIT INTO A WOODEN PORCH
COLUMN BEFORE STOPPING. IT WAS A VERY EARLY
SATURDAY MORNING. HAD I PULLED INTO THIS DRIVEWAY
MID MORNING, ON THIS SATURDAY (A TIME WHEN THIS
GYM IS ESPECIALLY ACTIVE), I COULD VERY WELL HAVE
KILLED SOMEBODY. ON THE DAY OF THE INCIDENT, THE
CAR WAS TOWED TO MERCEDES BENZ OF GREENWICH,

CONNECTICUT. AT THE TIME, I WAS GIVEN A LOANER CAR TO DRIVE (AT NO EXPENSE TO ME). I HAVE BEEN TOLD THAT A CASE HAS BEEN ESTABLISHED TO INVESTIGATE THE INCIDENT. AFTER A WEEK'S TIME, I CONTACTED MERCEDES BENZ (800-367-6372 X6302 JUSTIN) IN AN EFFORT TO ASCERTAIN THE STATUS OF THIS INVESTIGATION. I COULD NOT GET A DIRECT ANSWER OF ANY KIND FROM THE GENTLEMAN THAT I SPOKE TO. MERCEDES BENZ'S LACK OF COMMUNICATION HAS BEEN VERY DISTURBING GIVEN THE SEVERITY OF THIS SITUATION. THIS IS A LEASED CAR WHICH I HAVE HAD FOR A LITTLE OVER 1 YEAR. WITHOUT ANY KIND OF EXPLANATION FROM MB AS TO WHY THIS HAPPENED, I DON'T THINK I WOULD STEP INTO THIS CAR IF AND WHEN IT WAS REPAIRED. I WOULD APPRECIATE ANY INTERVENTION YOUR DEPARTMENT IS PREPARED TO PUT FORTH ON MY BEHALF HERE THANK YOU. *TR

NHTSA ID Number:            10304549
Incident Date:              February 3, 2010
Added to NHTSA Database:     February 3, 2010
Consumer Location:          WEST BLOOMFIELD, MI
Vehicle Type:               2007 Mercedes-Benz GL450
VIN:                        4JGBF71EX7A****

TODAY MY HUSBAND WAS INVOLVED IN A CAR ACCIDENT WHILE DRIVING MY 2007 GL450. THANK GOD HE WASN'T INJURED BUT THE SITUATION HE EXPLAINED TO ME HAS HAPPENED SEVERAL TIMES BEFORE AND I'VE BEEN ABLE TO REGAIN CONTROL OF THE CAR BEFORE SOMETHING TERRIBLE HAPPENED. HE LEFT HOME FOR WORK AT ABOUT 6AM AND WHILE STILL IN THE SUBDIVISION DRIVING ABOUT 20 MILES/HR ON A ROAD WITH ABOUT 1" OF SNOW, HE TRIED TO MAKE A RIGHT TURN BUT THE BRAKES LOCKED AND THE STEERING WOULDN'T TURN AND HE ENDED UP SMASHING THE FRONT END ON A HUGE STONE AND RICOCHETING TO A FIRE HYDRANT. LIKE I SAID, THIS HAS HAPPENED BEFORE AND I'D BEEN ASSUMING THAT THE SKIDDING WAS BECAUSE OUR TIRES WERE WORN BUT WE GOT BRAND NEW TIRES LESS THAN A WEEK AGO SO THIS DOES NOT MAKE ANY SENSE. I HAVEN'T BEEN IN TOUCH WITH MERCEDES YET BUT I WILL BE CONTACTING THEM TO ADVISE THEM OF THIS ISSUE. *TR

NHTSA ID Number:            10346893
Incident Date:              July 10, 2010
Added to NHTSA Database:     August 10, 2010
Consumer Location:          POMONA, CA
Vehicle Type:               2007 Mercedes-Benz R350
VIN:                        4JGCB65E86A****

I DROVE UP A 6000' HIGH MOUNTAIN,PULLED OVER ONTO A WIDE FLAT PULLOFF SAT THERE FOR 20 MINUTES, THEN RESTARTED THE CAR AND HAD NO BRAKES. MY FOOT WENT TO THE FLOOR. I HAD NOT USED THE BRAKES ON THE WAY UP THE MOUNTAIN BECAUSE THE ROAD WAS STEEPLY UPHILL. I TRIED TURNING THE CAR ON AND OFF SEVERAL TIMES AND STILL NO BRAKES. I WAITED ABOUT 20 MINUTE AND TRIED AGAIN,STILL HAD NO BRAKES. THERE WERE 3 OF US IN THE CAR, AND WE MANAGED TO GET A RIDE SEVERAL MILES DOWN AND CALLED A TOW TRUCK. I T TOOK ABOUT 4 HOURS FOR THEM TO ARRIVE.I TRIED THE BRAKES AGAIN, AND STILL HAD NONE. AFTER IT WAS TOWED TO A REPAIR SHOP, APPROXIMATELY 5 HOURS AFTER THE INITIAL PROBLEM, I STILL HAD NO BRAKES. THIS HAPPENED ON A SATURDAY NIGHT. ON MONDAY, THE BRAKES HAD PUMPED BACK UP. I HAD IT TOWED TO PENSKE MERCEDES DEALERSHIP. THEY TESTED-BRAKES,FLUIDS ETC. AND COULD FIND NO PROBLEM. THEY BALKED AT DRIVING IT UP THE MOUNTAIN, BUT FINALLY SAID THEY DID DO IT, AND THE BRAKES WERE FINE. THIS ALL HAPPENED OVER 3 WEEKS AGO. I HAVE SPOKEN WITH 3 LEVELS OF AUTHORITY AT THE DEALER, AND THEY INSIST THERE IS NO PROBLEM, AND I SHOULD PICK THE CAR UP OR HAVE IT TOWED AWAY, OR PAY THEM A $25 PER DAY STORAGE FEE. I ALSO CALLED THE 800 NUMBER FOR MB CORPORATE, AND HAVE NEVER RECEIVED A CALL BACK. THE DEALER SAID THEY WERE CONTACTED BY CORPORATE MB AND TOLD WHICH TESTS TO PERFORM, AND THEY TOLD THEM THEY HAD ALREADY DONE THOSE SAME TESTS AND THE CAR PASSED THEM ALL. MERCEDES CORPORATE THEN TOLD THEM TO TELL ME THE CAR WAS FINE. AND I SHOULD PICK IT UP. THIS IS THE SECOND TIME I'VE HAD THE SAME FAILURE, ALSO AT THE SAME ALTITUDE;HOWEVER THE FIRST TIME, AFTER TURNING THE CAR OFF FOR A FEW MINUTES, THE BRAKES WERE BACK UP AND USABLE. JUST BECAUSE THE CAR PASSES THEIR TESTS DOES NOT MEAN THERE IS NO PROBLEM-IT SIMPLY MEANS THEY HAVE NO TEST CAPABLE OF DISCOVERING THE CAUSE. MUST I DIE BEFORE THEY REPAIR THE CAR? I WAS GOING TO MAKE U-TURN AT THE PULL-OFF. WE'RE ALIVE BECAUSE I DIDN'T GET THAT FAR. *TR

......................................................

| | |
|---|---|
| NHTSA ID Number: | 10452109 |
| Incident Date: | March 9, 2012 |
| Added to NHTSA Database: | March 18, 2012 |
| Consumer Location: | MERCER ISLAND, WA |
| Vehicle Type: | 2009 Mercedes-Benz ML350 |
| VIN: | 4JGBB86E89A**** |

I HAVE A 2009 MERCEDES ML 350. ABOUT A WEEK AGO, MY BREAK FLUID LIGHT CAME ON. I TOOK IT INTO THE DEALERSHIP, AND THEY TOPPED THE FLUID OFF. A FEW DAYS PASSED, AND THE LIGHT WENT ON AGAIN. I TOOK IT INTO THE DEALERSHIP, AND IT WAS VERIFIED THAT "THE PRESSURE DROPS AFTER SEVERAL MINUTES. (THEY) FOUND THE LINE INTO THE ABR PUMP WAS LEAKING. R&R PUMP TO INSPECT LINES AND FOUND METAL LINE DEFORMED AT FLARE". *TR

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

NHTSA ID Number:              10454010
Incident Date:               March 21, 2012
Added to NHTSA Database:      April 3, 2012
Consumer Location:           CHARLOTTE, NC
Vehicle Type:                2008 Mercedes-Benz GL-Class
VIN:                         4JGBF71E88A****

I CAME OUT OF THE SHOPPING MAUL INTO THE PARKING LOT, ENTERED INTO THE CAR AND PUT IT IN REVERSE. THEN L PRESSED THE BRAKES TO STOP THE VEHICLE AND GO FORWARD, BUT THE BRAKES WOULD NOT STOP THE CAR. THE CAR KEPT GOING BACKWARDS AND L KEPT PRESSING THE BRAKES WITHOUT ANY RESULT. THE CAR SMASHED INTO 4 PARKED VEHICLES AND STILL DID NOT STOP. I ATTEMPTED TO PUT IT IN NEUTRAL TO STOP IT OR SLOW IT DOWN, BUT FINALLY THE CAR STARTED GOING FORWARD AND L PRESSED THE BRAKES MULTIPLE TIMES, BUT THE CAR STILL DID NOT RESPOND AND KEPT GOING FORWARD AND SKIDDING AND EVENTUALLY SMASHED INTO A TREE AND STOPPED. L HAVE CONTACTED MERCEDES, BUT THEY ARE YET ACT. THE CAR POWER STEERING WENT OUT 3 DAYS BEFORE THE ACCIDENT AND WAS JUST REPLACED THE DAY BEFORE THE ACCIDENT. THERE HAVE BEEN SEVERAL COMPLAINTS WITH THIS MODEL AND RECALL ON THE POWER STEERING. I HAVE INCURRED OVER 35,000 DOLLAR DAMAGE TO THE VEHICLE AND OTHER VEHICLES AND NEED MERCEDES BENZ TO STEP UP AND FIGURE OUT WHY THE CAR KEPT ACCELERATING DESPITE MY APPLYING THE BRAKES. *TR

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

NHTSA ID Number:              10909481
Incident Date:               September 24, 2016
Added to NHTSA Database:      September 24, 2016
Consumer Location:           PROSPECT, KY
Vehicle Type:                2007 Mercedes-Benz ML-Class
VIN:                         4JGBB75EO7A****

MECHANICAL FAILURE, STEERING JAM AND BRAKE DID NOT WORK DURING DRIVING AT 15-20 MPH IN SUBDIVISION STREET. GOT IN ACCIDENT HITTING THE VAN.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

NHTSA ID Number:           11029894
Incident Date:             September 17, 2017
Added to NHTSA Database:   September 26, 2017
Consumer Location:         BRONXVILLE, NY
Vehicle Type:              2010 Mercedes-Benz ML350
VIN:                       N/A

TWO ISSUES WITH MY ML350 2010 CAR - 1) ELECTRICAL -
GAS GAUGE WENT TO ZERO WHILE DRIVING EVEN WHEN
CAR WAS THREE QUARTERS FULL OF GAS. AFTER I
STOPPED CAR AND RESTARTED ENGINE, GAS GAUGE WENT
IMMEDIATELY BACK UP TO THREE QUARTERS FULL. 2)
FAILED BRAKES - I WAS DRIVING INTO A PARKING SPOT
SLOWLY USING BRAKES AND WHEN I WAS ABOUT TO COME
TO A FULL STOP, THE BRAKES FAILED AND WOULDN'T STOP
THE CAR COMPLETELY RESULTING IN ME DRIVING OVER A
PARKING METER. IT FELT LIKE THE CAR ACCELERATED AS
WELL AFTER HITTING PARKING METER BUT I WAS ABLE TO
STOP CAR AFTER PRESSING ON THE BRAKES AGAIN.
THANKFULLY NO ONE WAS HURT GIVEN SLOW SPEED AND
NO ONE BEING ON SIDEWALK AT THE TIME.

NHTSA ID Number:           11180304
Incident Date:             January 16, 2019
Added to NHTSA Database:   February 15, 2019
Consumer Location:         Unknown
Vehicle Type:              2006 Mercedes-Benz R350
VIN:                       4JGCB65EX6A****

MERCEDES 2006 WHEN I BRAKE THE CAR WILL KEEP GOING.
SUDDEN ACCELERATION. THIS HAS HAPPEN TWICE AND I
HAVE NOT OWNED THE CAR FOR A YEAR. I COULD KILL
SOMEONE. TOOK IT TO DEALER AND THREE DIFFERENT
SHOPS AND NO ONE KNOWS WHAT I'M TALKING ABOUT
HELP

### 3.   Online Reputation Management

87.   Online reputation management (commonly called "ORM" for short) is
now a standard business practice among most major companies and entails
monitoring consumer forums, social media, and other sources on the internet where
consumers can review or comment on products. "Specifically, [online] reputation
management involves the monitoring of the reputation of an individual or a brand
on the internet, addressing content which is potentially damaging to it, and using

customer feedback to try to solve problems before they damage the individual's or brand's reputation."[3] The growth of the internet and social media and the advent of reputation management companies have led to ORM becoming an integral part of many companies' marketing efforts. Defendants regularly monitored NHTSA in connection with its ORM activities, along with other internet-based social media website and blogs, because candid comments from Mercedes owners provide valuable data regarding quality control issues and customer satisfaction. Defendants, therefore, would have learned about the numerous complaints filed with NHTSA starting at least as early as September 2007.

### 4.   Manufacturer Communications with NHTSA

88.    "Federal regulations mandate that vehicle and vehicle equipment manufacturers comply with Early Warning Reporting requirements. One of the EWR requirements is that all manufacturers of motor vehicles or motor vehicle equipment, including low volume and child restraints, submit to NHTSA copies of their manufacturer communications. Manufacturers should submit all notices, bulletins, and other communications including warranty and policy extensions and product improvement communication sent to dealers, distributors, owners, purchasers, lessors, or lessees regarding any defect, failure or malfunction beyond normal deterioration in use, failure of performance, flaw or other unintended deviation from design specifications whether it is safety-related or not."[4]

89.    Defendants submitted at least one Manufacturer Communication to NHTSA, NHTSA ID Number: 10030929, involving the 2007 Mercedes-Benz ML-Class on or around June 15, 2009.

---

[3]    Moryt Milo, *Great Businesses Lean Forward, Respond Fast*, SILICON VALLEY BUSINESS JOURNAL (September 5, 2013), http://www.bizjournals.com/sanjose/print-edition/2013/05/17/great-businesses-lean-forward-respond.html
[4]    *See Manufacturer Communications*, NHTSA https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications (last visited May 17, 2022).

90.    On or around June 15, 2009, Mercedes informed dealerships that "corrosion protection coatings for brake components and hardware may be damaged and or stripped away if highly concentrated acid based cleaners are used. Once the corrosion protection is damaged or removed the brake components and or hardware can begin to corrode. Include all models and model years." Accordingly, Defendants were aware of the partial or total loss of braking ability should the brake components begin to corrode.

91.    On the basis of that communication, Defendants either knew or should have known of the corrosive effect that moisture would have should it accumulate and cause corrosion in the brake booster housing unit in the Class Vehicles. In other words, because Defendants were aware of the dangerous effect that corrosion has on the brake booster housing unit, Defendants were aware or should have been aware that water contains dissolved oxygen and is corrosive as well. Over the decade since this TSB was issued, on information and belief, Defendants observed corrosion in the brake booster housing units of Class Vehicles during routine inspections.

92.    Plaintiffs and members of the Class were never provided with copies of or information about this official communication with NHTSA as required by Early Warning Reporting requirements.  Defendants failed to disclose the Brake Defect to owners of the Class Vehicles, including Plaintiffs and members of the Class, and, instead, intentionally concealed the Brake Defect.

5.    Prior Recall of Mercedes Vehicles Due to Defective Brakes.

93.    Mercedes' failure to remedy the Brake Defect is all the worse in the face of the prior recall due to issues concerning Mercedes' brake boosters.

94.    On or about July 15, 2017, Mercedes issued a recall for 16,301 imported cars in China over defective brake boosters. The recalled vehicles were A-class, B-class and CLA-class cars, manufactured between February 2012 and April 2013. These vehicles contained a brake booster vacuum line that had the potential to break

due to a weak connector and then cause gradual loss of brake boosting capacity, posing a hazard to people in the vehicle. In comparison here, the Defect involves corrosion in the brake booster housing unit, which can result in reduced brake performance or brake failure.

95.     In almost every recall scenario, some type of internal investigation will be necessary, and in many cases, multiple investigations involving global enforcement entities and stakeholders are increasingly common. From the initial reporting and root cause determination to follow-on regulatory inquiries, a company can find itself involved in several over-lapping and cascading investigations. When conducting its investigation, Mercedes either did or should have discovered the Brake Defect involving the Class Vehicles.

96.     The Brake Defect was present at the point of sale for the nearly 300,000 Class Vehicles. In conducting their investigation into defective brake boosters, Mercedes obviously would have examined brake boosters throughout its fleet to discern the cause of the defect, and during examination, the corrosive effect of moisture in the brake booster housing units would be readily apparent.

**C.      The Inadequate and Untimely Safety Recall of Class Vehicles**

97.     Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and result in significant costs. Following an unidentified incident in March 2022, on May 2, 2022 Mercedes determined that is could no longer delay recalling the Class Vehicles and "that a potential safety risk could not be ruled out and [so Mercedes] decided to conduct a recall." Three days later on May 5, 2022, Mercedes contacted NHTSA to inform them of the safety recall and to issue stop drive instructions.

98.     On May 9, 2022, Defendant MBUSA issued Recall No.: 22V-315 (the "Recall") affecting certain 2006-2012 ML-Class, GL-Class, and R-Class vehicles. The Recall Notice describes the Defect as follows:

> Moisture may wick under a rubber sleeve that is installed around the brake booster housing for aesthetic reasons. This might result in corrosion in the joint area of the brake booster housing.

99.     The Recall notice describes the safety risk to Plaintiffs and members of the Class as follows:

> After extended time in the field and in conjunction with significant water exposure, this corrosion might lead to a leakage of the brake booster. In this case, the brake force support might be reduced, leading to an increase in the brake pedal forces required to decelerate the vehicle and/or to potentially increased stopping distance.

> Additionally, in rare cases of very severe corrosion, it might be possible for a particularly strong or hard braking maneuver to cause mechanical damage in the brake booster, whereby the connection between brake pedal and brake system would fail. In such a very rare case, it would not be possible to decelerate the vehicle via the service brake.

> Thus, the risk of a crash or injury would be increased.

> The function of the foot parking brake is not affected by this issue.

100.    Mercedes instructs Plaintiffs and members of the Class "not to drive their vehicles until the remedy has been performed." Yet Defendants have delayed sending out Owner Notification Letters. Defendants informed Plaintiff Diaz and stated in the Recall Acknowledgement filed with NHTSA on May 11, 2022, that Owner Notification Letters were expected to be mailed by May 27, 2022.

101.    In other words, despite issuing a "Stop Drive Notification" to Plaintiffs and members of the Class, Defendants unreasonably delayed inspection of the Class Vehicles.  Until their vehicles are properly inspected, Plaintiffs and members of the Class have no choice but to drive a vehicle that is inherently unsafe or pay significant out-of-pocket expenses for a rental vehicle.

102.   Even once Defendants are able to inspect the Class Vehicles, there is currently no fix available. As stated in the Remedy Instructions, there may not be a fix for two years. As stated in the Remedy Instructions:

**8. If advanced corrosion is found (status B, question 5), why must I wait two years – can't the dealer just replace the brake booster housing now?**

a. Sufficient part quantities are not yet available to offer a complete repair at this time. MercedesBenz assures all customers that the tests performed through the inspection procedure confirm that the brake booster will remain functioning normally until such time an additional inspection is deemed necessary within a 2-year period. Mercedes-Benz is working diligently with its suppliers to procure replacement parts as soon as possible.

Accordingly, in the event that Defendants find corrosion, Plaintiffs and members of the Class will be completely deprived of their Class Vehicle potentially for two years while they wait for replacement parts to be ready.

103.   Perhaps because of the severity of the issue, on June 6, 2022, Mercedes instituted a global recall of nearly one million cars that were sold between 2004 and 2015 over concerns that the brakes could fail. The immediate recall affects the ML and GL series of sport utility vehicles, both of which are popular with drivers in the United States, as well as the R-Class luxury minivans. Tests showed that advanced corrosion in the joint area of the brake booster housing in some of the vehicles could cause problems with the braking mechanism. Mercedes said it was recalling the cars for inspection, and had no way of knowing exactly how many would have corrosion damage.

104.   The Recall is untimely and ineffective at remedying the significant losses, which Plaintiffs and the Class have suffered. Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs. They did so at the expense of Plaintiffs and the Class.

**D.      Despite Its Knowledge, Mercedes Misrepresented and Concealed Important Information About the Brake Defect and Class Vehicle Safety.**

105.   Defendants failed to inform Class Vehicle owners at the point of sale and before purchase of the Class Vehicles of the Brake Defect. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Brake Defect in the Class Vehicles.

106.   For all the reasons above, Defendants had actual knowledge that Class Vehicles were experiencing braking failures due to the Brake Defect. Despite this knowledge, Defendants continued to sell Class Vehicles with the Brake Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiffs and members of the Class. This knowledge is imputed to all Defendants because MBUSA monitored Class Vehicle performance in the United States and reported to its affiliated and parent companies, MBG and MBAG, respectively, in the United States and Germany.

107.   Despite actual and constructive knowledge of the Brake Defect as described in this Complaint, Defendants have failed to cure the Brake Defect.

108.   Through no fault of their own, Plaintiffs and members of the Class did not possess sufficient technical expertise to recognize symptoms of the Brake Defect. This information, however, was known to Defendants, but not disclosed.

109.   Reasonable consumers, including Plaintiffs and members of the Class, would find disclosure of the Brake Defect to be material.

110.   Defendants concealed the Brake Defect from Plaintiffs and all Class Vehicle purchasers. Defendants intentionally or negligently failed to inform Class Vehicle purchasers that Class Vehicles incorporated a Brake Defect that would cause the braking systems to fail.

111.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, unfairly favoring Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

112.   The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including Plaintiffs and members of the Class. This is because Defendants knew of the Brake Defect in the Class Vehicles.

113.   Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous when they were sold.

114.   Defendants unconscionably sold defective Class Vehicles to Plaintiffs and members of the Class without informing these purchasers that the Class Vehicles were defective.

115.   Defendants' conduct renders the vehicle purchase and/contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

116.   Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Brake Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

117.   Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Brake Defect. Defendants did so to deceive purchasers as described herein, knowing that no reasonable consumer would purchase a vehicle with a Brake Defect.

118.   At the time of purchase, Defendants fraudulently omitted to disclose material matters regarding the Brake Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability. Defendants fraudulently concealed from Plaintiffs and members of the Class concerning the Brake Defect in Class Vehicles even though Defendants knew or should have known that information concerning the Brake Defect was material and central to the marketing and sale of Class Vehicles to prospective purchasers, including Plaintiffs and members of the Class.

119.   Material information was fraudulently concealed and/or actively suppressed to sell Class Vehicles to uninformed consumers (including Plaintiffs and members of the Class).

120.   If Plaintiffs and members of the Class had been informed of the Brake Defect in their Class Vehicles, they would not have purchased their respective Class Vehicles or paid substantially less. If Plaintiffs and members of the Class had learned of the Brake Defect in their respective Class Vehicles and the attendant ramifications of their respective loss of use,  diminution in value, future cost of repairs, durability and care, they would not have purchased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles.

121.   Material information concerning Class Vehicles was concealed and/or suppressed to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and limit brand disparagement.

Purchasers believed they were obtaining vehicles with different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles.

122.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Class purchased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## V.   CLASS ACTION ALLEGATIONS

### A.   The Class Definition

123.   The "Class Vehicles" include all purchasers of Mercedes vehicles in the United States that contain the Brake Defect including certain 2004-2015 ML-Class, GL-Class, and R-Class vehicles.[5]

124.   The proposed Nationwide Class includes all persons and entities that purchased a Class Vehicle in the United States, including its territories.

125.   Excluded from the Classes are: Defendants' officers, directors, and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

126.   The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice

---

[5] The Class Vehicles recalled to date so far in the United States include the Mercedes (Models/Model Years): AMG R63/2007, GL320/2007-2009, GL350/2010-2012, GL450/2007-2012, GL550/2008-2012, ML320/2007-2009, ML350/2006-2011, ML450/2010-2011, ML500/2006-2007, ML550/2008-2011, R320/2007-2009, R500/2006-2007, AMG ML63/2007-2011, R350/2006-2012, and R550/2008. However, the global recall initiated on June 5, 2022 has expanded the listed of affected vehicles to include additional makes/model and model years including from 2004 to 2015. Discovery may reveal additional makes and/or models the contain the Brake Defect, Plaintiffs reserve the right to amend the class definition to include additional makes and/or models as necessary.

practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

127.   Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, reduced, divided into State Sub-Classes under Rule 23(c)(5), or otherwise modified.

**B.     Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

128.   The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are hundreds of thousands of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

**C.     Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

129.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

    a.   Whether the Class Vehicles have a Brake Defect;

    b.   Whether Defendants engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

    c.   Whether Defendants engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

    d.   Whether Defendants knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiffs and the Class;

e.  Whether Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles in order to sell Plaintiffs and the Class a vehicle free of safety defects;

f.  Whether Defendants breached their duties to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

g.  Whether Defendants breached their duties to Plaintiffs and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

h.  Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class;

i.  Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

j.  Whether Defendants concealed material facts from their communications and disclosures to Plaintiffs and the Class regarding the Brake Defect in the Class Vehicles;

k.  Whether, as a result of Defendants' conduct, Plaintiffs and the Class have suffered damages and, if so, the appropriate amount thereof; and

l.  Whether Plaintiffs and the Class are entitled to treble damages and/or punitive damages or other relief.

**D.  Typicality: Federal Rule of Civil Procedure 23(a)(3)**

130.  Plaintiffs' claims are typical of the Class members' claims whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs and the other Class

members suffered damages as a direct proximate result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the other Class members.

### E.   Adequacy: Federal Rule of Civil Procedure 23(a)(4)

131.   Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automobile defect litigation and other consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

### F.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

132.   Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Class as a whole.

### G.   Superiority: Federal Rule of Civil Procedure 23(b)(3)

133.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

134.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

135.    Defendants have known of the Brake Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints to Defendants' network of exclusive dealers and NHTSA, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints. Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles.

136.    Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem. In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Mercedes is obligated to do.

137.    Defendants had a duty to disclose the Brake Defect to consumers and NHTSA. Contrary to this duty, Mercedes concealed the Brake Defect by continuing to market, distribute, and sell the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiffs and the Class members about the truth about the Class Vehicles.

138.    Because of the highly technical nature of the Brake Defect, Plaintiffs and Class members could not independently discover it using reasonable diligence. Before the retention of counsel and without third-party experts, Plaintiffs and Class members lack the necessary expertise to understand the Brake Defect.

139.   Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

## VII.   NATIONWIDE CLASS CLAIMS

### NATIONWIDE COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *ET SEQ.*
### (ON BEHALF THE NATIONWIDE CLASS)

140.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

141.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, by virtue of 28 U.S.C. § 1332 (a)-(d).

142.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

143.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

144.   Each Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 15 U.S.C. § 2301(4)-(5).

145.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

146.   Defendants provided Plaintiffs and the other Class members with a written warranty in connection with the purchase of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). As part of these written warranties, Defendants warranted that the Class Vehicles were defect-free and/or would meet a specified level of performance over

a specified period of time that formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

147.    Defendants provided Plaintiffs and the other Class members with an implied warranty in connection with the purchase of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

148.    Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they contain a defective braking system that could cause partial or complete brake failure and significantly increases the risk death and/or injury to operators, passengers, and the general public. Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

149.    Any limitations on the warranties is procedurally unconscionable. There was unequal bargaining power between Defendants on the one hand, and Plaintiffs and the other Class members, on the other.

150.    Any limitations on the warranties is substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks. Defendants also knew that their express warranties would not cover the Brake Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiffs and the Class members.

151.   Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract.

152.   Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Brake Defect.

153.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

154.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their defective Class Vehicles by retaining them.

155.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on  actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

156.   Plaintiffs also request, as a form of equitable monetary relief, repayment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Brake Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through a recall process.

157.   The right of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

**NATIONWIDE COUNT II**
**FRAUD BY CONCEALMENT OR OMISSION**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

158.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

159.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

160.   Defendants intentionally and knowingly misrepresented and concealed, suppressed, and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiffs and Class members. Defendants knew, or should have known, that that the Brake Defect in the Class Vehicles could cause partial or complete loss of braking capability significantly increasing the risk of collision and serious injury for drivers, occupants, and the general public.

161.   A reasonable consumer would not have expected that the Class Vehicles contain the Brake Defect. Defendants knew that reasonable consumers expect that their vehicle have a fully functional braking system, and would rely on those facts in deciding whether to purchase or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer contemplating the purchase of a vehicle.

162.   Defendants ensured that Plaintiffs and the Class did not discover this information through concealing it and misrepresenting the Class Vehicles' braking systems without disclosing the truth. Defendants intended for Plaintiffs and the Class

to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

    163.   Defendants had a duty to disclose the Brake Defect because:

       a.   Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Class members;

       b.   Defendants knew the Brake Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class members' decisions to buy Class Vehicles;

       c.   Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

       d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class that the Class Vehicles contained the dangerous Brake Defect. Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs and the Class, Defendants had the duty to disclose the whole truth. They did not.

    164.   To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiffs and the Class, and continue to conceal material information regarding the Brake Defect. The omitted and concealed facts were material because a reasonable person would find them important in purchasing,

leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased by Plaintiffs and the Class.

165.   Defendants concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's image and cost money. They did so at the expense of Plaintiffs and the Class. Had they been aware of the Brake Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased them.

166.   Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase.

167.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich themselves.

### NATIONWIDE COUNT III
### NEGLIGENT MISREPRESENTATION
### COMMON LAW
### (ON BEHALF OF THE NATIONWIDE CLASS)

168.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

169.   Plaintiffs assert this Negligent Misrepresentation count individually and on behalf of the Nationwide Class.

170.   Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiffs and Class members because Defendants knew or should have known of the Brake Defect and the risks associated with the manifestation of the Brake Defect. Defendants also made partial disclosures

regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Brake Defect and failed to disclose its existence and its corresponding safety hazard.

171. Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Brake Defect exposing drivers and occupants to safety risks. Defendants also misrepresented that they would remedy any defects under the express warranties but limited their coverage to mechanical defects. As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

172. The Brake Defect is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Brake Defect manifests, the driver may experience a partial or total loss of braking capability that may result in death and/or serious bodily injury to the occupants. During failure, drivers may be shocked, distracted, and distressed and be unable to safely operate the Class Vehicles. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents which may result from the manifestation of the Brake Defect. No reasonable consumer expects a vehicle to contain a defect in design, such as the Brake Defect, that can cause partial or total brake failure with no warning or time to take preventative measures.

173. Plaintiffs and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Brake Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiffs and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

174.   As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles with the Brake Defect, Plaintiffs and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**NATIONWIDE COUNT IV**
**UNJUST ENRICHMENT**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

175.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein, with the exception of the paragraphs regarding breach of express warranty and privity of contract.  Plaintiffs bring this Unjust Enrichment count in the alternative to the breach of warranty claims, and assert this count simultaneously at the pleading stage, given Plaintiffs' allegations that the warranties at issue are unconscionable.

176.   Plaintiffs assert this Unjust Enrichment count individually and on behalf of the Nationwide Class.

177.   Because of their conduct, Defendants caused damages to Plaintiffs and Class members.

178.   Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Brake Defect and misrepresentations regarding the Class Vehicles' safety.

179.   As a result of Defendants' fraud and deception, Plaintiffs and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

180.   Defendants knowingly benefitted from their unjust conduct. They sold Class Vehicles equipped with a Brake Defect for more than what the vehicles were worth, at the expense of Plaintiffs and Class members.

181.   Defendants readily accepted and retained these benefits from Plaintiffs and Class members, in order to retain their reputation and avoid the necessary costs to rectify their unjust conduct.

182.   It is inequitable, unconscionable, and would be unjust for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Brake Defect to consumers. Defendants knowingly limited their warranty coverage and excluded the Brake Defect. Plaintiffs and Class members would not have purchased the Class Vehicles or paid less for them had Defendants not concealed the Brake Defect.

183.   Plaintiffs and Class members do not have an adequate remedy at law.

184.   Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class, and award the following relief:

A.   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class, and Plaintiffs' counsel as counsel for the Class;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Brake Defect in the braking systems in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

D.    Appropriate injunctive and equitable relief;

E.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

F.    An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, overpayment damages, and out-of-pocket costs in an amount to be determined at trial;

G.    An order awarding any applicable statutory and civil penalties;

H.    A declaration that Defendants are required to engage in corrective advertising;

I.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

J.    An award of costs, expenses and attorneys' fees as permitted by law; and

K.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: June 28, 2024

Respectfully submitted,

James E. Cecchi
*Pro Hac Vice application forthcoming*
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C**.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

Zachary A. Jacobs
*Pro Hac Vice application forthcoming*
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 S. Riverside Plaza
Chicago IL  60606
Telephone: (973) 994-1700
Facsimile:  973-994-1744
zjacobs@carellabyrne.com

Christopher A. Seeger
*Pro Hac Vice application forthcoming*
Christopher L. Ayers
*Pro Hac Vice application forthcoming*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

Scott P. Schlesinger
*Pro Hac Vice application forthcoming*
Jeffrey L. Haberman
*Pro Hac Vice application forthcoming*
Jonathan R. Gdanski
*Pro Hac Vice application forthcoming*
Sarah J. Schultz
*Pro Hac Vice application forthcoming*
**SCHLESINGER LAW OFFICES,
P.A.**
1212 SE Third Avenue
Ft. Lauderdale, FL 33316
Telephone: (954) 467-8800
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com

Timothy W. Emery
*Pro Hac Vice application forthcoming*
Patrick B. Reddy
*Pro Hac Vice application forthcoming*
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
Telephone:  206.442.9106
Facsimile:   206.441.9711
emeryt@emeryreddy.com
reddyp@emeryreddy.com

Kim D. Stephens
*Pro Hac Vice application forthcoming*
Rebecca L. Solomon
*Pro Hac Vice application forthcoming*
**TOUSLEY BRAIN STEPHENS,
PLLC**
1200 Fifth Avenue, Ste. 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
kstephens@tousley.com
rsolomon@tousley.com

jgdanski@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiffs and the Putative Class*