## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| LEONARDO CACHO, RUBEN CHARLES, CARL CLARK, LINDA CREA, SR., BRANDON DUELING, ROXIE HARRIS, WENDER JEUDY, WANDA JONES, SEAN K. LEE, TINA MARIE, LETITIA MATTHEWS, ROBERT MCCUMSEY, RULESHA MCKINNEY, BIANCA ORTIZ, FRANCY DIAZ PEREZ, JAMES POWELL, ANTHONY PYLES, ELLERY RICHARD, JEFFREY ROBINSON, MARCIO SINELLI, THOMAS STEFANOPOULOS, BETTY WALTON, JENNIFER WALKER, HUEY WILLIAMS, and ANTONIO WYNN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:24-cv-02894-ELR |
| Plaintiffs, | |
| v. | |
| MERCEDES-BENZ USA, LLC, MERCEDES-BENZ AKTIENGESELLSCHAFT, and MERCEDES-BENZ GROUP AKTIENGESELLSCHAFT, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(B)(1) AND (B)(6))

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................1

BACKGROUND ...............................................................5

   I.    The Brake Booster Recall ......................................5

   II.   Plaintiffs and Their Vehicles ................................6

   III.  The New Vehicle Limited Warranty....................8

   IV.  The Initial Brake Booster Case by Plaintiffs........9

ARGUMENT ..................................................................11

   I.    THE COURT SHOULD DISMISS THIS LATER-FILED, DUPLICATIVE ACTION WITH PREJUDICE .................................14

        A.   *Cacho* Involves the Same Parties as *Maadanian* .....................15

        B.   The Claims in *Cacho* Are Identical to Those in *Maadanian* and Arise From the Same Transaction..................18

   II.   PLAINTIFFS LACK STANDING BECAUSE THEY HAVE NOT SUFFERED COGNIZABLE INJURY .....................................20

        A.   Five Plaintiffs Do Not Personally Have Standing to Pursue Claims Based on Vehicles That Do Not Have the Alleged Defect .........................................................20

        B.   The Recall Already Provides Plaintiffs Their Demanded Relief.........................................................................21

             i.    Cost of Repairs, Loaner Vehicles, and Towing Are Covered by the Recall....................................................21

             ii.   Plaintiffs' Alleged Overpayment Injuries Are Unmanifested and Nullified by the Recall ...................22

i

C.    Equitable Relief Is Inappropriate Where Plaintiffs Have an Adequate Remedy at Law and There Is No Alleged Future Injury ...........................................................................24

III.  THE RECALL PROVIDES INDEPENDENT GROUNDS TO DISMISS PLAINTIFFS' CLAIMS......................................................26

IV.  THE COMPLAINT IS AN IMPROPER "SHOTGUN PLEADING" ........................................................................................30

V.  PLAINTIFFS CANNOT ASSERT CLAIMS UNDER THE MAGNUSON-MOSS WARRANTY ACT .........................................31

VI.  PLAINTIFF'S FRAUD-BASED CLAIMS FAIL FOR MULTIPLE REASONS .....................................................................34

A.    Plaintiffs Failed to Plead Pre-Sale Knowledge.........................36

      i.   TSBs Do Not Show Knowledge of the Alleged Defect.................................................................................37

      ii.  Plaintiffs' Vague Claims About Pre-Production Testing Is Insufficient to Establish Pre-Sale Knowledge ......................................................................39

      iii. Anonymous Complaints Do Not Plead Pre-Sale Knowledge ......................................................................40

B.    Plaintiffs Do Not Identify Any Actionable Misrepresentation or Omission and Do Not Allege Facts Showing Reliance .....................................................................41

C.    Plaintiff Have Not Alleged Facts Showing a Duty to Disclose......................................................................................42

D.    Plaintiffs Have Not Alleged Facts Showing Fraudulent Intent ........................................................................................43

E.    Defendants Caused No Injury to Plaintiffs ...............................44

VII.  PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT
      SHOULD BE DISMISSED FOR MULTIPLE REASONS ...............44

CONCLUSION ...................................................................................47

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) .............................................................21

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) ...............................................................17

*Alban v. BMW of N. Am.*,
  2011 WL 900114 (D.N.J. Mar. 15, 2011)..............................................38

*Ali S. Muhammad v. Select Portfolio Servicing, Inc.*,
  2022 WL 17493711 (N.D. Ga. Sept. 8, 2022) .......................................13

*Am. Honda Motor Co. Inc. v. Super. Ct.*,
  132 Cal. Rptr. 3d 91 (Ct. App. 2011) ...................................................38

*American Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*,
  426 F. Supp. 2d 1356 (N.D. Ga. 2006) ................................................45

*Angus v. Shiley, Inc.*,
  989 F.2d 142 (3d Cir. 1993)...................................................................22

*Archer v. Holmes*,
  2018 WL 534475 (N.D. Ga. Jan. 23, 2018) ..........................................46

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................12, 39

*Aspen Am. Ins. Co. v. Tasal, LLC*,
  508 F. Supp. 3d 1179 (M.D. Fla. 2020).................................................44

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liability Litigation*,
  2014 WL 3360233 (N.D. Ga. July 9, 2014)......................................45, 46

*Bauser v. Porsche Cars N. Am., Inc.*,
  2024 WL 2406884 (N.D. Ga. Mar. 25, 2024).........................................41

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................12, 39

*BH Hasid, LLC v. IA Daron Village, LLC*,
  2020 WL 13526606 (N.D. Ga. Jan. 28, 2020) ......................................................47

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ...........................................................................11

*Brazil v. Janssen Rsch. & Dev. LLC*,
  249 F. Supp. 3d 1321 (N.D. Ga. 2016) ................................................35, 41, 44

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ...........................................................................22

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) .............................................................................22

*Brisson v. Ford Motor Co.*,
  349 F. App'x 433 (11th Cir. 2009) .....................................................................33

*Bruce Martin Constr., Inc. v. CTB, Inc.*,
  735 F.3d 750 (8th Cir. 2013) .............................................................................32

*Burns v. Winnebago Indus., Inc.*,
  492 F. App'x 44 (11th Cir. 2012) .......................................................................34

*Callen v. Daimler AG*,
  2020 WL 10090879 (N.D. Ga. June 17, 2020) ...................................33, 34, 41, 46

*Carlson v. Gen. Motors Corp.*,
  883 F.2d 287 (4th Cir. 1989) .............................................................................22

*Cheng v. BMW of N. Am.*,
  2013 WL 3940815 (C.D. Cal. July 26, 2013) ...............................................23, 28

*Chinn v. Giant Food, Inc.*,
  100 F. Supp. 2d 331 (D. Md. 2000) ...................................................................16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..........................................................................................23

*Clark v. Aaron's Inc.*,
  914 F. Supp. 2d 1301 (N.D. Ga. 2012) ..............................................................25

*Cohen IP Law Grp., PC v. IAC/Interactivecorp.*,
  2010 WL 4315286 (C.D. Cal. Oct. 25, 2010) .....................................................17

*Collins v. Athens Orthopedic Clinic,*
    356 Ga. App. 776 (2020) ................................................................45

*Colpitts v. Blue Diamond Growers,*
    527 F. Supp. 3d 562 (S.D.N.Y. 2021)........................................44

*Crawford v. Bell,*
    599 F.2d 890 (9th Cir. 1979) .......................................................16

*In re Cypress Semiconductor Sec. Litig.,*
    864 F. Supp. 957 (N.D. Cal. 1994) .............................................16

*Deerskin Trading Post v. UPS of Am.,*
    972 F. Supp. 665 (N.D. Ga. 1997).............................................25

*Desai v. Gov't Emps. Ins. Co. GEICO,*
    2023 WL 11878200 (S.D. Fla. Nov. 20, 2023)........................26

*Farr v. Daling,*
    684 F. Supp. 3d 1358 (N.D. Ga. 2023) .....................................35

*Fedrick v. MBUSA,*
    366 F. Supp. 2d 1190 (N.D. Ga. 2005) .....................................32

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
    2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..............................24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,*
    528 U.S. 167 (2000).....................................................................12

*Garcia v. Chrysler Grp. LLC,*
    127 F. Supp. 3d 212 (S.D.N.Y. 2015).......................................43

*Gardner v. Mutz,*
    962 F.3d 1329 (11th Cir. 2020) ..................................................21

*GE Life & Annuity Assurance Co. v. Barbour,*
    191 F. Supp. 2d 1375 (M.D. Ga. 2002) .....................................42

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC,*
    26 F.4th 1235 (11th Cir. 2022) ..................................................12

*Greene v. H&R Block E. Enters., Inc.,*
    727 F. Supp. 2d 1363 (S.D. Fla. 2010) .....................................16

*Griffin Indus. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ...................................................................13

*Gwinnett County v. Netflix, Inc.*,
    367 Ga. App. 138 (2023) ...........................................................................45

*Hadley v. Chrysler Grp. LLC*,
    2014 WL 988962 (E.D. Mich. Mar. 13, 2014), *aff'd*, 624 Fed. Appx. 374 (6th
    Cir. 2015) ................................................................................................22

*Hall v. Gen. Motors, LLC*,
    2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) ...............................38, 39

*Hatch v. Boulder Town Council*,
    471 F.3d 1142 (10th Cir. 2006) ...............................................................18

*Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.*,
    479 Fed. Appx. 955 (11th Cir. 2012)........................................................27

*Inouye v. Adidas Am., Inc.*,
    2023 WL 2351654 (M.D. Fla. Mar. 3, 2023) ..........................................32

*Jackson v. Medtronic, Inc.*
    2023 WL 9898218 (N.D. Ga. Jan. 23, 2023)..........................................12

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ...............................................................14

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of Treasury*,
    773 F.3d 243 (11th Cir. 2014) .................................................................11

*Kennedy v. Floridian Hotel, Inc.*,
    998 F.3d 1221 (11th Cir. 2021) ........................................................14, 18

*Lewis v. Casey*,
    518 U.S. 343 (1996)............................................................................11, 22

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (11th Cir. 2006)..................................................................27

*Lewis v. MBUSA*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) .............................31, 37, 39, 40

*Lilliston v. Regions Banks*,
    288 Ga. App. 241 (2007) ...........................................................................42

*Lombard Corp. v. Quality Aluminum Prods. Co.*,
  261 F.2d 336 (6th Cir. 1958) ................................................32

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................11, 21

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*,
  508 F. App'x 180 (3d Cir. 2012) ...........................................32

*Marty v. Anheuser-Busch Cos.*,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) .....................................26

*McCabe v. Daimler AG*,
  160 F. Supp. 3d 1337 (N.D. Ga. 2015) ...................................42

*McColligan v. Vendor Res. Mgmt.*,
  762 F. App'x 943 (11th Cir. 2019) ........................................25

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*,
  768 F.3d 1135 (11th Cir. 2014) ...........................................12

*Mfr. Rsch. Corp. v. Greenlee Tool Co.*,
  693 F.2d 1037 (11th Cir. 1982) ...........................................41

*Migliori v. Honeywell, Inc.*,
  2017 U.S. App. LEXIS 20396 (6th Cir. Oct. 16, 2017).......................16

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...........................................13

*Monticello v. Winnebago Indus.*,
  369 F. Supp. 2d 1350 (N.D. Ga. 2005) ....................................34

*Moseley v. Carnival Corp.*,
  593 Fed. Appx. 890 (11th Cir. 2014).......................................12

*Mungai v. Chase Bank U.S.*,
  2020 WL 10225827 (N.D. Ga. Aug. 4, 2020) ...............................24

*Murphy v. Sec'y, U.S. Dep't of Army*,
  769 F. App'x 779 (11th Cir. 2019) ........................................11

*Noble Prestige Ltd. v. Galle*,
  83 F.4th 1366 (11th Cir. 2023) ...........................................24

viii

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
  32 F.4th 1298 (11th Cir. 2022) ...................................................13

*Pacheco v. Ford Motor Co.*,
  2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ...............................28

*Patricia Young v. Cmty. Health Sys.*,
  2023 WL 6121795 (11th Cir. Sep. 19, 2023) ...................................42

*Peterson v. Aaron's, Inc.*,
  2015 WL 5479877 (N.D. Ga. Sept. 16, 2015) ..................................46

*Petro-Hunt, L.L.C. v. United States*,
  365 F.3d 385 (5th Cir. 2004) ........................................................18

*Pinon v. Daimler AG*,
  2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ...................................25

*Quashie v. Olympus Am., Inc.*,
  315 F. Supp. 3d 1329 (N.D. Ga. 2018) ......................................34, 35

*Remax N. Atlanta v. Clark*,
  244 Ga. App. 890 (2000) .................................................35, 36, 43

*RMS of Ga., LLC v. Dynatemp Int'l, Inc.*,
  2024 U.S. Dist. LEXIS 119246 (N.D. Ga. June 3, 2024) .....................46

*Rosen v. Cascade Int'l, Inc.*,
  21 F.3d 1520 (11th Cir. 1994) ......................................................24

*Sater v. Chrysler Grp. LLC*,
  2016 WL 7377126 (C.D. Cal. Oct. 25, 2016)...................................26

*Shabazz v. Centurion of Tenn., LLC*,
  2022 WL 402422 (W.D. Tenn. Feb. 9, 2022)...................................16

*Sloan v. GM LLC*,
  2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ...................................40

*Snowdy v. Mercedes-Benz USA, LLC*,
  2024 WL 1366446 (D.N.J. Apr. 1, 2024) ........................................39

*Somerson v. McMahon*,
  956 F. Supp. 2d 1345 (N.D. Ga. 2012) .........................................45

*Stroman v. Bank of Am. Corp.*,
   852 F. Supp. 2d 1366 (N.D. Ga. 2012) ...................................................45

*Suddreth v. MBUSA*,
   2011 WL 5240965 (D.N.J. Oct. 31, 2011)..............................................38

*Sugasawara v. Ford Motor Co.*,
   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ........................................22

*Tannehill v. Wilkie*,
   2021 WL 1624275 (S.D. Ala. Jan. 25, 2021) ..........................................13

*In re Toyota Motor Corp.*,
   2013 WL 12180769 (C.D. Cal. Feb. 28, 2013).........................................22

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..................................................................................20

*Trichell v. Midland Credit Mgmt.*,
   964 F.3d 990 (11th Cir. 2020) .................................................................23

*Trusted Data Sols., LLC v. Kotchen & Low, LLP*,
   2015 WL 11251959 (N.D. Ga. Feb. 6, 2015) ..........................................47

*Tull Bros. v. Peerless Prods., Inc.*,
   953 F. Supp. 2d 1245 (S.D. Al. 2013) .....................................................32

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*,
   412 U.S. 669 (1973)..................................................................................12

*Valencia v. Universal City Studios LLC*,
   2014 WL 7240526 (N.D. Ga. Dec. 18, 2014)..........................................45

*Vanover v. NCO Fin. Servs., Inc.*,
   857 F.3d 833 (11th Cir. 2017) ........................................................ *passim*

*Vibe Micro, Inc. v. Shabanets*,
   878 F.3d 1291 (11th Cir. 2018) ...............................................................30

*Villarino v. Joekel*,
   2024 WL 1633619 (S.D. Fla. Mar. 29, 2024), *appeal pending*, No. 24-11124................15, 16

*Voelker v. Porsche Cars N. Am. Inc.*,
   353 F.3d 516 (7th Cir. 2003) ...................................................................33

*Vu v. Ho*,
   2020 WL 13568101 (N.D. Ga. Mar. 18, 2020) ........................................................47

*Ward-Richardson v. FCA US LLC*,
   690 F. Supp. 3d 1372 (N.D. Ga. 2023) ........................................................... *passim*

*Webb v. Miami-Dade County*,
   2024 WL 4222573 (11th Cir. Sept. 18, 2024) ......................................................30

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) .............................................................................31

*Weinstein v. Metlife, Inc.*,
   2006 WL 3201045 (N.D. Cal. Nov. 6, 2006) ........................................................17

*WESI, LLC v. Compass Env't, Inc.*,
   509 F. Supp. 2d 1353 (N.D. Ga. 2007) .................................................................35

*WFG Nat'l Title Ins. Co. v. 3225 Cedar St., LLC (GA)*,
   2023 WL 10476014 (N.D. Ga. Sept. 8, 2023) .......................................................43

*In re White*,
   559 B.R. 787 (Bankr. N.D. Ga. 2016) ..................................................................46

*Willett v. Baxter Int'l, Inc.*,
   929 F.2d 1094 (5th Cir. 1991) ..............................................................................22

*Williams v. Dresser Indus.*,
   120 F.3d 1163 (11th Cir.1997) .............................................................................42

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ......................................................................28, 30

*Youngblood-West v. Aflac Inc.*,
   796 F. App'x 985 (11th Cir. 2019) ........................................................................13

**Statutes**

15 U.S.C. § 2303 *et seq.*..................................................................................... *passim*

15 U.S.C. § 2310(d)(3) ...........................................................................................31

49 U.S.C. § 30120(d) ..............................................................................................21

Class Action and Fairness Act ...............................................................................32

National Traffic and Motor Vehicle Safety Act ...................................................28, 29

Washington Consumer Protection Act.................................................................11

**Other Authorities**

40 C.F.R. § 86.096-38(g)(2)(i)...............................................................................38

Fed. R. Civ. P. 9(b) ........................................................................................4, 13, 34

Fed. R. Civ. P. 12(b)(1).......................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................4, 5, 12, 13

Fed. R. Civ. P. 19 ...................................................................................................10

Fed. R. Civ.  P. 41(b) ............................................................................................10

Fed. R. Civ. P. 56 ...................................................................................................13

Restatement (Second) of Judgments § 24 ..............................................................18

U.S. Const. art. III..................................................................................11, 20, 27

## INTRODUCTION

On May 12, 2022, Mercedes-Benz USA, LLC ("MBUSA") announced a voluntary recall administered in cooperation with the National Highway Traffic Safety Administration ("NHTSA") to inspect, and if necessary, replace the "brake booster" in certain older model year SUVs, to the extent the brake booster is affected by excessive corrosion. The brake booster is a part in the braking system that provides powered braking assistance to the driver. Without it, the brakes would not fail; rather, a driver would need to press harder on the brakes. The recall is comprehensive in its remedial plan—it not only provides for inspections and part replacement (if needed), but also provides loaner vehicles, rental cars, and the potential for vehicle buybacks in certain circumstances.

None of the 25 plaintiffs allege facts showing they ever experienced a brake booster issue. Plaintiffs also fail to allege whether their vehicles were inspected pursuant to the recall and if so, whether their brake boosters needed to be replaced. While this information is suspiciously absent from the Complaint, many of plaintiffs' vehicles were inspected pursuant to the recall and ***cleared*** —meaning their brake boosters had no issue. Further, several of plaintiffs' claimed vehicles are not even part of the recall population. Moreover, as of May 2022, "only one case [had been identified] in the US where poor brake performance was caused by a corroded brake booster," and there have been "no crashes, injuries, or deaths" related to brake

booster corrosion.[1]  Mercedes-Benz Group Aktiengesellschaft ("MBG"), Mercedes-
Benz Aktiengesellchaft ("MBAG"), and MBUSA acted diligently and
comprehensively in carrying out the type of recall that should be encouraged.
Plaintiffs should not be able to bootstrap a class action to impose further expense.

On May 16, 2022, merely ***four*** days after the recall was announced, these
plaintiffs filed a putative class action in the Western District of Washington on
behalf of every person in the U.S. and its territories who has purchased or leased
any one of a wide variety of vehicles spanning eleven model years, the youngest of
which is about seven years old ("*Maadanian*").[2]  These plaintiffs were then
dismissed from that action,[3] and the *Maadanian* court dismissed all but two causes
of actions for the remaining named plaintiff, Mr. Maadanian.  After both of those
dismissal orders, plaintiffs now bring a nearly identical class action complaint on
behalf of the same plaintiffs, by the same counsel, and alleging the same facts.
Specifically, the claims asserted here in *Cacho* are identical to either those that
were dismissed in *Maadanian **before*** this Complaint was filed, or that are still
pending before the *Maadanian* court (unjust enrichment as a nationwide claim).

---

[1] *See* Request for Judicial Notice ("RJN"), Ex. A (Part 573 Submission (May 9, 2022)),
https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V315-4181.pdf, last visited October 19, 2024
("May 9, 2022 Submission").

[2] *See* RJN Ex. D, *Maadanian v. MBUSA*, No. 2:22-cv-00665, Dkt. 1, Complaint (W.D. Wash. May
16, 2022) (Lasnik, J.) ("Maadanian Compl.").

[3]*See* RJN Ex. H, *Maadanian*, Dkt. 70, ("Lasnik July 14, 2023 Order").

Moreover, the Complaint seeks things like "out of pocket expenses for rental or loaner vehicles" that already are covered by the recall, "costs for future repairs or replacements" that are already covered by the recall, "towing expenses" that are already covered by the recall, a "comprehensive program to repair or replace the Brake Defect" that already was created and is in place, an injunction against further sales of vehicles that defendants stopped selling more than seven years ago—and, of course, attorneys' fees and costs. *See* Compl. ¶ 9, Prayer for Relief (b), (c), (j). The Complaint should be dismissed in its entirety, with prejudice.

As an initial matter, the claim-splitting doctrine precludes duplicative actions such as here. This case should be dismissed as duplicative of *Maadanian*, as both cases involve the same parties and their privies, and both cases arise from the same transaction—namely defendants' brake booster recall.

Additionally, plaintiffs lack standing because they lack a cognizable injury; they do not allege facts showing they experienced the alleged loss-of-braking issue, much less that they incurred expenses because of it. Numerous courts have dismissed putative class actions seeking to bootstrap onto a voluntary recall. In addition, multiple courts have found that voluntary recalls conducted under NHTSA's regulations and oversight make a lawsuit such as this prudentially moot, making dismissal with prejudice appropriate here.

The Complaint should be dismissed on other grounds as well. Plaintiffs'

claims under the Magnuson-Moss Warranty Act ("MMWA") fail for three reasons: (1) plaintiffs cannot sustain the jurisdictional requirement for class claims under the MMWA; (2) plaintiffs have not alleged facts meeting requirements for viable state-law warranty claims; and (3) plaintiffs have not alleged facts meeting the clear requirements of the governing warranty.

Plaintiffs make claims grounded in fraud but do not allege ***facts*** as required by Rules 9(b) or 12(b)(6).  They do not allege specific, pre-purchase misrepresentations or omissions; that they justifiably relied on any such specific acts; that defendants had the requisite pre-sale knowledge to support liability; or that plaintiffs suffered any injury or loss.  Certain plaintiffs allege they purchased their vehicles used,[4] meaning they cannot allege facts showing the vehicles are in the same condition as when they were first sold, cutting off any possible causation.  For the remaining plaintiffs, the Complaint fails to state (1) when the vehicles were bought; (2) from whom the vehicles were bought; (3) whether the vehicles were purchased new or used; and (4) the condition of the vehicles at the time they were bought.

Plaintiffs' claim for unjust enrichment also fails, as (1) it is duplicative of the nationwide claim for unjust enrichment that is still pending in *Maadanian* (brought by these same plaintiffs' counsel); (2) it is not a separate cause of action; (3) unjust enrichment is not available where, as here, there is a governing contract (the

---

[4] Francy Diaz Perez, Jeffrey Robinson, and Thomas Stefanopoulos.  *See* Compl. ¶¶ 43, 53, 57.

warranty); and (4) defendants have not received a direct benefit from plaintiffs.

## **BACKGROUND**

### I.    **The Brake Booster Recall**

In May 2022, MBUSA informed NHTSA and announced a voluntary recall to inspect and (if needed) replace brake boosters in affected vehicles.  Compl., Dkt. 1 ¶¶ 3–4.  The recall evolved from a single report "from outside the US describing an instance in which a customer allegedly experienced a reduced brake force support." RJN Ex. A (May 9, 2022 Submission).  Indeed, most recalled vehicles will ***not*** have any issue: corrosion might only create a potential issue "[a]fter extended time in the field and in conjunction with signification water exposure," and only in "rare cases of very severe corrosion" would braking power be lost entirely.  RJN Ex. B at 6 (Part 573 Report, https://static.nhtsa.gov/odi/rcl/ 2022/RCLRPT- 22V315-3653.PDF (last visited October 19, 2024 ("Part 573 Report")));  *see also* Declaration of Gregory Gunther ("Gunther Decl.") ¶ 4.[5]  In fact, "only one case [had been] identified in the US where poor brake performance was caused by a corroded brake booster," and there have been "no crashes, injuries, or deaths" related to brake booster corrosion. RJN Ex. A (May 9, 2022 Submission).

The recall involves an inspection of the brake booster, after which the brake

---

[5] The Gunther Declaration is offered only in support of defendants' factual challenge to plaintiffs' standing.  The Rule 12(b)(6) motion does not rely on this evidence, though as discussed in footnote 1, the documents found on NHTSA's website may be considered in ruling on all the pending motions, as they are subject to judicial notice.

booster could either (1) show a lack of accumulated corrosion, such that replacement is not required ("Category 1 Vehicles"); or (2) be replaced free of charge. Gunther Decl. Ex. 1 (Mar. 2023 Owner Notification Letter) at 1 & Ex. 2 (June 2022 Owner Notification Letter) at 1. The inspection and testing also are free of charge. *Id.* Ex. 1. In addition, affected customers are eligible for towing to repair shops, loaner vehicles, rental reimbursements, and other costs, including vehicle buybacks in certain instances. *Id.* MBUSA also is reimbursing customers for repairs performed prior to the recall itself. *Id.* at 3.

Plaintiffs misrepresent the recall, suggesting that some will be advised not to use their vehicles for two years. *See* Compl. ¶¶ 1, 6, 102. In truth, these vehicles were never subject to a "stop drive" order after inspection—much less for a two-year period—because they would have "passe[d] inspection" via a "diagnostic test . . . performed to ensure the functionality of the brake booster." Gunther Decl. ¶ 6. Indeed, the only recommended "stop drive" at this point is for consumers who have yet to have their vehicles inspected. *Id.* ¶ 7. Once the inspection occurs, the brake booster is either replaced, or the consumer is cleared to drive their vehicle. In other words, any alleged inconvenience would exist only if customers unilaterally decided to delay in having the inspection done.

## II.    Plaintiffs and Their Vehicles

Of the 25 named plaintiffs, 22 do not allege (1) when they purchased the

vehicle, (2) from whom they purchased the vehicle, (3) whether they purchased the vehicle new or used, (4) the condition of the vehicle at the time of purchase, or (5) any factual allegations regarding their vehicle.[6]  They vaguely allege that at some unknown time prior to purchasing their respective vehicles, they "viewed or heard commercials and reviews" that generally "touted the safety and reliability of the Class Vehicle."  Compl. ¶¶ 16–66.  Significantly, among other things, ***none*** of these 22 plaintiffs allege facts showing that they experienced any problems related to the brake booster, that they purchased the vehicle from defendants, or that they transacted with defendants at any time.  To the contrary, three plaintiffs—Francy Diaz Perez, Jeffrey Robinson, and Thomas Stefanopoulos—allege they purchased preowned vehicles from third parties.  *Id.* ¶¶ 43, 53, 57.

All 25 of the named plaintiffs (and in general, owners and lessees of vehicles subject to the brake booster recall) can have their brake booster inspected, the result of which will be that their brake booster is either cleared or replaced.  ***No*** plaintiff alleges facts claiming that they have (or even had) a brake booster with impaired functionality.  As a preliminary matter, five plaintiffs own vehicles that

---

[6] These plaintiffs are (1) Leonardo Cacho; (2) Ruben Charles; (3) Carl Clark; (4) Lindy Crea, Sr.; (5) Brandon Dueling; (6) Roxie Harris; (7) Wender Jeudy; (8) Wanda Jones; (9) Sean K. Lee; (10) Tina Marie; (11) Letitia Matthews; (12) Robert McCumsey; (13) Rulesha McKinney; (14) Bianca Ortiz; (15) James Powell; (16) Anthony Pyles; (17) Ellery Richard; (18) Marcio Sinelli; (19) Jennifer Walker; (20) Betty Walton; (21) Huey Williams; and (22) Antonio Wynn.  *See* Compl. ¶¶ 15–42, 47–52, 55–56, 59–66.

are **_not_** in the population of vehicles subject to the recall and thus do not have an affected brake booster—so they do not have claims at all.[7]  *See* Gunther Decl. ¶¶ 18, 20, 21, 29, 31 & Ex. 18.  Fourteen plaintiffs already have had their vehicles inspected under the recall and were either found to be Category 1 Vehicles, meaning their brake booster did not need to be replaced and no further action was needed, or Category 2/3 Vehicles, where a replacement was needed and has already been performed.  *See* Gunther Decl. ¶¶ 11–13, 15–17, 19, 22, 23, 25–27, 33, 34 & Exs. 5–10, 12–17, 19–27, 31–34.  Although the recall was announced *more than two years ago*, five plaintiffs have not taken advantage of the recall.  Gunther Decl. ¶¶ 9, 10, 14, 28, 30 & Exs. 3, 4, 11, 29, 30.  Two plaintiffs did not allege sufficient information for their vehicles to be identified.  Gunther Decl. ¶¶ 24, 32.

### III.    The New Vehicle Limited Warranty

All new Mercedes-Benz vehicles have a New Vehicle Limited Warranty ("NVLW"), which warrants against "defects in material or workmanship" arising during the first 48 months or 50,000 miles, whichever comes first.  RJN Ex. C (2011 NVLW).  Three plaintiffs—Diaz Perez, Robinson, and Stefanopoulos— allege they purchased preowned vehicles from third parties, after the NVLW expired.  While the remaining 22 plaintiffs failed to allege when they purchased

---

[7] These plaintiffs are (1) Tina Marie; (2) Robert McCumsey; (3) Rulesha McKinney; (4) Jennifer Walker; and (5) Marcio Sinelli's 2012 ML350 (his 2007 ML-Class is subject to the recall).

their vehicles, the "youngest" vehicle of any plaintiff is from 2014 (Compl. ¶ 33), well over the first 48 months covered by the warranty. Therefore, their NVLWs were past their "durational limit" when plaintiffs brought this suit.

## IV.    The Initial Brake Booster Case by Plaintiffs

On May 16, 2022, these same plaintiffs' counsel filed a nationwide class action complaint against MBUSA alleging the exact same facts and defect at issue here. *See* RJN Ex. D, *Maadanian v. MBUSA*, No. 2:22-cv-00665, Dkt. 1, Complaint (W.D. Wash. May 16, 2022) (Lasnik, J.) ("*Maadanian* Compl."). On June 9, 2022, this complaint was amended to include 11 of the named plaintiffs in this case,[8] all the defendants in this case, and all the causes of action at issue here.[9] *See* RJN Ex. E, *Maadanian*, Dkt. 8, First Amended Complaint ("*Maadanian* FAC"). Thereafter, counsel further amended to include ***all 25*** of the named plaintiffs in this action (plus Mr. Maadanian), making identical factual claims and alleging the same causes of action as in this action. *See* RJN Ex. F, *Maadanian*, Dkt. 41, Second Amended Complaint ("*Maadanian* SAC").

Defendants filed a motion to dismiss the *Maadanian* SAC for lack of personal jurisdiction. *See Maadanian*, Dkt. 46. Judge Lasnik originally denied

---

[8] Named plaintiffs Leonardo Cacho, Wender Jeudy, Sean K. Lee, Tina Marie, Rulesha McKinney, Francy Diaz Perez, Jeffrey Robinson, Marcio Sinelli, Thomas Stefanopoulos, Jennifer Walker, and Betty Walton.

[9] The FAC also raised additional claims beyond the four raised in this action.

defendants' motion (*see* RJN Ex. G, *Maadanian*, Dkt. 61, May 5, 2023 Order

denying Defendants' Motion to Dismiss ("Lasnik May 5, 2023 Order")) but upon

defendants' Motion for Reconsideration (*see Maadanian*, Dkt. 64), granted

defendants' motion and dismissed the 25 non-Washington plaintiffs that are now

plaintiffs in the instant matter.  *See* RJN Ex. H, *Maadanian*, Dkt. 70, July 14, 2023

Order Granting Defendants' Motion for Reconsideration ("Lasnik July 14, 2023

Order").  Maadanian proceeded as the sole named plaintiff on behalf of a putative

nationwide class identical to the proposed nationwide class in *Cacho*.  *Compare*

Compl. ¶¶ 123–25 *with* RJN Ex. F, *Maadanian* SAC ¶¶ 124–26.

On July 28, 2023, defendants filed a motion to dismiss the *Maadanian* SAC

for failure to state a claim and lack of standing.  *Maadanian*, Dkt. 72.  Judge Lasnik

granted defendants' motion in part on April 11, 2024.  *See* RJN Ex. I, *Maadanian*,

Dkt. 96 ("Lasnik April 11, 2024 Order").  As pertinent here, Judge Lasnik dismissed

the nationwide MMWA claims, as well as claims for fraud by concealment or

omission, and negligent misrepresentation—all with prejudice (all identical to the

claims asserted here).[10]  *Id.* at 11-14, 17, 23.  The only claims that proceeded were

---

[10] While the decision did not specify if it was with prejudice, under Federal Rule of Civil
Procedure 41(b), "[u]nless the dismissal order states otherwise, a dismissal under this subdivision
(b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or
failure to join a party under Rule 19—operates as an adjudication on the merits."

the Washington Consumer Protection Act ("WCPA") claim,[11] and the nationwide

unjust enrichment claim (identical to the claim asserted here).  *See id.* at 17-23.

## ARGUMENT

Plaintiffs have the burden of establishing standing.  *See Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 561 (1992); *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  A

Rule 12(b)(1) jurisdictional attack may be facial or factual.  *See Murphy v. Sec'y,*

*U.S. Dep't of Army*, 769 F. App'x 779, 781 (11th Cir. 2019).  As a factual attack

"challenges the existence of subject-matter jurisdiction in fact, irrespective of the

pleadings, matters outside the pleadings, such as testimony and affidavits, are

considered."  *Id.*  "On a factual attack, no presumptive truthfulness attaches to the

plaintiff's allegations, and the existence of disputed material facts will not preclude

the trial court from evaluating for itself the merits of jurisdictional claims."  *Id*.

"Whether a party has Article III standing is a jurisdictional issue, and

therefore must be addressed before we may reach the merits."  *Kawa Orthodontics,*

*LLP v. Sec'y, U.S. Dep't of Treasury*, 773 F.3d 243, 245 (11th Cir. 2014); *see also*

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("Standing is a

threshold jurisdictional question which must be addressed prior to and independent

of the merits of a party's claims.") (cleaned up).  However, "pleadings must be

---

[11] Defendants subsequently filed a motion for judgment on the pleadings as to the WCPA claim a and are currently awaiting a decision.  *See Maadanian*, Dkt. 115.

something more than an ingenious academic exercise in the conceivable" and

"mere conclusory statements do not suffice" to properly allege an injury-in-fact.

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S.

669, 688, (1973); *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th

1235, 1240 (11th Cir. 2022).  Rather:

> [T]o satisfy Article III's standing requirements, a plaintiff must show
> (1) it has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged action
> of the defendant; and (3) it is likely, as opposed to merely speculative,
> that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81

(2000); *see also McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135,

1145 (11th Cir. 2014).  Moreover, "a plaintiff must demonstrate standing separately

for each form of relief sought."  *Friends of the Earth*, 528 U.S. at 185.

To survive a Rule 12(b)(6) motion, "[a] complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also

Moseley v. Carnival Corp.*, 593 F. App'x 890, 892 (11th Cir. 2014).  "Naked

assertions" like those made here "are not enough"; "a complaint must make more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Jackson v.

*Medtronic, Inc.* 2023 WL 9898218, at *2 (N.D. Ga. Jan. 23, 2023) (internal quotation marks omitted).

The Court should not "ignore specific factual details of the pleading in favor of general or conclusory allegations," and "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Youngblood-West v. Aflac Inc.*, 796 F. App'x 985, 988 (11th Cir. 2019) (same). In addition, the Court may consider documents referenced in the Complaint on a Rule 12(b)(6) motion, and may take judicial notice of public records, such as court documents, without converting a 12(b) motion into a Rule 56 motion. *See Ali S. Muhammad v. Select Portfolio Servicing, Inc.*, 2022 WL 17493711, at *5 (N.D. Ga. Sept. 8, 2022).

Claims sounding in fraud must also satisfy Rule 9(b). *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). To satisfy Rule 9(b), "claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). The Eleventh Circuit has noted that "this rule serves an important purpose, both in alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.*; *Tannehill v. Wilkie*, 2021 WL 1624275, at *20 (S.D. Ala. Jan. 25, 2021) ("The purpose of Rule 9(b) is

to ensure that the allegations of fraud are specific enough to provide notice of the acts complained of and to eliminate those complaints filed as a pretext for discovery of unknown wrongs.").

## I.   THE COURT SHOULD DISMISS THIS LATER-FILED, DUPLICATIVE ACTION WITH PREJUDICE

"It is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (internal quotation marks omitted). The claim-splitting doctrine, "ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id.* (internal citations and quotations omitted). The purpose of this doctrine is twofold: to ensure fairness to litigants and to conserve judicial resources. *Id.*; *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) ("The doctrine serves to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket.").

Notably, "[w]hile claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, 'claim splitting is more concerned with the district court's comprehensive management of its docket, where res judicata focuses on protecting the finality of judgments.'" *Vanover*, 857 F.3d at 841 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) ("By

spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases."). Accordingly, the Eleventh Circuit's test for claim-splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.*; *Villarino v. Joekel*, 2024 WL 1633619, at *6 (S.D. Fla. Mar. 29, 2024), *appeal pending*, No. 24-11124 (holding it is not required that the first case has reached a final judgment).

To that end, the rule exists to allow district courts to "dispense with duplicative litigation." *Vanover*, 857 F.3d at 841. To determine whether a case is duplicative, the court must apply a two-factor test wherein the court analyzes (1) "whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 841–42. Here, the *Cacho* Complaint should be dismissed as duplicative of the *Maadanian* SAC, as both cases involve the same parties and their privies, and both cases arise from the same transaction—namely defendants' brake booster recall.

## A.    *Cacho* Involves the Same Parties as *Maadanian*

As an initial matter, it is incontrovertible that the defendants in both actions are the same. *Compare generally* Compl., Dkt. 1 *with* RJN Ex. F, *Maadanian* SAC. Moreover, the plaintiffs in both actions are also the same, as *Cacho*'s putative class is identical to the putative class in *Maadanian*. Courts in this Circuit

have found the parties to be the same and dismissed class actions where the named plaintiff was "still a member of the class in [the previous litigation], even if he was not named a class representative therein." *Villarino*, 2024 WL 1633619, at *5 ("[T]he fact remains that another court in this district already analyzed the same facts and decertified the same class. This is exactly the type of situation the doctrine against claim splitting was created to prevent[.]"); *see also Greene v. H&R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (dismissing a class action as duplicative of a previously filed class action).

Other courts have also held that "[t]he filing of a successive, identical class action qualifies as abusive regardless of whether class certification was granted or denied in an earlier case; both scenarios entail unnecessary duplication." *In re Cypress Semiconductor Sec. Litig.*, 864 F. Supp. 957, 959 (N.D. Cal. 1994); *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) (affirming dismissal where plaintiff sought same relief as in an earlier-filed class action, even though the two actions were brought in different courts); *Shabazz v. Centurion of Tenn., LLC*, 2022 WL 402422, at *3 (W.D. Tenn. Feb. 9, 2022) (dismissing case duplicative of a class action for which plaintiff qualified as a member); *Migliori v. Honeywell, Inc.*, 2017 U.S. App. LEXIS 20396, at *8–9 (6th Cir. Oct. 16, 2017) (dismissing a class action because plaintiff was a putative member of a class seeking the same relief); *Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333–34 (D. Md. 2000). These cases make

clear that in class actions, "it is the class, not the representative, that is compared" and the plaintiffs are the same if they "represent the same interests."  *Cohen IP Law Grp., PC v. IAC/Interactivecorp.*, 2010 WL 4315286, at *2 (C.D. Cal. Oct. 25, 2010); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007); *see also Weinstein v. Metlife, Inc.*, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006) (finding no "significant difference" between the parties where the class definitions were similar and despite 11-month difference in class periods).

Here, the 25 named plaintiffs are the same named parties as those originally included as class representatives in *Maadanian*.  *Compare* Compl. ¶¶ 15–66, *with* RJN Ex. F, *Maadanian* SAC, ¶¶ 15–66.  While these 25 plaintiffs were dismissed from *Maadanian* on personal jurisdiction grounds, the 25 plaintiffs still "represent the same interests" as the remaining plaintiff in *Maadanian* because the putative classes in both actions are ***identical***.  *Compare* Compl. ¶¶ 124–25 *with* Ex. F, *Maadanian* SAC, ¶¶ 124–25.[12]  Even the class counsel is the same.[13]  *Compare* Compl. at 60, *with* Ex. F, *Maadanian* SAC, at 173–74.  Moreover, the 25 named

---

[12] Both *Cacho* and the *Maadanian* SAC allege the following putative classes: The 'Class Vehicles' include all purchasers of [sic] Mercedes vehicles in the United States that contain the Brake defect including certain 2004-2015 ML-Class, GL-Class, and R-Class vehicles," and "[t]he proposed Nationwide Class includes all persons and entities that purchased a Class Vehicle in the United States, including its territories." *Maadanian* previously also proposed separate state sub-classes for purchases of Class Vehicles from certain states, but those claims were dismissed when the 25 plaintiffs at issue here were dismissed. *See* RJN Ex. H Lasnik July 14, 2023 Order.

[13] With the sole exception of plaintiffs' local counsel in Georgia from Caplan Cobb, LLC.

plaintiffs in this action are still members of the putative class in the ongoing

*Maadanian* case.  Thus, this first prong of the claim-splitting analysis is satisfied.

> **B.    The Claims in *Cacho* Are Identical to Those in *Maadanian* and Arise From the Same Transaction**

Separate cases "arise from the same transaction or series of transactions

when the two actions are based on the same nucleus of operative facts." *Vanover*,

857 F.3d at 842 (*citing Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96

(5th Cir. 2004)).  The Eleventh Circuit has adopted the 'transactional test' from the

Restatement (Second) of Judgments § 24, whereby considerations such as

"whether the facts are related in time, space, origin, or motivation, whether they

form a convenient trial unit, and whether their treatment as a unit conforms to the

parties' expectations or business understanding or usage." *Kennedy*, 998 F.3d at

1236 (affirming dismissal of the second action even where there were additional

counts not presented in the first); *see also Vanover*, 857 F.3d at 842 (affirming

dismissal even where, the claims arguably being different, they arose from the

same underlying collection efforts set forth in the first action).  Under this

transactional test, the second-filed complaint "will be permitted only where it

raises *new and independent* claims, not part of the previous transaction, based on

the new facts." *Vanover*, 857 F.3d at 842 (quoting *Hatch v. Boulder Town Council*,

471 F.3d 1142, 1150 (10th Cir. 2006)) (emphasis in original).

Here, both this action and the *Maadanian* SAC brought claims for

(1) violation of MMWA, (2) fraud by concealment or omission; (3) negligent misrepresentation; and (4) unjust enrichment.  *Compare* Compl., Dkt. 1, Counts I–IV, *with* RJN ExF, *Maadanian* SAC, Counts I–IV (showing identical allegations for each count).  The allegations underlying these claims are also virtually identical.  *Compare* Compl. ¶¶ 1–139, *with* RJN Ex. F, *Maadanian* SAC ¶¶ 1–140 (omitting only references to plaintiff Maadanian and Washington and altering the jurisdictional claims).  Plaintiffs have not even attempted to distinguish this action from the *Maadanian* SAC by raising "new and independent claims, not part of the previous transaction, based on the new facts[.]"  *Vanover*, 857 F.3d at 842.  Rather, plaintiffs merely re-filed their ***identical*** claims from the *Maadanian* SAC (omitting a few causes of action but not adding anything new) in this Court—almost a year after these plaintiffs were dismissed from *Maadanian*.  *See* Declaration of Dana Cook-Milligan, Ex. A Redline comparison of Compl., Dkt. 1 *with* RJN Ex. F, (*Maadanian* SAC).

Tellingly, the 25 named plaintiffs filed this action alleging these same four causes of action, based on their identical factual allegations from the *Maadanian* SAC, ***two months after*** Judge Lasnik dismissed three of the four nationwide claims based on the same operative nucleus of facts.  That is, plaintiffs are attempting to relitigate the same nationwide claims in a different jurisdiction, before a different judge, in an effort to get a different result.  Such blatant claim-splitting not only

wastes substantial judicial resources, but it risks conflicting liability determinations and inconsistent judgments, and should be dismissed outright. *See Vanover*, 857 F.3d at 843 ("To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket.").

In sum, *Cacho* involves the same parties that represent the same interests and arises from the same factual allegations and transactions. Moreover, the Complaint asserts one nationwide claim that is duplicative of a claim proceeding in *Maadanian* (unjust enrichment) and three other nationwide claims that were dismissed with prejudice in *Maadanian*. The present case is thus impermissibly duplicative and should be dismissed with prejudice.

## II.    PLAINTIFFS LACK STANDING BECAUSE THEY HAVE NOT SUFFERED COGNIZABLE INJURY

### A.    Five Plaintiffs Do Not Personally Have Standing to Pursue Claims Based on Vehicles That Do Not Have the Alleged Defect

Where a plaintiff has not demonstrated a concrete harm, the plaintiff lacks standing, regardless of the standing of class members. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (finding that 6,332 class members had not demonstrated concrete harm and thus lacked Article III standing to sue on their claim). Plaintiffs cannot rely on non-specific, conclusory allegations but must introduce proof that an alleged defect exists in each of their own vehicles so as to

cause injury.  *See Lujan*, 504 U.S. at 561; *Gardner v. Mutz*, 962 F.3d 1329, 1340 (11th Cir. 2020).  Plaintiffs cannot establish standing by claiming other vehicles have experienced an issue or by bringing a class action.  *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co*., 925 F.3d 1205, 1210 (11th Cir. 2019).

Here, five of the alleged vehicles (plaintiffs Marie, McCumsey, McKinney, and Walker, in addition to plaintiff Sinelli's 2012 ML vehicle) are not in the population for the recall.  *See* Gunther Decl. ¶¶ 18, 20, 21, 29, 31 & Ex. 18.  These plaintiffs thus cannot allege a harm and have no standing for their claims.

**B.    The Recall Already Provides Plaintiffs Their Demanded Relief**

**i.    Cost of Repairs, Loaner Vehicles, and Towing Are Covered by the Recall**

Plaintiffs seek (1) out-of-pocket expenses for past repair of the braking systems, (2) out-of-pocket expenses for rental or loaner vehicles, (3) costs for future repairs, (4) towing expenses, and (5) costs of incorrectly diagnosed repairs.  *See* Compl. ¶ 9.  These expenses are eligible for reimbursement under the recall, provided plaintiffs seek such reimbursement.  *See* Gunther Decl. Ex. 1 (March 2023 Owner Notification Letter) at 1 and Ex. 2 (June 2022 Owner Notification Letter); *see also* 49 U.S.C. § 30120(d) ("A manufacturer's remedy program shall include a plan for reimbursing an owner or purchaser who incurred the cost of the remedy within a reasonable time in advance of the manufacturer's notification.").  Of the 25 named plaintiffs, only one alleges out-of-pocket expenses.  *See* Compl.

¶¶ 44–45 (Diaz Perez).  And MBUSA records indicate that Ms. Diaz Perez requested and received $4,960 for her claimed out-of-pocket expense.  *See* Gunther Decl. ¶ 23.  Because the recall and related relief is free to plaintiffs, this theory of harm fails.  *See Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1378–80 (N.D. Ga. 2023); *Hadley v. Chrysler Grp. LLC*, 2014 WL 988962, at *5 (E.D. Mich. Mar. 13, 2014), *aff'd*, 624 F. App'x 374 (6th Cir. 2015); *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *5 (N.D. Cal. Aug. 21, 2019).

### ii.  Plaintiffs' Alleged Overpayment Injuries Are Unmanifested and Nullified by the Recall

Plaintiffs' claim that their vehicles diminished in value, especially where a recall cures the claimed defect, are too speculative to show standing.[14]  "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis*, 518 U.S. at 357.

---

[14] *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628–29 (8th Cir. 1999) (applying Mississippi, New York, Pennsylvania, and Texas law) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 n.1 (7th Cir. 2002) (allowing consumers who have not experienced the claimed defect to recover "would both overcompensate buyers as a class and induce manufacturers to spend inefficiently much to reduce the risk of defects"); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099–1100 (5th Cir. 1991); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 298 (4th Cir. 1989) (implied warranty claim dismissed where plaintiffs alleged damages attributable only to "lost resale value"); *Angus v. Shiley, Inc.*, 989 F.2d 142, 147–48 (3d Cir. 1993); *In re Toyota Motor Corp.*, 2013 WL 12180769, at *4, 6 (C.D. Cal. Feb. 28, 2013) (plaintiffs cannot "show that they suffered an actual injury by arguing that they would not have paid the same purchase price for their vehicles had they known of the problem with the ABS prior to Toyota's national recall … [plaintiffs] had no problem with the braking performance of their vehicles ,,. Consequently, they have no claim against the company.").

The U.S. Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases added). "[T]he 'injury in fact' test requires . . . that the party seeking review be himself among the injured." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1000–01 (11th Cir. 2020).

Here, 23 of the 25 plaintiffs do *not* claim that the alleged issue manifested in their vehicles. While Diaz Perez and Stefanopoulos claim they "have experienced a change in the brake pedal feel," they fail to allege (1) the condition of their vehicles at the time of purchase (both purchased pre-owned vehicles), (2) when they first started experiencing a change in the brake pedal feel, and (3) whether corrosion was found to be the cause of the "change in the brake pedal feel." Compl. ¶¶ 43–45, 57–58.

Moreover, even if the defect had originally manifested in plaintiffs' vehicles, because of the recall there is no plausible theory of diminished value. For example, Diaz Perez's vehicle was inspected on July 21, 2022—almost a year before this Complaint was filed—and found to Category 1, meaning her brake booster did not need to be replaced and no further action was required. *See* Gunther Decl. ¶ 23. When a defendant offers to completely repair an alleged defect, a theory of economic loss cannot prevail. *See, e.g.*, *Cheng v. BMW of N. Am.*, 2013 WL

3940815, at *4 (C.D. Cal. July 26, 2013) ("As a practical matter, it is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the . . . defect."); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *5 (D.N.J. Sept. 30, 1997) ("Nowhere in the complaint do plaintiffs describe what injury Subclass B members have sustained that might require further compensation beyond the offer to install a replacement ignition switch free of charge . . . . It is a proposition too plain for citation that where no allegation of compensable harm has been made, there is no common law cause of action.").  Likewise, here, there is no possibility of economic loss.

### C.    Equitable Relief Is Inappropriate Where Plaintiffs Have an Adequate Remedy at Law and There Is No Alleged Future Injury

Plaintiffs seek declaratory, injunctive, and equitable relief (*see* Compl. at 59), but these cursory requests fail as a matter of law for two reasons.

*First*, plaintiffs fail to plead facts showing an inadequate remedy at law, as required when asserting equitable claims.  *See Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382 (11th Cir. 2023) (quoting *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law[.]")); *see also Mungai v. Chase Bank U.S.*, 2020 WL 10225827, at *4 (N.D. Ga. Aug. 4, 2020) ("Unjust enrichment is an equitable principle that applies only when there is no adequate remedy at law.").

24

Nor could they, as plaintiffs expressly seek money damages under each count,[15] claiming MBUSA's alleged omissions caused them "financial harm." Compl. ¶ 122; *see Clark v. Aaron's Inc.*, 914 F. Supp. 2d 1301, 1307 (N.D. Ga. 2012) (plaintiff was not entitled to injunctive relief where he sufficiently alleged facts supporting compensatory damages); *Deerskin Trading Post v. UPS of Am.*, 972 F. Supp. 665, 673 n.10 (N.D. Ga. 1997) (same).

*Second*, plaintiffs lack standing to pursue injunctive relief because they do not allege that they intend to purchase another vehicle that is: (a) subject to the recall in question; but (b) has not yet been fixed. *See generally* Compl. Nor do plaintiffs allege that defendants still sell the vehicles included in the recall or that the claimed defect remains "concealed," despite the public announcement of the recall. *See generally id.; see*, *e.g.*, *Pinon v. Daimler AG*, 2019 WL 11648560, at *33 (N.D. Ga. Nov. 4, 2019) (denying injunctive relief where plaintiffs showed no risk of continuing irreparable harm as complaint did not show defendants "currently market[ed], advertise[d], s[old] or lease[d]" the vehicles at issue). This is fatal because plaintiffs fail to allege a likelihood that they will experience any future injury as to concealment, omission, or overpayment. *See McColligan v. Vendor Res. Mgmt.*, 762 F. App'x 943, 945 (11th Cir. 2019) ("Because equitable relief is 'a prospective remedy,' a 'plaintiff's claims for equitable relief become

---

[15] Compl. ¶¶ 157, 166, 174, 184, Prayer for Relief.

moot' when that relief can no longer 'prevent the defendant's future conduct from causing future injury.'"); *Desai v. Gov't Emps. Ins. Co. GEICO*, 2023 WL 11878200, at *9 n.10 (S.D. Fla. Nov. 20, 2023) ("Plaintiff lacks standing to bring [equitable claim] because he has not pleaded a future injury as would be required[.]"); *Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1354 (S.D. Fla. 2014) ("Because there are no allegations in the Amended Complaint that the plaintiffs would purchase [the product] in the future, the undersigned finds that the plaintiffs have failed to plead a real and immediate threat of future injury and thus have failed to plead standing to seek injunctive relief.") (cleaned up).

## III.    THE RECALL PROVIDES INDEPENDENT GROUNDS TO DISMISS PLAINTIFFS' CLAIMS

Plaintiffs' claims should likewise be dismissed as prudentially moot, because defendants voluntarily implemented a comprehensive recall program that "provides plaintiff[s] with 'precisely the relief they seek through the [complaint],'" and "any additional relief that [it] could award would constitute an impermissible double recovery." *Ward-Richardson*, 690 F. Supp. 3d at 1380 ("Permitting [the plaintiff] to retain benefit-of-the-bargain damages for the difference in value between a non-defective truck and the defective truck, even though [the defendant] has repaired his truck, would afford him precisely the type of double-recovery windfall . . . courts have held is impermissible.") (citing *Sater v. Chrysler Grp. LLC*, 2016 WL 7377126, at *7 (C.D. Cal. Oct. 25, 2016)).

Article III limits jurisdiction to only actual, ongoing cases or controversies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 768 (11th Cir. 2006). This "case or controversy" requirement persists throughout the case and prohibits federal courts from retaining jurisdiction over a case when the court's decisions can no longer affect the rights of the parties. *See Ward-Richardson*, 690 F. Supp. 3d at 1376. Where a controversy becomes "so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand" (*Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012) (internal quotation marks omitted)), the prudential mootness doctrine allows courts to withhold requested relief. *See Ward-Richardson*, 690 F. Supp. 3d at 1376.

Judge Richard Story's decision in *Ward-Richardson* is particularly instructive. Plaintiffs filed a putative class action against FCA alleging that certain Jeep Wrangler 4xe models were equipped with defective electrical or computer systems. *See id.* at 1375. Plaintiffs sought a litany of relief similar to the relief sought here. *Id.* Though the recall in this case issued **before** the complaint was filed, in *Ward-Richardson* the recall issued after the lawsuit. *See id.* Pursuant to their recall, FCA sent letters to all owners/lessors of affected vehicles advising that FCA would repair the claimed defect for free and reimburse all owners/lessors of affected vehicles who already paid for repairs. *See id.* at 1376. The court held that the recall mooted and deprived the court of jurisdiction as to both plaintiffs'

27

equitable and monetary claims for relief. *Id.* at 1380–81.  The court reasoned that the recall promised to remove the very defect that formed the basis of plaintiffs' claims and "[a]s a result, [the recall] provide[d] the exact relief (both equitable and monetary) Plaintiffs seek through the [Complaint]." *Id.* at 1380.[16]  Moreover, the court noted that the recall invoked the oversight powers of a coordinate branch of government—NHTSA—which is "vested with statutory authority (and responsibility) to monitor 'each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the Safety Act and Federal regulations.'" *Id*. at 1379 (quoting *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *3 (E.D. Mich. Mar. 22, 2023)).  In light of NHTSA's involvement, the case contained all the "traditional ingredients of a prudentially moot case," and "there remains not enough value left for the [court] to add in this case to warrant carrying on with the business of deicing the merits." *Id*. (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-11 (10th Cir. 2012) (noting that "once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap.").

This case is on all fours with *Ward-Richardson*.  As in *Ward-Richardson*, plaintiffs seek both equitable and monetary relief, including requiring defendants to

---

[16] *See also Cheng v. BMW of N. Am.*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("As a practical matter, it is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the . . . defect.").

repair the defect, enjoining defendants from engaging in unlawful conduct, and to fully reimburse all class members for all costs and economic losses. *See* Compl., Prayer for Relief. Like in *Ward-Richardson*, plaintiffs claim such economic losses include unreimbursed expenses and the diminished value of their vehicles. *See id.* ¶ 9. However, like FCA, defendants voluntarily and diligently implemented a comprehensive recall in cooperation with NHTSA, under the National Traffic and Motor Vehicle Safety Act ("Safety Act")—four days before *Maadanian* was filed and over two years before the filing of this action. Defendants have already mailed letters to all those with affected vehicles and have worked tirelessly for the last two years to effectuate the recall program under the supervision of NHTSA. As detailed above, the recall involves inspecting, testing, and when necessary, replacing the brake boosters, all free of charge to the consumer. *See* Gunther Decl. Ex. 1 at 1 (Mar. 2023 Owner Notification Letter) & Ex. 2 at 1 (June 2022 Owner Notification Letter). In addition, affected customers are eligible for towing to repair shops, loaner vehicles, rental reimbursements, and other costs, including vehicle buybacks in certain instances, as well as reimbursements to customers who performed repairs prior to the recall itself. *Id.* at 3. As such, the recall eliminates claims for economic loss, as it provides for reimbursement of out-of-pocket expenses, and restores any alleged diminution in value or any alleged overpayment premium by removing the alleged defect. *Ward-Richardson*, 690 F. Supp. 3d at 1380.

Moreover, as the court in *Ward-Richardson* noted:

> By filing documents with NHTSA notifying it of a defect, [defendants]
> set into motion the great grinding gears of a statutorily mandated and
> administratively overseen national recall process.  By virtue of its
> filing, [defendants are] now obliged by statute to notify all relevant
> registered owners of the defect.  The company has assumed as well the
> statutory duty to remedy the defect or noncompliance without charge
> when the vehicle or equipment is presented for remedy.  And
> [defendants have] subjected itself to continuing oversight of (and
> potential penalties imposed by) NHTSA.

690 F. Supp. 3d at 1379 (quoting *Winzler*, 681 F.3d at 1211).  In light of NHTSA's

involvement, this matter has all the traditional ingredients of a prudentially moot

case, and the case should be dismissed.  *See id*.

## IV.    THE COMPLAINT IS AN IMPROPER "SHOTGUN PLEADING"

"Courts in the Eleventh Circuit have little tolerance for shotgun

pleadings.  They waste scarce judicial resources, inexorably broaden the scope of

discovery, wreak havoc on appellate court dockets, and undermine the public's

respect for the courts."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th

Cir. 2018).  "'Shotgun' pleadings include," in relevant part, "complaints that:

(1) contain multiple counts where each count adopts the allegations of all

preceding counts; (2) are replete with conclusory, vague, and immaterial facts not

obviously connected to any particular cause of action; . . . or (4) assert multiple

claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions."  *Webb v. Miami-Dade County*, 2024 WL

30

4222573, at *5 (11th Cir. Sept. 18, 2024) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)).

Here, plaintiffs violate the first rule by consistently "incorporat[ing] by reference all preceding allegations as though fully set forth" in each count of the Complaint. *See* Compl. ¶¶ 140, 158, 168, 175. The Complaint is also replete with "conclusory, vague, and immaterial facts" that fail to give defendants adequate notice of the ground upon which each claim rests. *See, e.g.*, Compl. ¶¶ 86, 89–96, 111. Plaintiffs violate the last rule by using the term "defendants" or "Mercedes" at least 430 times, without delineating the alleged conduct of each of three different companies. *See generally* Compl. Given the Complaint constitutes at least three examples of impermissible "shotgun pleadings," the Complaint should be dismissed.

## V. PLAINTIFFS CANNOT ASSERT CLAIMS UNDER THE MAGNUSON-MOSS WARRANTY ACT

Plaintiffs' claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.* ("MMWA") (Nationwide Count I), fail for multiple reasons. *First*, plaintiffs cannot satisfy the jurisdictional requirement for class claims under the MMWA, which requires at least 100 named plaintiffs. 15 U.S.C. § 2310(d)(3) ("No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . (c) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). As such, the MMWA claim must be dismissed. *Lewis v. MBUSA*, 530 F. Supp. 3d 1183, 1207 (S.D. Fla. 2021)) (dismissing MMWA claim

for failure to meet this jurisdictional bar and finding CAFA does not supersede the plain text of the MMWA); *Inouye v. Adidas Am., Inc.*, 2023 WL 2351654, at \*25 (M.D. Fla. Mar. 3, 2023) (same).

*Second*, plaintiffs' MMWA claims must be dismissed, as they have not even attempted to allege facts showing any viable state-law warranty claims. *See, e.g.*, *Fedrick v. MBUSA*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005) ("The [MMWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law."); *Inouye*, 2023 WL 2351654, at \*9 ("[F]or a plaintiff to bring a claim pursuant the MMWA, he or she must properly allege a 'sustainable [state-law] claim for breach of warranty.'").

*Third*, plaintiffs do not allege facts meeting the requirements of the warranty at issue, the NVLW.  As an initial matter, the NVLW does not cover design defects. *See* RJN, Ex. C, at 11 (2011 NVLW) (warranting "repairs or replacements necessary, to correct **defects in material or workmanship** arising during the warranty period") (emphasis added).  Courts have repeatedly held that a warranty that provides protection against "defects in materials or workmanship" does not cover design defects. *See, e.g.*, *Tull Bros. v. Peerless Prods., Inc.*, 953 F. Supp. 2d 1245, 1257 (S.D. Al. 2013); *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012); *Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338 (6th Cir. 1958); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750 (8th

Cir. 2013); *Voelker v. Porsche Cars N. Am. Inc.*, 353 F.3d 516 (7th Cir. 2003).

Plaintiffs here only allege a design defect. Compl. ¶ 2 ("This design Defect is uniform and common to all Class Vehicles . . ."); ¶ 3 ("Defendants had actual knowledge of the design Defect . . . Defendants knew or should have known of the design Defect"); ¶ 81 ("Knowledge and information regarding the Brake Defect was in . . . pre-production design failure mode analysis, production design failure mode analysis"). As Judge Lasnik already ruled, because design defects are not covered by the NVLW, plaintiffs' claim fail. *See* Ex. I, Lasnik April 11, 2024 Order at 15.

In addition, plaintiffs are time-barred by the terms of the NVLW itself. The NVLW is expressly limited to "48 months or 50,000 miles, whichever occurs first." RJN, Ex. C, at 11 (2011 NVLW). Plaintiffs' vehicles, as alleged, are all between nine and 18 years old. Moreover, plaintiffs do not allege that they experienced any brake booster issues during the warranty period, or that they sought repairs of the alleged defect while their vehicles were under warranty—so they have no warranty-based claims. *See, e.g.*, *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (affirming dismissal because plaintiffs failed to present vehicle for repair at all, let alone within the warranty period); *Callen v. Daimler AG,* 2020 WL 10090879, at *9 (N.D. Ga. June 17, 2020) (dismissing claims for failure to "allege[] any facts from which to glean whether the NVLW remained in effect when" alleged defects occurred). Further, to the extent plaintiffs claim an

express or implied warranty beyond the NVLW, Georgia has a four-year statute of limitations for warranty claims that runs from the date of the original delivery of the vehicle to the initial purchaser (*see Monticello v. Winnebago Indus.*, 369 F. Supp. 2d 1350, 1360 (N.D. Ga. 2005)), so the statute of limitations has already run.

Finally, any purported express warranty claim also fails because plaintiffs did not provide any "direct written notification" of their issues to defendants, as required by the NVLW. RJN Ex. C. The NVLW requires notice to provide defendants "the opportunity to cure the problem." *Id*. Plaintiffs do not allege they provided the requisite notice. *See* Compl., *passim*. Thus, their claims must be dismissed. *See, e.g.*, *Callen*, 2020 WL 10090879, at *11 (dismissing claims based on notice requirement in NVLW); *Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44, 49 (11th Cir. 2012) (holding that a party cannot bring a claim under MMWA for failure to comply with a written warranty unless the party gave the warrantor a reasonable opportunity to cure).

## VI.    PLAINTIFF'S FRAUD-BASED CLAIMS FAIL FOR MULTIPLE REASONS

Rule 9(b) applies to plaintiffs' concealment- and omission-based claims because they sound in fraud. *See Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018) (applying Rule 9(b) to fraudulent concealment and negligent misrepresentation). To plead fraud with the required particularity, a plaintiff must allege:

> (1) precisely what statements or omissions were made in which
> documents or oral representations; (2) the time and place of
> each statement and the person responsible for making (or,
> in the case of omissions, not making) them; (3) the content of
> such statements and the manner in which they misled the
> plaintiff; and (4) what the defendant obtained as a consequence
> of the fraud.

*Farr v. Daling*, 684 F. Supp. 3d 1358, 1377 (N.D. Ga. 2023). "A blanket allegation

that 'defendants made misrepresentations' without any further specificity as to each

defendant is insufficient," and "[g]eneralized allegations lumping multiple

defendants together are insufficient." *Quashie v. Olympus Am., Inc.*, 315 F. Supp.

3d 1329, 1340 (N.D. Ga. 2018). "In fraudulent concealment actions, the allegedly

defrauded party must provide that the alleged defrauder had actual, not merely

constructive, knowledge of the fact concealed." *Remax N. Atlanta v. Clark*, 244

Ga. App. 890, 894 (2000). "When a claimant alleges that defendants 'knew or

should have known' of the falsity of their statements, these allegations assert at

most a constructive knowledge on the part of the defendants, and this is not

enough." *WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1358–59 (N.D.

Ga. 2007). Additionally, "[t]o sustain a claim for fraud, Plaintiff must have relied

on the fraudulent statements," and such statements should be alleged without a

need for discovery. *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321,

1340 (N.D. Ga. 2016).

Here, plaintiffs assert claims for fraud by concealment or omission

(Nationwide Count II) and negligent misrepresentation (Nationwide Count III). These claims should be dismissed for several reasons, including plaintiffs' failure to plead facts showing: (1) pre-sale knowledge; (2) specific actionable misrepresentations or omissions or any plausible reliance; (3) a duty to disclose; (4) intent; and (5) injury.

### A.    Plaintiffs Failed to Plead Pre-Sale Knowledge

Plaintiffs' fraud-based claims should be dismissed because the Complaint does not plead facts showing that defendants knew of the alleged defect when plaintiffs purchased their vehicles.  *See ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 894 (2000) ("In fraudulent concealment actions the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed.").  Preliminarily, 22 of the plaintiffs do not even allege *when* they purchased their vehicles.  *See* Compl. ¶¶ 15–42, 47–52, 55–56, 59–66.  The other three plaintiffs concede that they purchased their vehicles preowned from third parties, not from defendants.  *Id.* ¶¶ 43, 53, 57.

Plaintiffs generally rely on three broad sources of information to allege that defendants "knew or should have known" of the alleged defect: (1) alleged statements in an unidentified 2009 Technical Service Bulletin ("TSB") (Compl. ¶¶ 3, 90–91); (2) pre-production testing (*id.* ¶¶ 3, 80–81); and (3) unidentified customer complaints, data, and claims (*id.* ¶¶ 3, 81, 83–84).  None of these satisfy

plaintiffs' pleading burden.  Notably, Judge Lasnik already held in *Maadanian* that these same alleged sources of information, pled verbatim in *Cacho*, are inadequate to plead pre-sale knowledge and dismissed identical Nationwide Counts II and III and warranty-based claims.  *See* RJN Ex. I, Lasnik April 11, 2024 Order, at 11–14. Defendants submit the same result should be followed here.

### i.    TSBs Do Not Show Knowledge of the Alleged Defect

Plaintiffs incorrectly claim defendants "knew or should have known" about the alleged defect because of a TSB that was allegedly issued by "Mercedes" on June 15, 2009, that "warned of the danger corrosion may have on brake components in Mercedes vehicles, including Class Vehicles."  *See* Compl. ¶ 3.  But plaintiffs then concede that this TSB applied to 2007 ML-Class vehicles only and related to corrosion protection coatings for brake components being potentially "damaged or stripped away *if highly concentrated acid-based cleaners* are used."  *Id.* ¶ 90 (emphasis added).  Such circumstances are entirely different from the potential corrosion *due to water exposure* (*id.* ¶ 99) that is the subject of the recall, so this TSB cannot be evidence of defendants' pre-sale knowledge as to the alleged defect.

Moreover, a single TSB that is not specific to the defect at hand is not sufficient to establish pre-sale knowledge.  *See Lewis v. MBUSA*, 530 F. Supp. 3d 1183, 1223 (S.D. Fla. 2021) (finding a single TSB to be insufficient to support knowledge where the TSB alleged did not address the cause of the problem); *see*

*also Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at \*6 (E.D. Mich. Mar. 18, 2020) (TSB only supported finding that manufacturer knew of some problem, but not of the specific defect). To the contrary, a TSB is a method of communicating "instructions for making . . . diagnoses and repairs" and a supplement to a service manual. 40 C.F.R. § 86.096-38(g)(2)(i); *Suddreth v. MBUSA*, 2011 WL 5240965, at \*3 n.3 (D.N.J. Oct. 31, 2011) (verifying same as to MBUSA). Thus, a TSB "is not and cannot fairly be construed . . . as an admission of a design or other defect, because technical service bulletins are routinely issued to dealers to help diagnose and repair typical complaints." *Am. Honda Motor Co. Inc. v. Super. Ct.*, 132 Cal. Rptr. 3d 91, 100 (Ct. App. 2011); *Alban v. BMW of N. Am.*, 2011 WL 900114, at \*12 (D.N.J. Mar. 15, 2011) ("[T]he Court is hesitant to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect. Such advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products[.]"). If a TSB were sufficient, there would be a class action every time a TSB is issued. This is quite clearly not justified.

Here, as Judge Lasnik found, the June 2009 TSB only warned "of the potential for damage to braking components by the use of highly concentrated acid-based cleaners [and] is unrelated to the facts that water could become trapped in the brake booster housing and cause corrosion. That both issues involve damage

to the braking system is not enough to give rise to a plausible inference that knowledge of one problem led to knowledge of the other."[17]  RJN Ex. I, Lasnik April 11, 2024 Order, at 14.

> ### ii.    Plaintiffs' Vague Claims About Pre-Production Testing are Insufficient to Establish Pre-Sale Knowledge

Plaintiffs' vague allegations regarding unspecified internal pre-production testing, failure mode analysis, and quality control mandates also are insufficient. *See* Compl. ¶¶ 3, 80–81.  Courts recognize that claims of knowledge based on "pre-production testing," "design failure mode and analysis data," "early consumer complaints," "aggregate warranty data," "testing conducted in response to consumer complaints," and "repair order and parts data" are insufficient to establish pre-sale knowledge of a defect.  *Lewis*, 530 F. Supp. 3d at 1221 ("the assertions regarding testing, reports, data, and analyses [that] do not elaborate whatsoever as to what the information actually showed . . . are precisely the kind of conclusory allegations that *Iqbal* and *Twombly* caution courts to disregard."); *Hall*, 2020 WL 1285636, at *3; *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *19-22 (D.N.J. Apr. 1, 2024).  Here, "[t]here is no indication that defendants' product testing or analysis revealed that the aesthetic rubber sleeve

---

[17] Plaintiffs also vaguely mention a 2017 recall, but it is unclear whether plaintiffs claim this as a basis for pre-sale knowledge.  *See* Compl. ¶ 94.  Regardless, the 2017 recall not only post-dates the manufacture and presumed sale of plaintiffs' vehicles, but it, too, involved a different issue.  *See* RJN Ex. I, Lasnik April 11, 2024 Order, at 14.

around the brake booster housing caused corrosion in the joint area . . .  Plaintiff

provides no specifics regarding the nature of the testing, when it occurred, who

conducted it, what was found, or any of the details that could justify an allegation

of fraud[.]"  RJN Ex. I, Lasnik April 11, 2024 Order, at 13.

### iii.    Anonymous Complaints Do Not Plead Pre-Sale Knowledge

The 10 anonymous, cherry-picked posts from third-party websites that

plaintiffs cite also fail to plausibly allege defendants' pre-sale knowledge of the

alleged brake booster issue.  In fact, ***none*** of the 10 anonymous complaints

mention corrosion at all.  *See* Compl. ¶ 86.  "[C]onsumer complaints suffice to

establish knowledge only where there were an unusual number of complaints, such

that the manufacturer would be on notice of a *specific* problem."  *Lewis*, 530 F.

Supp. 3d at 1223 (emphasis added) (quoting *Sloan v. GM LLC*, 2017 WL 3283998,

at *7 (N.D. Cal. Aug. 1, 2017)).

As Judge Lasnik noted, "[t]he consumer complaints on which [plaintiffs rely,

quoted verbatim in the [Complaint], involve general reports of failed or diminished

braking power, locked brakes, unexplained accelerations, and leaking brake

fluid…Not only is there no indication that these issues were caused by an aesthetic

rubber sleeve and/or corrosion in the joint area, but many of the entries are dated

after 2011 and state that defendants were unable to duplicate or diagnose the

problems." RJN Ex. I, Lasnik April 11, 2024 Order, at 13.

**B.    Plaintiffs Do Not Identify Any Actionable Misrepresentation or Omission and Do Not Allege Facts Showing Reliance**

Plaintiffs' claims must be dismissed because they are based on conclusory allegations that all "defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems," and "reasonable consumers expect that their vehicle [will] have a functional braking system, and . . . rely on those facts in deciding whether to purchase or retain a new or used motor vehicle."  Compl. ¶¶ 161, 163.  Because plaintiffs do "not identify any statements that were misrepresentations" and do "not indicate which Defendant made any particular statement," their fraud-based claims must be dismissed.  *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1340 (N.D. Ga. 2016); *Bauser v. Porsche Cars N. Am., Inc.*, 2024 WL 2406884, at *42 (N.D. Ga. Mar. 25, 2024) (granting motion to dismiss as to plaintiff's fraud claims for failure to provide specific allegations of what plaintiff viewed).

Furthermore, plaintiffs cannot satisfy their burden by pointing to slogans or by alleging that "Mercedes" generally promotes its vehicles as safe and reliable. *See* SAC ¶ 76.  "Statements made to puff goods are not actionable in misrepresentation even if untrue."  *Mfr. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982); *Callen v. Daimler AG*, 2020 WL 10090879, at *17 (N.D. Ga. June 17, 2020) (finding identical statements to be nonactionable).

Finally, for the three plaintiffs who say they purchased their vehicles pre-

owned from third parties, they cannot plead reliance on contemporaneous statements by defendants.  Moreover, the Complaint is devoid of required factual allegations and contains only boilerplate, conclusory claims of reliance.  *See* SAC ¶ 173.

### C.    Plaintiff Have Not Alleged Facts Showing a Duty to Disclose

A duty to disclose is required for a viable common-law fraudulent-omission or concealment claim.  *Lilliston v. Regions Banks*, 288 Ga. App. 241, 244 (2007); *GE Life & Annuity Assurance Co. v. Barbour*, 191 F. Supp. 2d 1375, 1383 (M.D. Ga. 2002) ("An obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts.") (citing *Williams v. Dresser Indus.*, 120 F.3d 1163, 1167 (11th Cir. 1997)).  Plaintiffs' claims must fail because they allege no facts establishing a duty to disclose that defendants owed to them.  "Th[e] duty to disclose arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties."  *See Patricia Young v. Cmty. Health Sys.*, 2023 WL 6121795, at *11 (11th Cir. Sep. 19, 2023).  However, in the absence of a special relationship, fraud claims for failure to disclose must fail.  *See McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015).

Plaintiffs do not allege facts showing a fiduciary relationship with defendants, and only make a boilerplate claim that defendants had "superior knowledge."  *See, e.g.*, Compl. ¶¶ 80, 85, 163.  As discussed above, plaintiffs do not plead facts

establishing such knowledge, but even if they had, their claims still must be

dismissed because a "duty to disclose arising from superior knowledge" is only

imposed on a seller "in an arm's length transaction."  *Garcia v. Chrysler Grp. LLC*,

127 F. Supp. 3d 212, 237 (S.D.N.Y. 2015) (applying Georgia law).  Plaintiffs do not

allege (and cannot allege) that they purchased their vehicles from defendants or

otherwise engaged in an arm's-length transaction with them, and they do not allege

that they interacted with defendants at all in purchasing their vehicles.

### D.    Plaintiffs Have Not Alleged Facts Showing Fraudulent Intent

In Georgia, fraudulent intent also is a required element for common-law

fraud.  *See, e.g.*, *Remax*, 244 Ga. App. at 893.  Here, plaintiffs' conclusory assertions

regarding defendants' intent[18] do not suffice.  *WFG Nat'l Title Ins. Co. v. 3225 Cedar*

*St., LLC (GA)*, 2023 WL 10476014, at *8 (N.D. Ga. Sept. 8, 2023).  Even if the

conclusory claims were credited (they should not be), plaintiffs still fail to show

defendants intended to commit fraud or engaged in conscious misbehavior or

recklessness.  Instead, plaintiffs allege that defendants "concealed or suppressed

these material facts . . . to maintain a market for their vehicles, to protect profits, and

to avoid recalls that would hurt the brand's image and cost money."  Compl. ¶ 166.

"[S]imply alleging a defendant's self-interested desire to increase sales does not give

rise to an inference of fraudulent intent."  *Colpitts v. Blue Diamond Growers*, 527 F.

---

[18] *See*, *e.g.*, Dkt. 1, Compl. ¶¶ 79, 92, 110, 150, 160, 163, 165, 167, 182.

Supp. 3d 562, 586 (S.D.N.Y. 2021); *see also Aspen Am. Ins. Co. v. Tasal, LLC*, 508 F. Supp. 3d 1179, 1185 (M.D. Fla. 2020) ("Notably, a general profit motive is insufficient to plead fraudulent intent.").  Because plaintiffs cannot allege the requisite facts, they cannot establish this necessary element of fraud.

### E.    Defendants Caused No Injury to Plaintiffs

Finally, as discussed *supra*, plaintiffs have not alleged facts showing either that their vehicles manifested the alleged defect or that they have suffered cognizable injury-in-fact—so even if their claims were otherwise viable, they have not adequately alleged causation or recoverable damages.  In addition, plaintiffs do not allege that they interacted with defendants, or that they would have otherwise been in the position at the time of purchase to receive a disclosure from defendants. As such, injury causation requirements provide an independent basis to dismiss plaintiffs' fraud-based claims.  *Brazil v. Janssen Rsch. & Dev. LLC,* 249 F. Supp. 3d 1321, 1339 (N.D. Ga. 2016) ("A plaintiff asserting a fraud claim under Georgia law must establish five elements [including] damage to the plaintiff.").

## VII.  PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR MULTIPLE REASONS

As discussed in Section I, *supra*, *Maadanian* has a pending unjust enrichment claim, asserted as nationwide, brought on behalf of the same proposed class and by the same plaintiffs' counsel.  That entirely duplicative, pre-existing claim (for which the named plaintiffs here are presumably proposed class members) is an independent

reason this claim should be dismissed.  Plaintiffs' unjust enrichment claim

(Nationwide Count IV) fails for three additional reasons too.

*First*, unjust enrichment is ***not*** a separate and distinct cause of action; it is

only an alternative remedy for a failed contract.  *See Collins v. Athens Orthopedic*

*Clinic*, 356 Ga. App. 776, 779, n. 6 (2020) (dismissing unjust enrichment claim

because "our case law is clear; unjust enrichment must be plead as an alternative

remedy and not, as the plaintiffs have done here, as a separate tort."); *Gwinnett*

*County v. Netflix, Inc.*, 367 Ga. App. 138, 150 (2023) (same); *Valencia v. Universal*

*City Studios LLC*, 2014 WL 7240526, at *5 (N.D. Ga. Dec. 18, 2014) (same);

*Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1357 (N.D. Ga. 2012) (same).

Plaintiffs' unjust enrichment claim thus fails and must be dismissed outright.

*Second*, even if it were a distinct cause of action (it is not), plaintiffs' unjust

enrichment claim still fails because "unjust enrichment is available only when there

is no legal contract."  *See In re Atlas Roofing Corp. Chalet Shingle Prod. Liab.*

*Litig.*, 2014 WL 3360233, at *3 (N.D. Ga. July 9, 2014) (citing *Am. Casual Dining,*

*L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006).  "If

there is a valid contract, 'then Plaintiff[s] cannot succeed on an alternative theory of

recovery for unjust enrichment.'"  *Id*. (quoting *Stroman v. Bank of Am. Corp.*, 852 F.

Supp. 2d 1366, 1378 (N.D. Ga. 2012).  Here, plaintiffs allege in their MMWA claim

that "Defendants provided Plaintiffs and the other Class members with a written

warranty in connection with the purchases of their vehicles[.]"  Compl., Dkt. 1 ¶

146.  Moreover, it is incontrovertible that the parties are bound by the NVLW.  *See*

RJN, Ex. C, at 11 (2011 NVLW); *see also Callen*, 2020 WL 10090879, at *13-14

(granting motion to dismiss plaintiffs' unjust enrichment claim).  Moreover, the fact

that any warranty claim under the NVLW will not be successful is irrelevant—

plaintiffs may only prevail on an unjust enrichment claim in the ***absence of a***

***contract***¸ not just in the absence of a successful claim.  *See id*. (quoting *In re Atlas*

*Roofing Corp.*, 2014 WL 3360233, at *3).  Though the parties disagree about

whether the alleged defect is covered under the NVLW, that fact does not implicate

the fundamental validity or enforceability of the NVLW—so it is of no moment.  *See*

*id*.

    *Third*, the prevailing opinion of this Court[19] is that "unjust enrichment claims

lie only in those situations where a defendant has received a direct benefit from a

plaintiff."  *Archer v. Holmes*, 2018 WL 534475, at *5 (N.D. Ga. Jan. 23, 2018); *see*

*also Peterson v. Aaron's, Inc.*, 2015 WL 5479877, at *2 (N.D. Ga. Sept. 16, 2015)

(holding that indirect benefits are insufficient to sustain a claim for unjust

enrichment); *In re White*, 559 B.R. 787, 807 (Bankr. N.D. Ga. 2016) (". . . Georgia

law does not support claims of unjust enrichment that arise from indirect benefits.");

---

[19] *See RMS of Ga., LLC v. Dynatemp Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119246, at *4-6 (N.D. Ga. June 3, 2024) (upholding dismissal of plaintiffs' unjust enrichment claim) (gathering cases).

*BH Hasid, LLC v. IA Daron Vill., LLC*, 2020 WL 13526606, at *4 (N.D. Ga. Jan. 28, 2020) ("The failure to allege that [plaintiff] directly conferred a benefit on defendants is fatal to the unjust enrichment claim."); *Vu v. Ho*, 2020 WL 13568101, at *4 (N.D. Ga. Mar. 18, 2020) ("Without evidence of a direct benefit, there can be no claim for unjust enrichment."); *Trusted Data Sols., LLC v. Kotchen & Low, LLP*, 2015 WL 11251959, at *7 (N.D. Ga. Feb. 6, 2015) ("Furthermore, a party can be unjustly enriched only when it receives a direct benefit from the services provided by the claimant."). Purchasing a vehicle from an unspecified dealership or unknown private seller does not suffice. Because none of the plaintiffs allege that they purchased their vehicles directly from defendants, their claims must be dismissed. *See* Compl., *passim.*

## CONCLUSION

For these reasons, plaintiffs' claims should be dismissed with prejudice. In light of the complexities involved in this matter, as discussed in depth above, defendants respectfully request oral argument.

Respectfully submitted this 20th day of December 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

*/s/ S. Wade Malone*
S. Wade Malone
Georgia Bar No. 468015
Wade.malone@nelsonmullins.com
Atlantic Station

47

201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6257
Facsimile: (404) 322-6050

**WINSTON & STRAWN LLP**

Troy M. Yoshino (pro hac vice)
Dana L. Cook-Milligan (pro hac vice)
Tyoshino@winston.com
dlcook@winston.com
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Lisa M. Coutu (pro hac vice)
LCoutu@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Defendants Mercedes-Benz USA, LLC, Mercedes-Benz Aktienglesellschaft, and Mercedes-Benz Group Aktienglesellschaft*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in compliance with Local Rule 5.1(C), that the foregoing has been prepared using 14 point Times New Roman font, with a top margin and a left margin of not less than 1 inch.

*/s/ S. Wade Malone*
S. Wade Malone
Georgia Bar No. 468015
Wade.malone@nelsonmullins.com
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6257
Facsimile: (404) 322-6050

Troy M. Yoshino (pro hac vice)
Dana L. Cook-Milligan (pro hac vice)
tyoshino@winston.com
dlcook@winston.com
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Lisa M. Coutu (pro hac vice)
LCoutu@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Defendants Mercedes-Benz*
*USA, LLC, Mercedes-Benz*
*Aktienglesellschaft, and Mercedes-Benz*
*Group Aktienglesellschaft*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which automatically sends e-mail notification of filing to any attorneys of record.

This 20th day of December, 2024.

*/s/ S. Wade Malone*
S. Wade Malone
Georgia Bar No. 468015
Wade.malone@nelsonmullins.com
Atlantic Station
201 17th Street NW
Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6257
Facsimile: (404) 322-6050

Troy M. Yoshino (pro hac vice)
Dana L. Cook-Milligan (pro hac vice)
tyoshino@winston.com
dlcook@winston.com
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Lisa M. Coutu (pro hac vice)
LCoutu@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Defendants Mercedes-Benz USA, LLC, Mercedes-Benz*

*Aktienglesellschaft, and Mercedes-Benz Group Aktienglesellschaft*