# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| LEONARDO CACHO, RUBEN CHARLES, CARL CLARK, LINDA CREA, SR., BRANDON DUELING, ROXIE HARRIS, WENDER JEUDY, WANDA JONES, SEAN K. LEE, TINA MARIE, LETITIA MATTHEWS, ROBERT MCCUMSEY, RULESHA MCKINNEY, BIANCA ORTIZ, FRANCY DIAZ PEREZ, JAMES POWELL, ANTHONY PYLES, ELLERY RICHARD, JEFFREY ROBINSON, MARCIO SINELLI, THOMAS STEFANOPOULOS, BETTY WALTON, JENNIFER WALKER, HUEY WILLIAMS, and ANTONIO WYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br>    v.<br><br>MERCEDES-BENZ USA, LLC, MERCEDES-BENZ AKTIENGESELLSCHAFT, and MERCEDES-BENZ GROUP AKTIENGESELLSCHAFT,<br><br>                  Defendants. | Case No. 1:24-cv-02894-ELR |

# DECLARATION OF DANA L. COOK-MILLIGAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION <u>COMPLAINT</u>

I, Dana L. Cook-Milligan, declare and state as follows:

1.    I am an attorney at the law firm of Winston & Strawn LLP, counsel for Defendants Mercedes-Benz USA, LLC, Mercedes-Benz Group AG, and Mercedes-Benz AG ("Defendants") in this action and in the Western District of Washington at Seattle, *Maadanian v. MBUSA,* No. 2:22-cv-00665 (W.D. Wash.) (Lasnik, J.) ("the Relation Action"). I make this Declaration based on my personal knowledge and in support of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint.  If called as a witness, I could and would competently testify thereto.

2.    On August 10, 2022 plaintiff Maadanian and the 25 named plaintiffs filed their Second Amended Complaint in the Related Action.

3.    On June 28, 2024, the same 25 plaintiffs, excluding Maadanian, filed a Complaint in the present action.

4.    A redline of the *Maadanian* Second Amended Complaint and the *Cacho* Complaint is attached as **Exhibit A,** comparing the two complaints and identifying any differences between the two complaints. The redline was created using Litera Compare.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated  December 20, 2024

_____

Dana L. Cook-Milligan

# Exhibit A

Timothy W. Emery (WA State Bar #34078)
**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
emeryt@emeryreddy.com
James E. Cecchi (*admitted pro hac vice*)
Caroline F. Bartlett (*admitted pro hac vice*)
Jordan M. Steele (*admitted pro hac vice*)
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY** & **AGNELLO, P.C.**
5 Becker Farm Road
New Jersey, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyme.com
cbartlett@carellabyme.comjst
eele@carellabyme.com

*Attorneys for Plaintiffs and the Putative Class*

*[Additional counsel listed on signature page]*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE ~~WESTERN~~NORTHERN DISTRICT OF ~~WASHINGTON AT SEATTLE~~GEORGIA ATLANTA DIVISION

| | |
|---|---|
| ~~SEYYED JAVAD MAADANIAN,~~ LEONARDO CACHO, RUBEN CHARLES, ~~CARL CLARK, LINDA CREA, SR., BRANDON DUELING, ROXIE HARRIS, WENDER JEUDY, WANDA JONES, SEAN K. LEE, TINA MARIE, LETITIA MATTHEWS, ROBERT MCCUMSEY, RULESHA MCKINNEY, BIANCA ORTIZ, FRANCY DIAZ PEREZ, JAMES POWELL, ANTHONY PYLES, ELLERY RICHARD, JEFFREY ROBINSON, MARCIO SINELLI, THOMAS STEFANOPOULOS, BETTY WALTON, JENNIFER WALKER, HUEY WILLIAMS, and ANTONIO WYNN, Individually And On Behalf Of All Others Similarly Situated,~~<br><br>Plaintiffs,<br><br>v.<br><br>Defendants. | **Jury Trial Demanded**<br><br>Case No. ~~2:~~22-cv-00665 ~~Honorable Robert S. Lasnik~~ _____ |
| CARL CLARK, LINDA CREA, SR., BRANDON DUELING, ROXIE HARRIS, | |

WENDER JEUDY, WANDA JONES, SEAN K. LEE, TINA MARIE, LETITIA MATTHEWS, ROBERT MCCUMSEY, RULESHA MCKINNEY, BIANCA ORTIZ, FRANCY DIAZ PEREZ, JAMES POWELL, ANTHONY PYLES, ELLERY RICHARD, JEFFREY ROBINSON, MARCIO SINELLI, THOMAS STEFANOPOULOS, BETTY WALTON, JENNIFER WALKER, HUEY WILLIAMS, and ANTONIO WYNN, Individually And On Behalf Of All Others Similarly Situated,

Plaintiffs,

SECOND AMENDED CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

v.

MERCEDES-BENZ USA, LLC, MERCEDES-BENZ AKTIENGESELLSCHAFT, and MERCEDES-BENZ GROUP AKTIENGESELLSCHAFT,

Defendants.

# CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Section**                                                                                                    **Page**

I.      INTRODUCTION                                                                                              1

II.     JURISDICTION AND VENUE                                                                                    5

III.    PARTIES                                                                                                   6

IV.     FACTUAL ALLEGATIONS                                                                                       26

        A.      Mercedes Advertises Its Vehicles As "The Best Or Nothing," And Represents
                That Its Vehicles Are Safe And Reliable                                                           26

        B.      Mercedes Knew About The Brake Defect But Has Failed To Correct The Brake
                Defect.                                                                                           27

                1.      Defendants' Internal Testing                                                              28

                2.      Customer Complaints Made to Defendants and NHTSA                                          28

                3.      Online Reputation Management                                                              34

                4.      Manufacturer Communications with NHTSA                                                    34

                5.      Prior Recall of Mercedes Vehicles Due to Defective Brakes                                 36

        C.      The Inadequate and Untimely Safety Recall of Class Vehicles                                       36

        D.      Despite Its Knowledge, Mercedes Misrepresented and Concealed Important
                Information About the Brake Defect and Class Vehicle Safety                                       39

V. CLASS ACTION ALLEGATIONS                                                                                       41

        A. The Class Definition                                                                                  41

        B.      Numerosity: Federal Rule of Civil Procedure 23(a)(l)                                              42

        C.      Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and
                23(b)(3)                                                                                          43

        D.      Typicality: Federal Rule of Civil Procedure 23(a)(3)                                              44

        E.      Adequacy: Federal Rule of Civil Procedure 23(a)(4)                                                44

        F.      Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).  45

        G.      Superiority: Federal Rule of Civil Procedure 23(b)(3)                                             45

VI.     ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED                                                          45

        VII.    NATIONWIDE CLASS CLAIMS                                                                           46

        NATIONWIDE COUNT I                                                                                        46

        VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

        NATIONWIDE COUNT 11                                                                                       49

        FRAUD BY CONCEALMENT OR OMISSION

        NATIONWIDE COUNT 111.                                                                                     52

        NEGLIGENT MISREPRESENTATION

        NATIONWIDE COUNT IV                                                                                       53

        UNJUST ENRICHMENT NATIONWIDE COUNT V                                                                      54

        VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
        ("WCPA") NATIONWIDE COUNT VI                                                                              57

        BREACH OF EXPRESS WARRANTY

EMERY|REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
T (206) 442-9106 F: (206) 441-9711

NATIONWIDE COUNT VII ........................................................................... 61

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

VIII.  STATE SPECIFIC CLAIMS ................................................................. 63

    A.    California Counts ......................................................... 63

    B.    Colorado Counts .......................................................... 73

    C.    Florida Counts ............................................................. 79

    D.    Georgia Counts ........................................................... 89

    E.    Illinois Counts ............................................................. 97

    F.    Indiana Counts ........................................................... 103

    G.    Louisiana Counts ........................................................ 107

    H.    Maryland Counts ........................................................ 111

    I.    Mississippi Counts ...................................................... 116

    J.    New Jersey Counts ..................................................... 122

    K.    New York Counts ........................................................ 130

    L.    North Carolina Counts ................................................ 140

    M.    Ohio Counts ............................................................... 145

    N.    Texas Counts .............................................................. 152

    O.    Utah Counts ............................................................... 157

    P.    Wisconsin Counts ....................................................... 162

IX.  PRAYER FOR RELIEF ...................................................................... 167

X.  DEMAND FOR *WRY*    TRIAL ...................................................... 168

SECOND AMENDED CLASS ACTION COMPLAINT
Page **4** of **2** No. 22-665-RSL

**EMERYIREDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
T (206) 442-9106 F: (206) 441-9711

Plaintiffs ~~Seyyed Javad Maadanian,~~ Leonardo Cacho, Ruben Charles, Carl Clark, Linda Crea, Sr., Brandon Dueling, Roxie Harris, Wender Jeudy, Wanda Jones, Sean K. Lee, Tina Marie, Letitia Matthews, Robert McCumsey, Rulesha McKinney, Bianca Ortiz, Francy Diaz Perez, James Powell, Anthony Pyles, Ellery Richard, Jeffrey Robinson, Marcio Sinelli, Thomas Stefanopoulos, Jennifer Walker, Betty Walton, Huey Williams, and Antonio Wynn (collectively, "Plaintiffs") bring this action against Mercedes-Benz USA, LLC ("MBUSA"), Mercedes-Benz Aktiengesellschaft ("MBAG"), and Mercedes-Benz Group Aktiengesellschaft ("MBG") (together, "Mercedes" or "Defendants") based upon personal knowledge as to allegations specifically pertaining to Plaintiffs and, as to all other matters, upon the investigation of counsel.[1]

## I.    INTRODUCTION

1.    The ability of a vehicle to stop when the driver pushes on the brake pedal cannot be overstated – it is a vehicle's paramount safety feature. Properly functioning and defect free brakes are essential to the safety of the driver, passengers, occupants of other vehicles in proximity, and innocent bystanders. Despite this, Defendants failed to inform consumers of the potentially deadly braking system installed in certain 2004-2015 ML-Class, GL-Class, and ~~R-Class~~ R-Class vehicles ("Class Vehicles"),[2] and – despite issuing a recall – Defendants have no solution in place to repair or replace the defective braking systems in a timely manner and estimate a fix may take up to two years. To the contrary, Class members who rely upon these vehicles are being forced to park the vehicles and are expected to obtain an alternate means of transportation on their own, often at a significant cost.

2.    The braking systems installed in all Class Vehicles are plagued by a design defect that leads to partial or total loss of braking capability. The defect fails to prevent moisture from

---

[1] Counsel's investigation includes an analysis of publicly available information, including Defendants' Manufacturer Communications to the National Highway Traffic Safety Administration ("NHTSA"), NHTSA documents and consumer complaints. Plaintiffs believe that a reasonable opportunity for discovery will reinforce all of these claims.
[2] Since implementing the United States recalls on May 11, 2022, Defendants have expanded the range of vehicles recalled to include 2004-2015 models of different makes and/or models on a global scale. Discovery may reveal additional makes and/or models affect by the Brake Defect, Plaintiffs shall amend to include additional makes and/or models as necessary.

accumulating in the brake booster housing unit of the Class Vehicles, which causes corrosion resulting in reduced brake performance or brake failure ("Brake Defect" or "Defect"). This design Defect is uniform and common to all Class Vehicles, is a clear safety hazard that was within the exclusive knowledge of Defendants, and was never disclosed to any member of the Class prior to purchase.

3.     On information and belief, Defendants have at all times had actual knowledge that moisture introduced into the brake booster housing unit may be corrosive. More specifically, Defendants had actual knowledge of the design Defect since at least June 15, 2009, when Mercedes issued a Technical Service Bulletin ("TSB") to its network of dealers that warned of the danger corrosion may have on brake components in Mercedes vehicles, including Class Vehicles. Defendants knew or should have known of the design Defect much earlier due to pre-production testing, failure mode analysis, and reports by vehicle owners to authorized dealers, repair centers, and complaints to NHTSA. Nevertheless, Defendants chose to omit material information about the Brake Defect and not to disclose these problems to Plaintiffs and the Class, so that they could continue to profit from the sale of the Class Vehicles. It was only in May of 2022 that Mercedes decided to conduct a safety recall of the Class Vehicles.

> **URGENT: DO NOT DRIVE THIS VEHICLE**
>
> An urgent safety recall has been issued for this vehicle.
>
> Use our VIN lookup tool to see if your vehicle is part of this recall.

4.     The untimely and ineffective recall initiated by Defendants on May 11, 2022 (NHTSA Recall No. 22V-315, the "Recall"), which instructs vehicle owners to immediately stop driving their vehicles, is insufficient to remedy the harm caused to Plaintiffs and members of the Class, who overpaid for their Class Vehicles at the point of purchase and are now deprived of the beneficial use of their Class Vehicles.

(Added)

**URGENT: DO NOT DRIVE THIS VEHICLE**

An urgent safety recall has been issued for this vehicle. Use our VIN lookup tool to see if your vehicle is part of this recall.

If your vehicle is part of this recall, the manufacturer has recommended that **you stop driving this vehicle immediately**.

More information is available under

- NHTSA Recall Number 22V315000.

Indeed, Mercedes has acknowledged the severity of the Brake Defect by advising owners that they should "not to drive their vehicles until the remedy has been performed." The NHTSA database for the Class Vehicles warns users of the following:

5.      Defendant MBUSA "advises customers to stop driving the vehicle until the first inspection is performed." Yet Defendants delayed sending out the Owner Notifications Letter from May 27, 2022 to June 30, 2022. This delay caused additional loss of use and out-of-pocket expenses to Plaintiffs and members of the Class, including Plaintiffs Maadanian and Diaz who paid and are continuing to pay out-of-pocket for rental vehicles. Plaintiff Diaz has spent upwards of $4,000 on loaner vehicles since being informed of the Defect, and her local dealership has refused to pay for towing in order for her Class Vehicle to be inspected. Mercedes Roadside Assistance also failed to provide Plaintiff Diaz with towing for an inspection. Plaintiff Diaz requested reimbursement for the out-of-pocket expenses incurred to date on loaner vehicles but was informed by Defendant MBUSA that she could only recoup those expenses from her local dealership – when Plaintiff Diaz contacted her local dealership, she was informed that she could only recoup those expenses from Defendant MBUSA. As a result, Plaintiff Diaz and the Class are out of options and incurring more out-of-pocket expenses daily.

6.      Even after Defendants inspect the Class Vehicles, should the Class Vehicle suffer from advanced corrosion, the brake booster housing will need to be replaced when parts are available. As stated in Defendants' Remedy Instructions and TSB filed with NHTSA on May 28, 2022 ("Remedy Instructions"), "until then, the vehicle **MUST NOT** be driven." Yet these parts may not be available for **two years** and during that time, Plaintiffs and members of the Class will have complete ~~loss-of-use~~loss- of-use of their Class Vehicle.

7.     As the scope and severity of the Brake Defect became more apparent, on June 6, 2022, Mercedes instituted a global recall increasing the Recall to one million cars around the globe over concerns that the brakes could fail. This recall affects the ML and GL series of sport utility vehicles, both of which are popular with drivers in the United States, as well as the R  ClassR-Class luxury minivans. Tests showed that advanced corrosion in the joint area of the brake booster housing in some of the vehicles could cause problems with the braking mechanism. Mercedes said it was recalling the cars for inspection, and had 'no way of knowing exactly how many would have corrosion damage.'

8.     Despite Defendants' knowledge, Defendants omitted information regarding the Brake Defect from all advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase. By failing to disclose the Brake Defect to consumers and by failing to correct the problem, delaying the recall, and otherwise failing to act reasonably, Defendants have put their own profits over the safety of Plaintiffs and the Class, who all purchased vehicles of a lesser standard, grade and quality than was represented. The Class Vehicles do not meet ordinary and reasonable consumer expectations regarding the quality, durability, or value and are unfit for their intended purpose. Moreover, the Brake Defect seriously endangers drivers, passengers, and the general public.

9.     As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered damages, including, inter alia: (1) deprivation of the benefit of their bargain by overpaying for the Class Vehicles at the time of sale; (2) out-of-pocket expenses for past repair or replacement of the defective braking systems; (3) out-of-pocket expenses for rental or loaner vehicles; (4) costs for future repairs or replacements; (5) sale of their Class Vehicle at a loss; (6) loss of use of the Class Vehicles; (7) towing expenses; (8) costs of incorrectly diagnosed repairs or replacements; and/or (9) diminished value of their Class Vehicles. Should Plaintiffs' demanded legal relief be unavailable or prove insufficient, Plaintiffs seek appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class, members of the Class (as defined below) are citizens of states different from Defendants, and greater than ~~two-thirds~~ two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

11.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. ~~This Court has personal jurisdiction over Defendants under 18 U.S~~ and have purchased vehicles from Defendant MBUSA.

12.    This Court has personal jurisdiction over Defendant MBUSA, which has its principal place of business in this district at One Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

~~.C. § 1965(d)~~13.This Court also has personal jurisdiction over each Defendant because Defendants are found, have agents, ~~and~~ transact substantial business in this District. ~~MBG maintains a major office of its subsidiary, Mercedes Benz Research & Development North America, Inc. ("MBRDNA"), at 1202 Western Ave, Suite 600, Seattle, WA 98101. This office is responsible for "envisioning, designing, engineering, testing, and certifying the most desirable cars in North America" and employs 85 employees.³MBG lists the Seattle Office on its website and so promotes its contacts with the Western District of Washington. Upon information and belief, MBUSA and MBAG directed the activities of MBRDNA and would have learned of the Brake Defect though the testing conducted by MDBRDNA and MBUSA. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District~~, and because some or all of the actions giving rise to the complaint,

~~³ See Seattle, WA Mercedes-Benz Research & Development North America, Inc., MERCEDES  BENZ GROUP, Aktiengesellschaft https://group.mercedes-benz.com/careers/about  us/locations/location-detail-page-324626.html (last visited June 7, 2022).~~

including decisions associated with the faulty braking system, failure to inform customers, and failure to take action to remedy the harm caused by these acts and omissions took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

~~12~~14.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants have marketed, advertised, sold, and/the Class Vehicles within this District through numerous Mercedes dealers doing business in the District. Defendants' actions have caused harm to ~~hundreds of~~Class members ~~of the Class residing in Washington~~, including ~~Plaintiff Seyyed Javad Maadanian~~Plaintiffs, and for the reasons above, venue is proper.

## III.    PARTIES

### PLAINTIFFS

~~13.    Plaintiff Seyyed Javad Maadanian ("Plaintiff" for purposes of paragraphs 13- 14) is an individual and is a resident of King County, Washington. Plaintiff is the owner of a Class Vehicle, specifically, a 2011 Mercedes Benz ML 350 (the purposes of Plaintiffs allegations, the "Class Vehicle"). On Friday, May 13, 2022, Plaintiff learned that his vehicle might be part of the Recall and visited NHTSA's website to learn more about it. On the same day, Plaintiff confirmed that his vehicle was affected by the recall and that he was unable to drive it safely. Plaintiff immediately parked the car and ceased using it. Plaintiff spent several hours researching his options and called his local Mercedes dealership. Plaintiff requested from dealership personnel a loaner vehicle or reimbursement of the cost for a rental vehicle, and he requested towing to the dealership or reimbursement for the cost of towing. Plaintiffs requests were denied. Plaintiff was told that Mercedes would do nothing to assist him and that he should park the car indefinitely and cease driving it immediately. Plaintiff is presently unable to drive his vehicle, has no options for repairing it, and must seek alternative transportation at his own time and expense.~~

~~14.    Plaintiff had no way of knowing the Class Vehicle contained a Brake Defect that could~~

~~cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Plaintiffs Class Vehicle has diminished.~~

15.    Plaintiff, Leonardo Cacho ~~("Plaintiff" for purposes of paragraphs 15-16)~~ is a resident and citizen of Cook County, Illinois. ~~Plaintiff~~Cacho is the owner of a 2006 Mercedes-Benz R350-Class which has the Brake Defect (for purposes of ~~Plaintiffs~~Cacho's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Cacho's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Cacho relied, and which was a primary reason he purchased Mercedes R Class vehicles. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Cacho. Cacho would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

16.    ~~Plaintiff~~Cacho had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Cacho viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Cacho and consumers. ~~Plaintiff~~Cacho would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Cacho's Class Vehicle has diminished.

17.    Plaintiff, Ruben Charles ~~("Plaintiff" for purposes of paragraphs 17-18)~~ is a resident and citizen of Camden County, New Jersey. ~~Plaintiff~~Charles is the owner of a 2008 ~~Mercedes-Benz~~Mercedes-Benz R350 which has the Brake Defect (for purposes of ~~Plaintiffs~~Charles's

allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Charles's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Charles relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Charles. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Charles is left without a vehicle to drive at all. ~~Plaintiff~~Charles would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

18.     ~~Plaintiff~~Charles had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Charles viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Charles and consumers. ~~Plaintiff~~Charles would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Charles's Class Vehicle has diminished.

19.     Plaintiff Carl Clark ~~("Plaintiff' for purposes of paragraphs 19-20)~~ is an individual and is a resident of Cuyahoga County, Ohio. ~~Plaintiff~~Clark is the owner of a Class Vehicle, specifically, a 2012 ~~Mercedes-Benz~~Mercedes- Benz GL 450 (the purposes of ~~Plaintiffs~~Clark's allegations, the "Class Vehicle"). Through ~~Plaintiffs~~Clark's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Clark relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Clark.  Clark would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

20.     ~~Plaintiff~~Clark had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring

the Class Vehicle, ~~Plaintiff~~Clark viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Clark and consumers. ~~Plaintiff~~Clark would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Clark's Class Vehicle has diminished.

21.    Plaintiff, Lindy Crea, Sr. ~~("Plaintiff" for purposes of paragraphs 21-22)~~ is a resident and citizen of Broome County, New York. ~~Plaintiff~~Crea is the owner of a 2010 ~~Mercedes-Benz~~Mercedes-Benz ML350 which has the Brake Defect (for purposes of ~~Plaintiffs~~Crea's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Crea's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Crea relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Crea. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Crea is left without a vehicle to drive at all. ~~Plaintiff~~Crea would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

22.    ~~Plaintiff~~Crea had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Crea viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Crea and consumers. ~~Plaintiff~~Crea would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Crea's Class Vehicle has diminished.

23.    Plaintiff, Brandon Dueling ~~("Plaintiff" for purposes of paragraphs 23-24)~~ is a resident and citizen of Boulder County, Colorado. ~~Plaintiff~~Dueling is the owner of a 2009 ~~Mercedes-Benz~~Mercedes-Benz ML320 which has the Brake Defect (for purposes of ~~Plaintiffs~~Dueling's

allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Dueling's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Dueling relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Dueling. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Dueling is left without a vehicle to drive at all. Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

24.     ~~Plaintiff~~Dueling had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Dueling viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Dueling and consumers. ~~Plaintiff~~Dueling would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Dueling's Class Vehicle has diminished.

25.     Roxie Harris ~~("Plaintiff" for purposes of paragraphs 25-26)~~ is a resident and citizen of Riverside County, California. ~~Plaintiff~~Harris is the owner of a 2006 Mercedes-Benz R350 which has the Brake Defect (for purposes of ~~Plaintiffs~~Harris's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Harris's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Harris relied, and which was a primary reason she purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Harris. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Harris is left without a vehicle to drive at all. ~~Plaintiff~~Harris would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

26.     ~~Plaintiff~~Harris had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Harris viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Harris and consumers. ~~Plaintiff~~Harris would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiff's~~Harris's Class Vehicle has diminished.

27.     Plaintiff, Wender Jeudy ~~("Plaintiff" for purposes of paragraphs 27-28) 1s~~is a resident and citizen of Cobb County, Georgia. ~~Plaintiff~~Jeudy is the owner of a 2008 Mercedes-Benz R-Class which has the Brake Defect (for purposes of ~~Plaintiff's~~Jeudy's allegations, the "Class Vehicles"). Through ~~Plaintiff's~~Jeudsy's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Jeudy relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Jeudy. Jeudy would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

28.     ~~Plaintiff~~Jeudy had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Jeudy viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Jeudy and consumers. ~~Plaintiff~~Jeudy would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiff's~~Jeudy's Class Vehicle has diminished.

29.     Plaintiff, Wanda Jones ~~("Plaintiff" for purposes of paragraphs 29-30)~~ is a resident and citizen of Essex County, New Jersey. ~~Plaintiff~~Jones is the owner of a 2008 ~~Mercedes-~~

~~Benz~~Mercedes-Benz GL450 which has the Brake Defect (for purposes of ~~Plaintiff's~~Jones's allegations, the "Class Vehicles"). Through ~~Plaintiff's~~Jones's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Jones relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Jones. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Jones is left without a vehicle to drive at all. ~~Plaintiff~~Jones would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

30.    ~~Plaintiff~~Jones had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Jones viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Jones and consumers. ~~Plaintiff~~Jones would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Jones's Class Vehicle has diminished.

31.    Plaintiff, Sean K. Lee ~~("Plaintiff" for purposes of paragraphs 31-32)~~ is a resident and citizen of Utah County, Utah. ~~Plaintiff~~Lee is the owner of a 2008 Mercedes-Benz ML-Class which has the Brake Defect (for purposes of ~~Plaintiffs~~Lee's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Lee's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Lee relied, and which was a primary reason he purchased the Mercedes ML Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff.~~ ~~Plaintiff~~Lee. Lee would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

32.    ~~Plaintiff~~Lee had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Lee viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Lee and consumers. ~~Plaintiff~~Lee would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiff's~~Lee's Class Vehicle has diminished.

33.    Plaintiff, Tina Marie ~~("Plaintiff' for purposes of paragraphs 33-34)~~ is a resident and citizen of Pitt County, North Carolina. ~~Plaintiff~~Marie is the owner of a 2014 Mercedes-Benz ~~G-Class~~G-Class which has the Brake Defect (for purposes of ~~Plaintiff's~~Marie's allegations, the "Class Vehicles"). Through ~~Plaintiff's~~Marie's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Marie relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Marie. Marie would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

34.    ~~Plaintiff~~Marie had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Marie viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Marie and consumers. ~~Plaintiff~~Marie would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiff's~~Marie's Class Vehicle has diminished.

35.    Plaintiff, Letitia Matthews ~~("Plaintiff' for purposes of paragraphs 35-36)~~ is a resident and citizen of Lamar County, Georgia. ~~Plaintiff~~Matthews is the owner of a 2009 Mercedes-Benz GL

450 which has the Brake Defect (for purposes of ~~Plaintiff's~~Matthews's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Matthews's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Matthews relied, and which was a primary reason she purchased the Mercedes GL vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Matthews. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Matthews is left without a vehicle to drive at all. ~~Plaintiff~~Matthews would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

36.    ~~Plaintiff~~Matthews had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Matthews viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Matthews and consumers. ~~Plaintiff~~Matthews would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Matthews's Class Vehicle has diminished.

37.    Plaintiff, Robert McCumsey ~~("Plaintiff" for purposes of paragraphs 37-38)~~ is a resident and citizen of Orange County, California. ~~Plaintiff~~McCumsey is the owner of a 2012 ~~Mercedes-Benz~~Mercedes-Benz ML350 which has the Brake Defect (for purposes of ~~Plaintiffs~~McCumsey's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~McCumsey's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~McCumsey relied, and which was a primary reason he purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~McCumsey. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~McCumsey is left without a vehicle to drive at all. Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

38.    ~~Plaintiff~~McCumsey had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~McCumsey viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~McCumsey and consumers. ~~Plaintiff~~McCumsey would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~McCumsey's Class Vehicle has diminished.

39.    Plaintiff, Rulesha McKinney ~~("Plaintiff" for purposes of paragraphs 39-40)~~ is a resident and citizen of Harford County, Maryland. ~~Plaintiff~~McKinney is the owner of a 2012 ~~Mercedes-Benz~~Mercedes-Benz ML-350 which has the Brake Defect (for purposes of ~~Plaintiffs~~McKinney's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~McKinney's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~McKinney relied, and which was a primary reason she purchased the Mercedes M Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~McKinney. McKinney would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

40.    ~~Plaintiff~~McKinney had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~McKinney viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~McKinney and consumers. ~~Plaintiff~~McKinney would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~McKinney's Class Vehicle has diminished.

41.    Plaintiff, Bianca Ortiz ~~("Plaintiff" for purposes of paragraphs 41-42)~~ is a resident and citizen of Hudson County, New Jersey. ~~Plaintiff~~Ortiz is the owner of a 2010 ~~Mercedes-~~

~~Benz~~Mercedes-Benz GL350 which has the Brake Defect (for purposes of ~~Plaintiffs~~Ortiz's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Ortiz's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Ortiz relied, and which was a primary reason she purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Ortiz. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Ortiz is left without a vehicle to drive at all. ~~Plaintiff~~Ortiz would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

42.    ~~Plaintiff~~Ortiz had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Ortiz viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Ortiz and consumers. ~~Plaintiff~~Ortiz would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Ortiz's Class Vehicle has diminished.

43.    Plaintiff Francy Diaz Perez ~~("Plaintiff" for purposes of paragraphs 43-46)~~ is an individual residing in Cape Coral, Florida. ~~Plaintiff~~Perez purchased a pre-owned 2012 ~~Mercedes-Benz~~Mercedes-Benz GL450 (for purposes of ~~Plaintiffs~~Perez's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2019 from Avin Enterprises, Inc. in Tampa, Florida. At the time, ~~Plaintiff~~Perez reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

44.    ~~Plaintiff~~Perez has experienced a change in the brake pedal feel and diminished braking capability. ~~Plaintiff~~Perez brought her Class Vehicle to the Mercedes-Benz of Fort Myers, Florida and spoke with Dena Judah, a Service Advisor, who informed her that there is currently no solution for the Recall. Plaintiff then contacted 1 (888) ~~548-8514~~548- 8514 and spoke with a Mercedes Representative who informed ~~Plaintiff~~Perez that her Class Vehicle is impacted by the

Recall. ~~Plaintiff~~Perez was informed that she would have to pay out-of-pocket for a loaner vehicle until the Class Vehicle could be examined in multiple rounds of inspections and Defendants have so far refused to reimburse her expenses. ~~Plaintiff~~Perez proceeded to rent a loaner vehicle for $802.50 until June 8, 2022. On June 3, 2022, having not received an Owner Notification Letter, ~~Plaintiff~~Perez again called 1 (888) 548-8514. A Mercedes Representative informed ~~Plaintiff~~Perez that the Owner Notification Letter would be delayed until late June. Because of Defendants' delay, ~~Plaintiff~~Perez has had to continue renting loaner vehicles. ~~Plaintiff~~Perez then paid $1,565.43 ~~out of pocket~~out-of- pocket to extend her loaner vehicle until June 22, 2022.

45.    ~~Plaintiff~~Perez has spent upwards of $4,000 on loaner vehicles since being informed of the Defect, and her local dealership has refused to pay for towing in order for her Class Vehicle to be inspected. ~~Plaintiff~~Perez requested reimbursement for the out-of-pocket expenses incurred to date on loaner vehicles but was informed by Defendant MBUSA that she could only recoup those expenses from her local dealership – when ~~Plaintiff~~Perez contacted her local dealership, she was informed that she could only recoup those expenses from Defendant MBUSA. Defendants continue to refuse to provide a loaner, pay for towing, or reimburse ~~Plaintiff~~Perez for her out-of-pocket expenses despite informing her that her Class Vehicle is unsafe to drive.

46.    ~~Plaintiff~~Perez had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Perez viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Perez and consumers. ~~Plaintiff~~Perez would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Perez's Class Vehicle has diminished.

47.    Plaintiff James Powell ~~("Plaintiff" for purposes of paragraphs 47-48)~~ is an individual and is a resident of Lake County, Indiana. ~~Plaintiff~~Powell is the owner of a Class Vehicle, specifically, a 2007 Mercedes-Benz GL 450 (the purposes of ~~Plaintiffs~~Plaintiff's allegations, the "Class Vehicle"). Through ~~Plaintiffs~~Powell's exposure to Mercedes, he was aware of Mercedes's uniform and

pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Powell relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Powell. Powell would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

48.    ~~Plaintiff~~Powell had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Powell viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Powell and consumers. ~~Plaintiff~~Powell would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Powell's Class Vehicle has diminished.

49.    Plaintiff Anthony Pyles ~~("Plaintiff" for purposes of paragraphs 49-50)~~ is an individual and is a resident of Milwaukee County, Wisconsin. ~~Plaintiff~~Pyles is the owner of a Class Vehicle, specifically, a 2009 Mercedes-Benz ML 350 (the purposes of ~~Plaintiffs~~Pyles's allegations, the "Class Vehicle"). Through ~~Plaintiffs~~Pyles's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Pyles relied, and which was a primary reason she purchased the Mercedes ML Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Pyles. Pyles would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

50.    ~~Plaintiff~~Pyles had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Pyles viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants

concealed the existence of the Brake Defect from ~~Plaintiff~~Pyles and consumers. ~~Plaintiff~~Pyles would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Pyles's Class Vehicle has diminished.

51.    Plaintiff Ellery Richard ~~("Plaintiff" for purposes of paragraphs 51-52)~~ is an individual and is a resident of Tarrant County, Texas. ~~Plaintiff~~Richard is the owner of a Class Vehicle, specifically, a 2011 Mercedes-Benz GL 550 (the purposes of ~~Plaintiffs~~Richard's allegations, the "Class Vehicle"). Through ~~Plaintiffs~~Richard's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Richard relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Richard. Richard would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

52.    ~~Plaintiff~~Richard had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Richard viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Richard and consumers. ~~Plaintiff~~Richard would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Richard's Class Vehicle has diminished.

53.    Plaintiff Jeffrey Robinson ~~("Plaintiff" for purposes of paragraphs 53-54)~~ is an individual residing in Vineland, New Jersey. ~~Plaintiff~~Robinson purchased a pre-owned 2010 ~~Mercedes-Benz~~Mercedes-Benz GL450 (for purposes of ~~Plaintiffs~~Robinson's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March ~~of2022~~of 2022 from A. Estates Inc. in Vineland, New Jersey. At the time, ~~Plaintiff~~Robinson reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

54.    ~~Plaintiff~~Robinson had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Robinson viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Robinson and consumers. ~~Plaintiff~~Robinson would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Robinson's Class Vehicle has diminished.

55.    Plaintiff, Marcio Sinelli ~~("Plaintiff" for purposes of paragraphs 55-56)~~ is a resident and citizen of Orange County, Florida. ~~Plaintiff~~Sinelli is the owner of a 2007 Mercedes-Benz ML Class as well as a 2012 Mercedes-Benz ML Class)—both of which have the Brake Defect (for purposes of ~~Plaintiffs~~Sinelli's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Sinelli's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Sinelli relied, and which was a primary reason he purchased Mercedes ML Class vehicles. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Sinelli. Now that MBUSA has issued a "Stop Drive Notice," Plaintiff is left without a vehicle to drive at all. ~~Plaintiff~~Sinelli would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

56.    ~~Plaintiff~~Sinelli had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Sinelli viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Sinelli and consumers. ~~Plaintiff~~Sinelli would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Sinelli's Class Vehicle has diminished.

57.     Plaintiff Thomas Stefanopoulos ~~("Plaintiff" for purposes of paragraphs 57-58)~~ is an individual residing in Williamstown, New Jersey. ~~Plaintiff~~<u>Stefanopoulos</u> purchased a pre-owned 2008 ~~Mercedes-Benz~~<u>Mercedes- Benz</u> ML550 (for purposes of ~~Plaintiffs~~<u>Stefanopoulos's</u> allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2020 from J&S AutoHaus in New Jersey. At the time, ~~Plaintiff~~<u>Stefanopoulos</u> reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle. ~~Plaintiff~~<u>Stefanopoulos</u> has experienced a change in the brake pedal feel.

58.     ~~Plaintiff~~<u>Stefanopoulos</u> had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~<u>Stefanopoulos</u> viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~<u>Stefanopoulos</u> and consumers. ~~Plaintiff~~<u>Stefanopoulos</u> would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~<u>Stefanopoulos's</u> Class Vehicle has diminished.

59.     Plaintiff, Jennifer Walker ~~("Plaintiff" for purposes of paragraphs 59-60)~~ is a resident and citizen of the Claiborne Parish, Louisiana. ~~Plaintiff~~<u>Walker</u> is the owner of a 2011 Mercedes-Benz GL-Class which has the Brake Defect (for purposes of ~~Plaintiffs~~<u>Walker's</u> allegations, the "Class Vehicles"). Through ~~Plaintiffs~~<u>Walker's</u> exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~<u>Walker</u> relied, and which was a primary reason she purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~<u>Walker</u>. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~<u>Walker</u> is left without a vehicle to drive at all. ~~Plaintiff~~<u>Walker</u> would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

60.     ~~Plaintiff~~<u>Walker</u> had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring

the Class Vehicle, ~~Plaintiff~~Walker viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Walker and consumers. ~~Plaintiff~~Walker would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Walker's Class Vehicle has diminished.

61.    Plaintiff, Betty Walton~~, ("Plaintiff' for purposes of paragraphs 61-62)~~ is a resident and citizen of Solano County, California. ~~Plaintiff~~Walton is the owner of a 2007 Mercedes-Benz GL-Class which has the Brake Defect (for purposes of ~~Plaintiffs~~Walton's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Walton's exposure to Mercedes, she was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Walton relied, and which was a primary reason she purchased the Mercedes GL Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff. Plaintiff~~Walton. Walton would not have purchased the vehicle, or would have paid less for it, had she known about the Brake Defect.

62.    ~~Plaintiff~~Walton had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Walton viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Walton and consumers. ~~Plaintiff~~Walton would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Walton's Class Vehicle has diminished.

63.    Plaintiff, Huey Williams ~~("Plaintiff' for purposes of paragraphs 63-64)~~ is a resident and citizen of Forrest County, Mississippi. Plaintiff is the owner of a 2011 ~~Mercedes-Benz~~Mercedes-Benz R350 which has the Brake Defect (for purposes of ~~Plaintiffs~~Williams's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Williams's exposure to Mercedes, he was

aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Williams relied, and which was a primary reason he purchased the Mercedes R Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Williams. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Williams is left without a vehicle to drive at all. ~~Plaintiff~~Williams would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

64.    ~~Plaintiff~~Williams had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, ~~Plaintiff~~Williams viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Williams and consumers. ~~Plaintiff~~Williams would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Williams's Class Vehicle has diminished.

65.    Plaintiff, Antonio Wynn ~~("Plaintiff" for purposes of paragraphs 65-66)~~ is a resident and citizen of Middlesex County, New Jersey. ~~Plaintiff~~Wynn is the owner of a 2012 Mercedes-Benz GL450 which has the Brake Defect (for purposes of ~~Plaintiffs~~Wynn's allegations, the "Class Vehicles"). Through ~~Plaintiffs~~Wynn's exposure to Mercedes, he was aware of Mercedes's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which ~~Plaintiff~~Wynn relied, and which was a primary reason he purchased the Mercedes G Class vehicle. Despite touting the engineering, dependability, and safety of Mercedes vehicles, at no point did Mercedes or their agents, dealers, or other representatives disclose the Brake Defect to ~~Plaintiff~~Wynn. Now that MBUSA has issued a "Stop Drive Notice," ~~Plaintiff~~Wynn is left without a vehicle to drive at all. ~~Plaintiff~~Wynn would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

66.    ~~Plaintiff~~Wynn had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring

the Class Vehicle, ~~Plaintiff~~Wynn viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from ~~Plaintiff~~Wynn and consumers. ~~Plaintiff~~Wynn would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of ~~Plaintiffs~~Wynn's Class Vehicle has diminished.

## DEFENDANTS

67.    Defendant MBG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. In February 2022, the company was renamed to "~~Mercedes-Benz~~Mercedes-Benz Group AG" from "Daimler AG." MBG is one of the largest automobile manufacturers in the world and is in the business of designing, developing, testing, manufacturing, and selling automobiles. In 2021, MBG was the second-largest German automaker and the sixth-largest worldwide by production. MBG trades on Xetra, the reference market for exchange trading in Germany, under the ticker "MBG."

68.    MBG at all relevant times acted through its operating subsidiaries MBAG and MBUSA (which is headquartered in Georgia) in order to manage its car and van business worldwide and in the United States. ~~Defendant Maadanian and other~~ Class Vehicles owned by members of the Class residing in ~~Washington~~Georgia were manufactured and/or designed by MBG specifically for the U.S. market and consistent with U.S. regulations.

69.    Defendant MBAG was created in November 2019, when MBG announced that Mercedes-Benz, up until that point a company marque, would be spun off into a separate wholly-owned subsidiary called "Mercedes-Benz AG." MBAG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. MBAG is a subsidiary of MBG that manages the ~~Mercedes-Benz~~Mercedes- Benz car and van business worldwide. During the manufacturing and sales of the Class Vehicles in the 2006-2012 period, MBG and MBAG operated as one entity under the name "Daimler AG."

70.    MBAG designs, manufactures, and distributes Mercedes vehicles in the United States through its national distributor, MBUSA (which is headquartered in Georgia), including in Washington where there are eight dealershipsGeorgia. MBAG directs the activities of other subsidiaries of MBG in the United States in order to maximize profits for MBG and maximize sales of MBUSA, including through advertising subsidieries. For example, Mercedes has shot advertising campaigns in Washington.⁴subsidiaries.

71.    Defendant MBUSA is a corporation that was founded in Montvale, NJ and does business throughout the United States. MBUSA's corporate headquarters is locatedheadquartered in Sandy Springs, Georgia, within the Northern District of Georgia. MBUSA is a wholly owned U.S. subsidiary of MBAG, and it engages in business activities in furtherance of the interests of MBAG and MBG, including the advertising, marketing and sale of Mercedes automobiles nationwide. Until the 2019 spinoff of MBAG, MBUSA operated under MBG f/k/a Daimler AG.

72.    MBUSA maintains a registered agent in the State of Washington. MNBUSA maintains dealerships and service centers in Washington, including in: Bellevue, Lynwood, Seattle, Yakima, Tacoma, Bellingham, Kennewick, and Liberty Lake.

7372.    At all relevant times, MBUSA acted as an authorized agent, representative, servant, employee, and/or alter ego of MBG and MBAG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Mercedes vehicles in the United States, including substantial activities that occurred within this jurisdiction.

7473.    At all times relevant to this action, Defendants manufactured, distributed, sold, and warranted the Class Vehicles under the Mercedes brand name throughout the United States. Defendants and/or their agents designed, manufactured, and/or installed braking systems with the Brake Defect in the Class Vehicles. Defendants and/or their agents also developed and

---

⁴ CHS Staff, 'Shattered' Pike/Pine stars in Mercedes-Benz ad, CAPITOL HILL SEATTLE BLOG (Dec.29,2015)https://www.capitolhillseattle.com/2015/12/shattered-pikepine-stars-in-mercedes-benz-ad/ (last accessed July 7, 2022)

disseminated the owner's manuals and warranty booklets, and other promotional materials relating to the Class Vehicles, and all materials that were available at the point of sale.

## IV.    FACTUAL ALLEGATIONS

### A.    Mercedes Advertises Its Vehicles As "The Best Or Nothing," And Represents That Its Vehicles Are Safe And Reliable.

75~~75~~74.    Defendants manufacture vehicles sold under the Mercedes brand throughout the United States. Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

~~76~~75.    At all times relevant to this action, Defendants marketed the Class Vehicles as having the highest quality, being the most durable, and maintaining the best resale value of any vehicles on the road.  Mercedes uses tag lines such as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," and encourages consumers to buy "the best" vehicle on the market (i.e., a Mercedes).

~~77~~76.    As a result of this extensive and pervasive marketing, the Mercedes name in and of itself has come to represent luxury and prestige, and for owners of Mercedes vehicles, the three-pointed star is a symbol of their success.

~~78~~77.    During the period in which the Class Vehicles were manufactured, in each of its 2007-2012 Annual Reports MBG stated:

> We invented the automobile – now we are passionately shaping its future. As a pioneer of automotive engineering, we feel inspired and obliged to continue this proud tradition with groundbreaking technologies and high-quality products. Our philosophy is clear: We give of our best for customers who expect the best – and we live a culture of excellence that is based on shared values. Our corporate history is full of innovations and pioneering achievements; they are the foundation and ongoing stimulus for our claim to leadership in the automotive industry.

~~79~~78.    In contrast to ~~Mercedes' s~~Mercedes's marketing campaign, the Class Vehicles are equipped with defectively designed braking systems that caused Defendants to issue a stop drive

order, may fail and result in partial or total loss of braking capability, and which create an inherently dangerous safety risk with potentially disastrous consequences for Plaintiffs and members of the Class. Defendants knew or should have known of the Brake Defect but failed to rectify it.

**B.    Mercedes Knew About The Brake Defect But Has Failed To Correct The Brake Defect.**

8079.    Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and members of the Class the Brake Defect in the Class Vehicles even though Defendants knew or should have known of design defects in Class Vehicles if Defendants had adequately tested the braking systems in the Class Vehicles.

8180.    Knowledge and information regarding the Brake Defect was in the exclusive and superior possession of Defendants and their dealers. That information was not provided to Plaintiffs and members of the Class. Based on pre-production testing, basic brake systems tests and validation, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, consumer complaints to the NHTSA, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles and fraudulently concealed the Brake Defect and its safety risk from Plaintiffs and members of the Class. Defendants knew, or should have known, that the Brake Defect was material to owners of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Class before they purchased Class Vehicles.

1.    Defendants' Internal Testing

8281.    Defendants had actual knowledge of the Brake Defect based on their internal pre-production testing and quality control mandates. To validate for safety, Defendants perform crash tests, brake systems tests and validation, and extreme weather testing on the braking systems, among other things, to ensure that the brakes in the Class Vehicles meet regulatory requirements.

2.    Customer Complaints Made to Defendants and NHTSA

8382.    Defendants' dealerships provide Defendants with early knowledge of defects, including the Brake Defect, through the reporting of customer complaints and warranty claims. Defendants' employees closely monitor internal databases containing customer complaints and warranty claims to identify, track, and address emerging problems from design and engineering standpoints, among others.

8483.    Defendants' engineering and marketing departments likewise routinely monitor public sources of competitor data, like the NHTSA customer complaint database, to track and compare problems with components on other manufacturers' products.

8584.    Defendants have and continue to be under a legal obligation under federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

8685.    Notwithstanding Defendants' exclusive and superior knowledge of the Brake Defect, and associated risks to safety, Defendants failed to disclose the Brake Defect to consumers at the time of purchase of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Brake Defect.

8786.    Defendants also knew about the Brake Defect through monitoring NHTSA complaints identifying the Brake Defect, below is a sampling of these complaints:

NHTSA ID Number: Incident Date:    10202934
Added to NHTSA Database: Consumer Location: Vehicle Type:
VIN:

10202934 Incident Date:               January 2, 2007
Added to NHTSA Database:      September 13, 2007
Consumer Location:              SAN JOSE, CA
Vehicle Type:                   2007 Mercedes-Benz GL450
VIN:                            4JGBF71E77A****

TL*THE CONTACT OWNS A 2007 MERCEDES BENZ GL450. THE CONTACT HEARD A SQUEAKING NOISE WHEN HE DEPRESSED THE BRAKE PEDAL AND THE STOPPING DISTANCE INCREASED. THE DEALER WAS UNABLE TO DIAGNOSE THE CAUSE OF FAILURE, HOWEVER, THEY GRINDED THE EDGES OF THE BRAKE PADS TO REDUCE THE SQUEAKING NOISE. THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 4,000 AND CURRENT MILEAGE WAS 6,600. THE DEALER RECOMMENDED CHAMFERING THE BRAKE PADS TO ALLEVIATE THE NOISE. THE DEALER STATED VEHICLE LOW ON OIL. UPDATED 09/2807 *TR

NHTSA ID Number: Incident Date:        10220937
Added to NHTSA Database: Consumer Location: Vehicle Type:
VIN:

10220937 Incident Date:           February 18, 2008
Added to NHTSA Database:          March 12, 2008
Consumer Location:                SACRAMENTO, CA

Vehicle Type:                2007 Mercedes-Benz GL450
VIN:                         4JGBF71E07A****

ON FEBRUARY 18, 2008 AT APPROXIMATELY 3:30 PM I WAS
INVOLVED IN AN MVA IN WHICH I STRUCK THE CAR IN
FRONT OF ME AT CONSIDERABLE SPEED. THIS CAUSED
CONSIDERABLE DAMAGE TO MY CAR (2007 MERCEDES
GL450) WITH NO AIR BAG DEPLOYMENT. DURING THE
ATTEMPT AT STOPPING I FELT THE BRAKE PEDAL BECOME
MUSHY AND BE INEFFECTIVE. AT FIRST THE BRAKES
GRABBED STRONG AND THEN LET LOOSE WITH THE
EVENTUAL COLLISION. AFTER CONSULTING WITH AN
INDEPENDENT MERCEDES MECHANIC, IT WAS SUGGESTED
THAT THIS BRAKE BEHAVIOR COULD BE EXPLAINED BY AN
ANTI-LOCKING ANTI-LOCKING BRAKE (ABS) SENSOR FAILURE.
THIS WOULD ACCOUNT FOR THE RELEASE OF THE BRAKES
(POSSIBLE DETECTION OF SKID) BUT ALSO THE FALSE
DATA REACHING THE CENTRAL COMPUTER WITH AN
ERRONEOUS SPEED, THUS DISABLING THE AIRBAGS. I
HAVE BEEN IN CONTACT WITH MERCEDES BENZ OR NORTH
AMERICA WHICH HAS YIELDED NO INSPECTION OR
RESOLUTION. I HAVE BEEN ASKING FOR ONE OF THEIR
FIELD ENGINEERS TO EXAMINE THE CAR AND SEE IF THE
ABS SENSOR IS RESPONSIBLE FOR THE POSSIBLE BRAKE
FAILURE. ALTHOUGH THE CRASH MAY STILL BE MY
DRIVER ERROR, I DON'T DON'T FEEL COMFORTABLE
REPAIRING THE CAR AND GIVING IT BACK TO MY WIFE
FOR TRANSPORTATION OF THE FAMILY. HAS AN ABS
SENSOR FAILURE BEEN REPORTED FOR THIS MODEL
BEFORE? *TR

NHTSA ID Number:          10263214
Incident Date:            March 21, 2009
Added to NHTSA Database:  March 27, 2009
Consumer Location:        DARIEN, CT
Vehicle Type:             2008 Mercedes-Benz ML-Class
VIN:                      4JGBB86E38A****

IT WAS 6:30 IN THE MORNING AND I WAS PULLING INTO MY
GYM'S GYM'S PARKING LOT. AS I ATTEMPTED TO BRAKE, THE
CAR CONTINUED TO ACCELERATE. I KEPT PUMPING ON

THE BRAKE ONLY TO HAVE THE CAR MAKE A GRINDING SOUND AS IT CONTINUED TO ACCELERATE (AS IF IT WERE RESISTING MY ATTEMPTS TO STOP IT). EVENTUALLY, AND THANKFULLY BEFORE IT HIT THE BUILDING, THE CAR STALLED TO A STOP. THE CAR ACTUALLY ASCENDED 3 WOODEN PORCH STEPS AND HIT INTO A WOODEN PORCH COLUMN BEFORE STOPPING. IT WAS A VERY EARLY SATURDAY MORNING. HAD I PULLED INTO THIS DRIVEWAY MID MORNING, ON THIS SATURDAY (A TIME WHEN THIS GYM IS ESPECIALLY ACTIVE), I COULD VERY WELL HAVE KILLED SOMEBODY. ON THE DAY OF THE INCIDENT, THE CAR WAS TOWED TO MERCEDES BENZ OF GREENWICH,

CONNECTICUT. AT THE TIME, I WAS GIVEN A LOANER CAR TO DRIVE (AT NO EXPENSE TO ME). I HAVE BEEN TOLD THAT A CASE HAS BEEN ESTABLISHED TO INVESTIGATE THE INCIDENT. AFTER A ~~WEEK'S~~ WEEK'S TIME, I CONTACTED MERCEDES BENZ (800-367-6372 X6302 JUSTIN) IN AN EFFORT TO ASCERTAIN THE STATUS OF THIS INVESTIGATION. I COULD NOT GET A DIRECT ANSWER OF ANY KIND FROM THE GENTLEMAN THAT I SPOKE TO. MERCEDES ~~BENZ'S~~ BENZ'S LACK OF COMMUNICATION HAS BEEN VERY DISTURBING GIVEN THE SEVERITY OF THIS SITUATION. THIS IS A LEASED CAR WHICH I HAVE HAD FOR A LITTLE OVER 1 YEAR. WITHOUT ANY KIND OF EXPLANATION FROM MB AS TO WHY THIS HAPPENED, I ~~DON'T~~ DON'T THINK I WOULD STEP INTO THIS CAR IF AND WHEN IT WAS REPAIRED. I WOULD APPRECIATE ANY INTERVENTION YOUR DEPARTMENT IS PREPARED TO PUT FORTH ON MY BEHALF HERE THANK YOU. *TR

NHTSA ID Number:          10304549
Incident Date:            February 3, 2010
Added to NHTSA Database:  February 3, 2010
Consumer Location:        WEST BLOOMFIELD, MI
Vehicle Type:             2007 Mercedes-Benz GL450
VIN:                      4JGBF71EX7A****

TODAY MY HUSBAND WAS INVOLVED IN A CAR ACCIDENT WHILE DRIVING MY 2007 GL450. THANK GOD ~~HEW ASN'T~~ HE WASN'T INJURED BUT THE SITUATION HE EXPLAINED TO ME HAS HAPPENED SEVERAL TIMES BEFORE AND ~~I'VE~~ I'VE BEEN ABLE TO REGAIN CONTROL OF THE CAR BEFORE SOMETHING TERRIBLE HAPPENED. HE LEFT HOME FOR WORK AT ABOUT 6AM AND WHILE STILL IN THE SUBDIVISION DRIVING ABOUT 20 MILES/HR ON A ROAD WITH ABOUT ~~1"~~ 1" OF SNOW, HE TRIED TO MAKE A RIGHT TURN BUT THE BRAKES LOCKED AND THE STEERING ~~WOULDN'T~~ WOULDN'T TURN AND HE ENDED UP SMASHING THE FRONT END ON A HUGE STONE AND RICOCHETING TO A FIRE HYDRANT. LIKE I SAID, THIS HAS HAPPENED BEFORE AND ~~I'D~~ I'D BEEN ASSUMING THAT THE SKIDDING WAS BECAUSE OUR TIRES WERE WORN BUT WE GOT

BRAND NEW TIRES LESS THAN A WEEK AGO SO THIS DOES NOT MAKE ANY SENSE. I ~~HAVEN'T~~ HAVEN'T BEEN IN TOUCH WITH MERCEDES YET BUT I WILL BE CONTACTING THEM TO ADVISE THEM OF THIS ISSUE. *TR

NHTSA ID Number:          10346893
Incident Date:              July 10, 2010
Added to NHTSA Database:   August 10, 2010
Consumer Location:         POMONA, CA
Vehicle Type:              2007 Mercedes-Benz R350
VIN:                       4JGCB65E86A****

I DROVE UP A 6000' HIGH MOUNTAIN, PULLED OVER ONTO A WIDE FLAT PULLOFF SAT THERE FOR 20 MINUTES, THEN RESTARTED THE CAR AND HAD NO BRAKES. MY FOOT WENT TO THE FLOOR. I HAD NOT USED THE BRAKES ON ~~THEWAYUP~~ THE WAY UP THE MOUNTAIN BECAUSE THE ROAD WAS STEEPLY UPHILL. I TRIED TURNING THE CAR ON AND OFF SEVERAL TIMES AND STILL NO BRAKES. I WAITED ABOUT

20 MINUTE AND TRIED AGAIN, STILL HAD NO BRAKES. THERE WERE 3 OF US IN THE CAR, AND WE MANAGED TO GET A RIDE SEVERAL MILES DOWN AND CALLED A TOW TRUCK. I T TOOK ABOUT 4 HOURS FOR THEM TO ARRIVE.I TRIED THE BRAKES AGAIN, AND STILL HAD NONE. AFTER IT WAS TOWED TO A REPAIR SHOP, APPROXIMATELY 5 HOURS AFTER THE INITIAL PROBLEM, I STILL HAD NO BRAKES. THIS HAPPENED ON A SATURDAY NIGHT. ON MONDAY, THE BRAKES HAD PUMPED BACK UP. I HAD IT TOWED TO PENSKE MERCEDES DEALERSHIP. THEY ~~TESTED-BRAKES~~ TESTED- BRAKES, FLUIDS ETC. AND COULD FIND NO PROBLEM. THEY BALKED AT DRIVING IT UP THE MOUNTAIN, BUT FINALLY SAID THEY DID DO IT, AND THE BRAKES WERE FINE. THIS ALL HAPPENED OVER 3 WEEKS AGO. I HAVE SPOKEN WITH

3 LEVELS OF AUTHORITY AT THE DEALER, AND THEY INSIST THERE IS NO PROBLEM, AND I SHOULD PICK THE CAR UP OR HAVE IT TOWED AWAY, OR PAY THEM A $25 PER DAY STORAGE FEE. I ALSO CALLED THE 800 NUMBER FOR MB CORPORATE, AND HAVE NEVER RECEIVED A CALL BACK. THE DEALER SAID THEY WERE CONTACTED BY CORPORATE MB AND TOLD WHICH TESTS TO PERFORM, AND THEY TOLD THEM THEY HAD ALREADY DONE THOSE SAME TESTS AND THE CAR PASSED THEM ALL. MERCEDES CORPORATE THEN TOLD THEM TO TELL ME THE CAR WAS FINE. AND I SHOULD PICK IT UP. THIS IS THE SECOND TIME ~~I'VE~~ I'VE HAD THE SAME FAILURE, ALSO AT THE SAME ALTITUDE; HOWEVER THE FIRST TIME, AFTER TURNING THE CAR OFF FOR A FEW MINUTES, THE BRAKES WERE BACK UP AND USABLE. ~~msT~~ JUST BECAUSE THE CAR PASSES THEIR TESTS DOES NOT MEAN THERE IS NO PROBLEM-IT SIMPLY MEANS THEY HAVE NO TEST CAPABLE OF DISCOVERING THE CAUSE. MUST I DIE BEFORE THEY REPAIR THE CAR? I WAS GOING TO MAKE U-TURN AT THE

PULL-OFF. ~~WE'RE~~ WE'RE ALIVE BECAUSE I ~~DIDN'T~~ DIDN'T GET
THAT FAR.
*TR

==================================================
====================

..........................................................................

NHTSA ID Number:          10452109
Incident Date:            March 9, 2012
Added to NHTSA Database:  March 18, 2012
Consumer Location:        MERCER ISLAND, WA
Vehicle Type:             2009 Mercedes-Benz ML350
VIN:                      4JGBB86E89A****

I HAVE A 2009 MERCEDES ML 350. ABOUT A WEEK AGO, MY BREAK FLUID LIGHT CAME ON. I TOOK IT INTO THE DEALERSHIP, AND THEY TOPPED THE FLUID OFF. A FEW DAYS PASSED, AND THE LIGHT WENT ON AGAIN. I TOOK IT INTO THE DEALERSHIP, AND IT WAS VERIFIED THAT ="THE PRESSURE DROPS AFTER SEVERAL MINUTES. (THEY) FOUND THE LINE INTO THE ABR PUMP WAS LEAKING. R&R PUMP TO INSPECT LINES AND FOUND METAL LINE DEFORMED AT FLARE=". *TR

■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=■=
■=■=■=■=■=■=■=■=■=■=

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:           10454010
Incident Date:             March 21, 2012
Added to NHTSA Database:    April 3, 2012
Consumer Location:         CHARLOTTE, NC
Vehicle Type:              2008 Mercedes-Benz GL-Class
VIN:                       4JGBF71E88A****

I CAME OUT OF THE SHOPPING MAUL INTO THE PARKING LOT, ENTERED INTO THE CAR AND PUT IT IN REVERSE. THEN L PRESSED THE BRAKES TO STOP THE VEHICLE AND GO FORWARD, BUT THE BRAKES WOULD NOT STOP THE CAR. THE CAR KEPT GOING BACKWARDS AND L KEPT PRESSING THE BRAKES WITHOUT ANY RESULT. THE CAR SMASHED INTO 4 PARKED VEHICLES AND STILL DID NOT STOP. I ATTEMPTED TO PUT IT IN NEUTRAL TO STOP IT OR SLOW IT DOWN, BUT FINALLY THE CAR STARTED GOING FORWARD AND L PRESSED THE BRAKES MULTIPLE TIMES, BUT THE CAR STILL DID NOT RESPOND AND KEPT GOING FORWARD AND SKIDDING AND EVENTUALLY SMASHED INTO A TREE AND STOPPED. L HAVE CONTACTED MERCEDES, BUT THEY ARE YET ACT. THE CAR POWER STEERING WENT OUT 3 DAYS BEFORE THE ACCIDENT AND WAS JUST REPLACED THE DAY BEFORE THE ACCIDENT. THERE HAVE BEEN SEVERAL COMPLAINTS WITH THIS MODEL AND RECALL ON THE POWER STEERING. I HAVE INCURRED OVER 35,000 DOLLAR DAMAGE TO THE VEHICLE AND OTHER VEHICLES AND NEED MERCEDES BENZ TO STEP UP AND FIGURE OUT WHY THE CAR KEPT ACCELERATING DESPITE MY APPLYING THE BRAKES. *TR

NHTSA ID Number: Incident Date:    10909481
Added to NHTSA Database: Consumer Location: Vehicle Type:
VIN:

10909481 Incident Date:          September 24, 2016
Added to NHTSA Database:   September 24, 2016
Consumer Location:          PROSPECT, KY
Vehicle Type:               2007 Mercedes-Benz ML-Class
VIN:                        4JGBB75EO7A****

MECHANICAL FAILURE, STEERING JAM AND BRAKE DID NOT WORK DURING DRIVING AT 15-20 MPH IN SUBDIVISION STREET. GOT IN ACCIDENT HITTING THE VAN.

NHTSA ID Number: Incident Date:    11029894
Added to NHTSA Database: Consumer Location: Vehicle Type:
VIN:

11029894 Incident Date:            September 17, 2017
Added to NHTSA Database:   September 26, 2017
Consumer Location:         BRONXVILLE, NY
Vehicle Type:              2010 Mercedes-Benz ML350
N/A

VIN:                       N/A

TWO ISSUES WITH MY ML350 2010 CAR - 1) ELECTRICAL - GAS GAUGE WENT TO ZERO WHILE DRIVING EVEN WHEN CAR WAS THREE QUARTERS FULL OF GAS. AFTER I STOPPED CAR AND RESTARTED ENGINE, GAS GAUGE WENT IMMEDIATELY BACK UP TO THREE QUARTERS FULL. 2) FAILED BRAKES - I WAS DRIVING INTO A PARKING SPOT SLOWLY USING BRAKES AND WHEN I WAS ABOUT TO COME TO A FULL STOP, THE BRAKES FAILED AND WOULDN'T WOULDN'T STOP THE CAR COMPLETELY RESULTING IN ME DRIVING OVER A PARKING METER. IT FELT LIKE THE CAR ACCELERATED AS WELL AFTER HITTING PARKING METER BUT I WAS ABLE TO STOP CAR AFTER PRESSING ON THE BRAKES AGAIN. THANKFULLY NO ONE WAS HURT GIVEN SLOW SPEED AND NO ONE BEING ON SIDEWALK AT THE TIME.

NHTSA ID Number:           11180304
Incident Date:             January 16, 2019
Added to NHTSA Database:   February 15, 2019
Consumer Location:         Unknown
Vehicle Type:              2006 Mercedes-Benz R350
VIN:                       4JGCB65EX6A****

MERCEDES 2006 WHEN I BRAKE THE CAR WILL KEEP GOING. SUDDEN ACCELERATION. THIS HAS HAPPEN TWICE AND I HAVE NOT OWNED THE CAR FOR A YEAR. I COULD KILL SOMEONE. TOOK IT TO DEALER AND THREE DIFFERENT SHOPS AND NO ONE KNOWS WHAT I'M I'M TALKING ABOUT HELP

    3.    Online Reputation Management

8887.    Online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."⁵³ The growth of the internet and social media and the advent of reputation management companies have led to ORM becoming an integral part of many companies' marketing efforts. Defendants regularly monitored NHTSA in connection with its ORM activities, along with other internet-based social media website and blogs, because candid comments from Mercedes owners provide valuable data regarding quality control issues and customer satisfaction. Defendants, therefore, would have learned about the numerous complaints filed with NHTSA starting at least as early as September 2007.

4.    Manufacturer Communications with NHTSA

8988.    "Federal regulations mandate that vehicle and vehicle equipment manufacturers comply with Early Warning Reporting requirements. One of the EWR requirements is that all manufacturers of motor vehicles or motor vehicle equipment, including low volume and child restraints, submit to NHTSA copies of their manufacturer communications. Manufacturers should submit all notices, bulletins, and other communications including warranty and policy extensions and product improvement communication sent to dealers, distributors, owners, purchasers, lessors, or lessees regarding any defect, failure or malfunction beyond normal deterioration in use, failure of performance, flaw or other unintended deviation from design specifications whether it is safety-related or not."⁶⁴

---

⁵³ Moryt Milo, Great Businesses Lean Forward, Respond Fast, SILICON VALLEY BUSINESS JOURNAL (September 5, 2013), http://www.bizjournals.com/sanjose/print-print-edition/2013/05/17/great-businesses-lean-forward-respond.html

4 See Manufacturer Communications, NHTSA https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications (last visited May 17, 2022).

⁶ See Manufacturer Communications, NHTSA https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications (last visited May 17, 2022).

90~~89~~.    Defendants submitted at least one Manufacturer Communication to NHTSA, NHTSA ID Number: 10030929, involving the 2007 Mercedes-Benz ~~ML Class~~ML- Class on or around June 15, 2009.

91~~90~~.    On or around June 15, 2009, Mercedes informed dealerships that "corrosion protection coatings for brake components and hardware may be damaged and or stripped away if highly concentrated acid based cleaners are used. Once the corrosion protection is damaged or removed the brake components and or hardware can begin to corrode. Include all models and model years." Accordingly, Defendants were aware of the partial or total loss of braking ability should the brake components begin to corrode.

92~~91~~.    On the basis of that communication, Defendants either knew or should have known of the corrosive effect that moisture would have should it accumulate and cause corrosion in the brake booster housing unit in the Class Vehicles. In other words, because Defendants were aware of the dangerous effect that corrosion has on the brake booster housing unit, Defendants were aware or should have been aware that water contains dissolved oxygen and is corrosive as well. Over the decade since this TSB was issued, on information and belief, Defendants observed corrosion in the brake booster housing units of Class Vehicles during routine inspections.

93~~92~~.    Plaintiffs and members of the Class were never provided with copies of or information about this official communication with NHTSA as required by Early Warning Reporting requirements.  Defendants failed to disclose the Brake Defect to owners of the Class Vehicles, including Plaintiffs and members of the Class, and, instead, intentionally concealed the Brake Defect.

### 5.    Prior Recall of Mercedes Vehicles Due to Defective Brakes.

94~~93~~.    Mercedes' failure to remedy the Brake Defect is all the worse in the face of the prior recall due to issues concerning Mercedes' brake boosters.

95~~94~~.    On or about July 15, 2017, Mercedes issued a recall for 16,301 imported cars in China over defective brake boosters. The recalled vehicles were A-class, ~~B class and CLA~~ B- class and CLA-class cars, manufactured between February 2012 and April 2013. These vehicles contained a

brake booster vacuum line that had the potential to break due to a weak connector and then cause gradual loss of brake boosting capacity, posing a hazard to people in the vehicle. In comparison here, the Defect involves corrosion in the brake booster housing unit, which can result in reduced brake performance or brake failure.

9695.    In almost every recall scenario, some type of internal investigation will be necessary, and in many cases, multiple investigations involving global enforcement entities and stakeholders are increasingly common. From the initial reporting and root cause determination to follow-on regulatory inquiries, a company can find itself involved in several over-lapping and cascading investigations. When conducting its investigation, Mercedes either did or should have discovered the Brake Defect involving the Class Vehicles.

9796.    The Brake Defect was present at the point of sale for the nearly 300,000 Class Vehicles. In conducting their investigation into defective brake boosters, Mercedes obviously would have examined brake boosters throughout its fleet to discern the cause of the defect, and during examination, the corrosive effect of moisture in the brake booster housing units would be readily apparent.

## C.    The Inadequate and Untimely Safety Recall of Class Vehicles

9897.    Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and result in significant costs. Following an unidentified incident in March 2022, on May 2, 2022 Mercedes determined that is could no longer delay recalling the Class Vehicles and "that a potential safety risk could not be ruled out and [so Mercedes] decided to conduct a recall." Three days later on May 5, 2022, Mercedes contacted NHTSA to inform them of the safety recall and to issue stop drive instructions.

9998.    On May 9, 2022, Defendant MBUSA issued Recall No.: 22V-315 (the "Recall") affecting certain 2006-2012 ML-Class, GL-Class, and R-Class vehicles. The Recall Notice describes the Defect as follows:

> Moisture may wick under a rubber sleeve that is installed around the brake booster housing for aesthetic reasons. This might result in corrosion in the

joint area of the brake booster housing.

~~100~~99. The Recall notice describes the safety risk to Plaintiffs and members of the Class as follows:

> After extended time in the field and in conjunction with significant water exposure, this corrosion might lead to a leakage of the brake booster. In this case, the brake force support might be reduced, leading to an increase in the brake pedal forces required to decelerate the vehicle and/or to potentially increased stopping distance.

> Additionally, in rare cases of very severe corrosion, it might be possible for a particularly strong or hard braking maneuver to cause mechanical damage in the brake booster, whereby the connection between brake pedal and brake system would fail. In such a very rare case, it would not be possible to decelerate the vehicle via the service brake.

> Thus, the risk of a crash or injury would be increased.

> The function of the foot parking brake is not affected by this issue.

~~101~~100.    Mercedes instructs Plaintiffs and members of the Class "not to drive their vehicles until the remedy has been performed." Yet Defendants have delayed sending out Owner Notification Letters. Defendants informed Plaintiff Diaz and stated in the Recall Acknowledgement filed with NHTSA on May 11, 2022, that Owner Notification Letters were expected to be mailed by May 27, 2022.

~~102~~101.    In other words, despite issuing a "Stop Drive Notification" to Plaintiffs and members of the Class, Defendants unreasonably delayed inspection of the Class Vehicles. Until their vehicles are properly inspected, Plaintiffs and members of the Class have no choice but to drive a vehicle that is inherently unsafe or pay significant out-of-pocket expenses for a rental vehicle.

~~103~~102.    Even once Defendants are able to inspect the Class Vehicles, there is currently no fix available. As stated in the Remedy Instructions, there may not be a fix for two years. As stated in the Remedy Instructions:

> 8.    If advanced corrosion is found (status B, question 5), why must I wait two years – can't the dealer just replace the brake booster housing now?

> a.    Sufficient part quantities are not yet available to offer a

complete repair at this time. Mercedes Benz assures all customers that the tests performed through the inspection procedure confirm that the brake booster will remain functioning normally until such time an additional inspection is deemed necessary within a 2-year period. Mercedes-Benz is working diligently with its suppliers to procure replacement parts as soon as possible.

Accordingly, in the event that Defendants find corrosion, Plaintiffs and members of the Class will be completely deprived of their Class Vehicle potentially for two years while they wait for replacement parts to be ready.

104103.    Perhaps because of the severity of the issue, on June 6, 2022, Mercedes instituted a global recall of nearly one million cars that were sold between 2004 and 2015 over concerns that the brakes could fail. The immediate recall affects the ML and GL series of sport utility vehicles, both of which are popular with drivers in the United States, as well as the R-Class luxury minivans. Tests showed that advanced corrosion in the joint area of the brake booster housing in some of the vehicles could cause problems with the braking mechanism. Mercedes said it was recalling the cars for inspection, and had no way of knowing exactly how many would have corrosion damage.

105104.    The Recall is untimely and ineffective at remedying the significant losses, which Plaintiffs and the Class have suffered. Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs. They did so at the expense of Plaintiffs and the Class.

**D.    Despite Its Knowledge, Mercedes Misrepresented and Concealed Important Information About the Brake Defect and Class Vehicle Safety.**

106105.    Defendants failed to inform Class Vehicle owners at the point of sale and before purchase of the Class Vehicles of the Brake Defect. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Brake Defect in the Class Vehicles.

107106.    For all the reasons above, Defendants had actual knowledge that Class Vehicles were experiencing braking failures due to the Brake Defect. Despite this knowledge, Defendants continued to sell Class Vehicles with the Brake Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiffs and members of the Class. This knowledge is imputed to all Defendants because MBUSA monitored Class Vehicle performance in the United States and reported to its affiliated and parent companies, MBG and MBAG, respectively, in the United States and Germany.

108107.    Despite actual and constructive knowledge of the Brake Defect as described in this Complaint, Defendants have failed to cure the Brake Defect.

109108.    Through no fault of their own, Plaintiffs and members of the Class did not possess sufficient technical expertise to recognize symptoms of the Brake Defect. This information, however, was known to Defendants, but not disclosed.

110109.    Reasonable consumers, including Plaintiffs and members of the Class, would find disclosure of the Brake Defect to be material.

111110.    Defendants concealed the Brake Defect from Plaintiffs and all Class Vehicle purchasers. Defendants intentionally or negligently failed to inform Class Vehicle purchasers that Class Vehicles incorporated a Brake Defect that would cause the braking systems to fail.

112111.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, unfairly favoring Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

113112.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including Plaintiffs and members of the Class. This is because Defendants knew of the Brake Defect in the Class Vehicles.

114113.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous when they were sold.

115114.    Defendants unconscionably sold defective Class Vehicles to Plaintiffs and members of the Class without informing these purchasers that the Class Vehicles were defective.

116115.    Defendants' conduct renders the vehicle purchase and/contract so one sidedone- sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

117116.    Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Brake Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

118117.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Brake Defect. Defendants did so to deceive purchasers as described herein, knowing that no reasonable consumer would purchase a vehicle with a Brake Defect.

119118.    At the time of purchase, Defendants fraudulently omitted to disclose material matters regarding the Brake Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability. Defendants fraudulently concealed from Plaintiffs and members of the Class concerning the Brake Defect in Class Vehicles even though Defendants knew or should have known that information concerning the Brake Defect was material and central to the marketing and sale of Class Vehicles to prospective purchasers, including Plaintiffs and members of the Class.

120119.    Material information was fraudulently concealed and/or actively suppressed to sell Class Vehicles to uninformed consumers (including Plaintiffs and members of the Class).

121120.    If Plaintiffs and members of the Class had been informed of the Brake Defect in their Class Vehicles, they would not have purchased their respective Class Vehicles or paid substantially less. If Plaintiffs and members of the Class had learned of the Brake Defect in their respective Class Vehicles and the attendant ramifications of their respective loss of use, diminution in value, future cost of repairs, durability and care, they would not have purchased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles.

122121.    Material information concerning Class Vehicles was concealed and/or suppressed to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and limit brand disparagement. Purchasers believed they were obtaining vehicles with different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles.

123122.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Class purchased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## V.    CLASS ACTION ALLEGATIONS

### A.    The Class Definition

124123.    The "Class Vehicles" include all purchasers of Mercedes vehicles in the United States that contain the Brake Defect including certain 2004-2015 ML-ClassML- Class, GL-Class, and R- ClassR-Class vehicles.[4]

125124.    The proposed Nationwide Class includes all persons and entities that purchased a Class Vehicle in the United States, including its territories. Plaintiffs also propose separate State Sub-Classes for purchasers of Class Vehicles in California, Colorado, Florida, Georgia, Illinois,

---

[4] The Class Vehicles recalled to date so far in the United States include the Mercedes (Models/Model Years): AMG R63/2007, GL320/2007-2009, GL350/2010-2012, GL450/2007-2012, GL550/2008-2012, ML320/2007-2009, ML350/2006-2011, ML450/2010-2011, ML500/2006-2007, ML550/2008-2011, R320/2007-2009, R500/2006-2007, AMG ML63/2007-2011, R350/2006-2012, and R550/2008.
However, the global recall initiated on June 5, 2022 has expanded the listed of affected vehicles to include additional makes/model and model years including from 2004 to 2015. Discovery may reveal additional makes and/or models the contain the Brake Defect, Plaintiffs reserve the right to amend the class definition to include additional makes and/or models as necessary.

~~Indiana, Louisiana, Maryland, Mississippi, New Jersey, New York, Ohio, North Carolina, Texas, Utah,~~ ~~Washington, and Wisconsin.~~

~~126~~125.    Excluded from the Classes are: Defendants' officers, directors, and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

~~127~~126.    The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

~~128~~127.    Plaintiffs reserve the right to amend the Class ~~definitions~~definition if discovery and further investigation reveal that any Class should be expanded, reduced, divided into ~~additional~~ State Sub-Classes under Rule 23(c)(5), or otherwise modified.

**B.    Numerosity: Federal Rule of Civil Procedure 23(a)(~~1~~1)**

~~129.    The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are hundreds of thousands of [7] The Class Vehicles recalled to date so far in the United States include the Mercedes (Models/Model Years): AMG R63/2007, GL320/2007-2009, GL350/2010-2012, GL450/2007- 2012, GL550/2008-2012, ML320/2007-2009, ML350/2006-2011, ML450/2010-2011, ML500/2006-2007,ML550/2008-2011,R320/2007-2009,R500/2006-2007,AMG ML63/2007-2011, R350/2006-2012, and R550/2008. However, the global recall initiated on June 5, 2022 has expanded the listed of affected vehicles to include additional makes/model and model years including from 2004 to 2015. Discovery may reveal additional makes and/or models the contain the Brake Defect, Plaintiffs reserve the right to amend the class definition to include additional makes and/or models as necessary.~~

128.    The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are hundreds of thousands of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and

State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, ~~Court-approved~~Court- approved notice dissemination methods.

**C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

~~130~~129.    This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

a.    Whether the Class Vehicles have a Brake Defect;

b.    Whether Defendants engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

c.    Whether Defendants engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

d.    Whether Defendants knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiffs and the Class;

e.    Whether Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles in order to sell Plaintiffs and the Class a vehicle free of safety defects;

f.    Whether Defendants breached their duties to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

g.    Whether Defendants breached their duties to Plaintiffs and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

h.    Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class;

i.    Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

j. Whether Defendants concealed material facts from their communications and disclosures to Plaintiffs and the Class regarding the Brake Defect in the Class Vehicles;

k. Whether, as a result of Defendants' conduct, Plaintiffs and the Class have suffered damages and, if so, the appropriate amount thereof; and

l. Whether Plaintiffs and the Class are entitled to treble damages and/or punitive damages or other relief.

**D. Typicality: Federal Rule of Civil Procedure 23(a)(3)**

130. Plaintiffs' claims are typical of the Class members' claims whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the other Class members.

**E. Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

131. Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automobile defect litigation and other consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

**F. Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

132. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Class as a whole.

### G.    Superiority: Federal Rule of Civil Procedure 23(b)(3)

~~134~~133.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

~~135~~134.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

~~136~~135.    Defendants have known of the Brake Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints to Defendants' network of exclusive dealers and NHTSA, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints. Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles.

~~137~~136.    Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem. In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Mercedes is obligated to do.

~~138~~137.    Defendants had a duty to disclose the Brake Defect to consumers and NHTSA. Contrary to this duty, Mercedes concealed the Brake Defect by continuing to market, distribute, and sell~~, and/~~ the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiffs and the Class members about the truth about the Class Vehicles.

139138.    Because of the highly technical nature of the Brake Defect, Plaintiffs and Class members could not independently discover it using reasonable diligence. Before the retention of counsel and without third-party experts, Plaintiffs and Class members lack the necessary expertise to understand the Brake Defect.

140139.    Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

## VII.    NATIONWIDE CLASS CLAIMS

### NATIONWIDE COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301, *ET SEQ.*
### (ON BEHALF THE NATIONWIDE CLASS)

141140.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

142141.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, by virtue of 28 U.S.C. § 1332 (a)-(d).

143142.    The Class Vehicles are "consumer products" within the meanmgmeaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

144143.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

145144.    Each Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 15 U.S.C. § 2301(4)-(5).

146145.    15 U.S.C. § 2310(d)(11) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

147146.    Defendants provided Plaintiffs and the other Class members with a written warranty in connection with the purchase of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). As part of these written

warranties, Defendants warranted that the Class Vehicles were defect-free and/or would meet a specified level of performance over a specified period of time that formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

148147.    Defendants provided Plaintiffs and the other Class members with an implied warranty in connection with the purchase of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

149148.    Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(11). Without limitation, the Class Vehicles share a common design defect in that they contain a defective braking system that could cause partial or complete brake failure and significantly increases the risk death and/or injury to operators, passengers, and the general public. Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

150149.    Any limitations on the warranties is procedurally unconscionable. There was unequal bargaining power between Defendants on the one hand, and Plaintiffs and the other Class members, on the other.

151150.    Any limitations on the warranties is substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks. Defendants also knew that their express warranties would not cover the Brake Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiffs and the Class members.

152151.    Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract.

153152.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and

their dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Brake Defect.

154153.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

155154.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their defective Class Vehicles by retaining them.

156155.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

157156.    Plaintiffs also request, as a form of equitable monetary relief, re-paymentre-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the

Brake Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through a recall process.

158157.    The right of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## NATIONWIDE COUNT II
## FRAUD BY CONCEALMENT OR OMISSION
## COMMON LAW
## (ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE STATE SUB-CLASSES)

159158.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

160159.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977). In the alternative, Plaintiffs bring this claim on behalf of the State Sub-Classes.

161160.    Defendants intentionally and knowingly misrepresented and concealed, suppressed, and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiffs and Class members. Defendants knew, or should have known, that that the Brake Defect in the Class Vehicles could cause partial or complete loss of braking capability significantly increasing the risk of collision and serious injury for drivers, occupants, and the general public.

162161.    A reasonable consumer would not have expected that the Class Vehicles contain the Brake Defect. Defendants knew that reasonable consumers expect that their vehicle have a fully functional braking system, and would rely on those facts in deciding whether to purchase or retain a new or used motor vehicle. Whether a manufacturer's products are safe and

reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer contemplating the purchase of a vehicle.

163162.    Defendants ensured that Plaintiffs and the Class did not discover this information through concealing it and misrepresenting the Class Vehicles' braking systems without disclosing the truth. Defendants intended for Plaintiffs and the Class to rely on their omissions whichomissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

164163.    Defendants had a duty to disclose the Brake Defect because:

    a.    Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by PlaintiffPlaintiffs and the Class members;

    b.    Defendants knew the Brake Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class members' decisions to buy Class Vehicles;

    c.    Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to PlaintiffPlaintiffs and the Class that the Class Vehicles contained the dangerous Brake Defect. Because they volunteered to provide information about the Class Vehicles that they offered for sale to PlaintiffPlaintiffs and the Class, Defendants had the duty to disclose the whole truth. They did not.

165164.    To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiffs and the Class, and continue to conceal material information regarding the Brake Defect. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased by Plaintiffs and the Class.

166165.    Defendants concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the

brand's image and cost money. They did so at the expense of Plaintiffs and the Class. Had they been aware of the Brake Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased them.

167166.    Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase.

168167.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich themselves.

### NATIONWIDE COUNT III
### NEGLIGENT MISREPRESENTATION COMMON LAW
### (ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE STATE SUB-CLASSES)

169168.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

170169.    Plaintiffs assert this Negligent Misrepresentation count individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

171170.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiffs and Class members because Defendants knew or should have known of the Brake Defect and the risks associated with the manifestation of the Brake Defect. Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Brake Defect and failed to disclose its existence and its corresponding safety hazard.

172171.    Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Brake Defect exposing drivers and occupants to safety risks. Defendants also misrepresented that they would remedy any defects under the express

warranties but limited their coverage to mechanical defects. As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

173172.    The Brake Defect is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Brake Defect manifests, the driver may experience a partial or total loss of braking capability that may result in death and/or serious bodily injury to the occupants. During failure, drivers may be shocked, distracted, and distressed and be unable to safely operate the Class Vehicles. Drivers and occupants of the Class Vehicles are at risk for rear endrear- end collisions or other accidents which may result from the manifestation of the Brake Defect. No reasonable consumer expects a vehicle to contain a defect in design, such as the Brake Defect, that can cause partial or total brake failure with no warning or time to take preventative measures.

174173.    Plaintiffs and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Brake Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiffs and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

175174.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles with the Brake Defect, Plaintiffs and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**NATIONWIDE COUNT IV**
**UNJUST ENRICHMENT COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE STATE SUB-CLASSES)**

176175.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein, with the exception of the paragraphs regarding breach of express warranty and privity of contract. Plaintiffs bring this Unjust Enrichment count in the alternative to the breach of warranty claims, and assert this count simultaneously at the pleading stage, given Plaintiffs' allegations that the warranties at issue are unconscionable.

~~177~~176.        Plaintiffs assert this Unjust Enrichment count individually and on behalf of the Nationwide Class ~~or, in the alternative, on behalf of the State Sub-Classes~~.

~~178~~177.        Because of their conduct, Defendants caused damages to Plaintiffs and Class members.

~~179~~178.        Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Brake Defect and misrepresentations regarding the Class Vehicles' safety.

~~180~~179.        As a result of Defendants' fraud and deception, Plaintiffs and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

~~181~~180.        Defendants knowingly benefitted from their unjust conduct. They sold Class Vehicles equipped with a Brake Defect for more than what the vehicles were worth, at the expense of Plaintiffs and Class members.

~~182~~181.        Defendants readily accepted and retained these benefits from Plaintiffs and Class members, in order to retain their reputation and avoid the necessary costs to rectify their unjust conduct.

~~183~~182.        It is inequitable ~~and,~~ unconscionable, and would be unjust for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Brake Defect to consumers. Defendants knowingly limited their warranty coverage and excluded the Brake Defect. Plaintiffs and Class members would not have purchased the Class Vehicles or paid less for them had Defendants not concealed the Brake Defect.

~~184~~183.        Plaintiffs and Class members do not have an adequate remedy at law.

~~185~~184.        Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**NATIONWIDE COUNT V**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA") WASH. REV. CODE ANN. § 19.86.010, ET SEQ.**

**(ON BEHALF OF THE NATIONWIDE CLASS AND**

**WASHINGTON SUB-CLASS)**

186.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

187.    Plaintiff Seyyed Javad Maadanian (for purposes of this count, "Plaintiff") brings this claim on behalf of himself, the Nationwide Class, and the Washington Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

188.    Defendants and members of the Nationwide Class and Washington Sub-Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

189.    Defendants engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

190.    The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

191.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Wash. Rev. Code § 19.86.020.

192.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Nationwide Class and Washington Sub-Class. When Plaintiff and members of the Nationwide Class and Washington Sub-Class purchased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' braking systems were free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants

disclosed that the Brake Defect may fail and/or create an unavoidable safety risk, Plaintiff and members of the Nationwide Class and Washington Sub- Class would not have purchased the Class Vehicles, or would have paid less for their vehicles.

193.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Brake Defect and safety risk in the Class Vehicles at the time of sale and at all relevant times thereafter.

194.    Defendants unlawfully transferred the costs of repair or replacement to Plaintiff and members of the Nationwide Class and Washington Sub-Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

195.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiff and members of the Nationwide Class and Washington Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Brake Defect and the risks associated with the Brake Defect. Rather than disclose the Brake Defect, Defendants intentionally concealed the Brake Defect with the intent to mislead Plaintiff and members of the Nationwide Class and Washington Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the braking systems to Plaintiff and members of the Nationwide Class and Washington Sub-Class.

196.    Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause complete or partial loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious death or serious injury.

197.    Had Plaintiff and members of the Nationwide Class and Washington Sub-Class known about the Brake Defect at the time of purchase, including the safety hazard posed by the Brake Defect, they would not have bought the Class Vehicles or would have paid much less for them.

198.    As a direct and proximate result of Defendants' wrongful conduct in violation of the WCPA, Plaintiff and members of the Nationwide Class and Washington Sub-Class have suffered and continue to suffer harm by the threat of unexpected failure of their brakes and/or actual damages in the

amount of the cost to replace the braking systems, and damages to be determined at trial. Plaintiff and members of the Nationwide Class and Washington Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles. Accordingly, Plaintiff and Class Members' suffered injury to their business and property their Class Vehicles which are not suitable for use and have diminished in value as a result of the Brake Defect. They have also incurred expenses resulting from Defendants' unfair and/or deceptive practices.

199.    Pursuant to Wash. Rev. Code§ 19.86.090, the Washington State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the WCPA. Because Defendants' actions were willful and knowing, Washington State Class members' damages should be trebled.

### NATIONWIDE COUNT VI BREACH OF EXPRESS WARRANTY

### WASH REV. CODE§§ 62A.2 313 AND 62A.2A 210 (ON BEHALF OF THE NATIONWIDE CLASS AND WASHINGTON SUB-CLASS)

200.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

201.    Plaintiff Seyyed Javad Maadanian (for purposes of this count, "Plaintiff") brings this claim on behalf of himself, the Nationwide Class, and the Washington Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

202.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wash. Rev. Code §§ 62A.2 104(1) and 62A.2A 103(1)(t), and "sellers" of motor vehicles under§ 2.103(a)(4).

203.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code§§ 62A.2 105(1) and 62A.2A 103(1)(h).

204.    Defendants provided Plaintiff and members of the Nationwide Class and Washington Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. Under the warranties provided to Plaintiff and the Nationwide Class and Washington Sub-Class, Defendants

promised to repair or replace covered defective components, at no cost to owners of the Class Vehicles. As alleged herein, Defendants breached these warranties.

205.    Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiff and members of the Nationwide Class and Washington Sub-Class.

206.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Nationwide Class and Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers of the Class Vehicles only.

207.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Nationwide Class and Washington Sub-Class purchased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew that the braking systems were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

208.    Plaintiff and members of the Nationwide Class and Washington Sub-Class were induced to purchase the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Nationwide Class and Washington Sub-Class that the Class Vehicles contained the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

209.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with

Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition.

210.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class and Washington Sub-Class. Among other things, Plaintiff and members of the Nationwide Class and Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

211.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

212.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

213. Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation. Indeed, Mercedes has explicitly informed owners that it is unsafe to drive their Class Vehicle.

214. As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Nationwide Class and Washington Sub-Class have been damaged in an amount to be determined at trial.

215. In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Nationwide Class and Washington Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

216. Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Nationwide Class and Washington Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Nationwide Class and Washington Sub-Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

**NATIONWIDE COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY WASH REV. CODE§§ 62A.2-314 AND 62A.2A-212**
**(ON BEHALF OF THE NATIONWIDE CLASS AND WASHINGTON SUB-CLASS)**

217. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

218. Plaintiff Seyyed Javad Maadanian (for purposes of this count, "Plaintiff") brings this claim on behalf of himself, the Nationwide Class, and the Washington Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

219. Defendants are and were at all relevant times "merchants" with respect to motor

vehicles under Wash. Rev. Code§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under§ 2.103(a)(4).

220.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code§§ 62A.2-105(1) and 62A.2A-103(1)(h).

221.    Plaintiff and members of the Nationwide Class and Washington Sub-Class purchased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

222.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

223.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect-the Brake Defect-(at the time of sale and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

224.    Defendants cannot disclaim their implied warranty as they knowingly sold a defective product.

225.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Nationwide Class and Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the

Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

226.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.

227.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

228.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Nationwide Class and Washington Sub-Class have been damaged in an amount to be proven at trial.

229.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-a-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class and Washington Sub-Class. Among other things, Plaintiff and members of the Nationwide Class and Washington Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Nationwide Class and Washington Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

230.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described

herein.

231.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

VIII.    STATE SPECIFIC CLAIMS

A.    California Counts

CALIFORNIA COUNT I

VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200, ET SEQ.

(ON BEHALF OF THE CALIFORNIA SUB-CLASS)

232.    Plaintiffs Roxie Harris, Betty Walton, and Robert McCumsey (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the California Sub-Class against Defendants.

233.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

234.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

235.    Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.    by knowingly and intentionally concealing from Plaintiffs and California Sub-Class members that the Class Vehicles suffer from the Brake Defect while obtaining money from the California Sub-Class members;

b.    by marketing Class Vehicles as possessing a functional, safe, and defect-free braking system.

c.    by purposefully designing and manufacturing the Class Vehicles to contain the Brake Defect that may cause partial or total loss of braking capability contrary to what was disclosed to regulators and represented to consumers who purchased the Class Vehicles,

74

and failing to fix the Brake Defect free of charge; and

d.    by violating the other California laws alleged herein, including the False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song Beverly Consumer Warranty Act.

236.    Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiffs and California Sub-Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

237.    Defendants' material misrepresentations and omissions alleged herein caused Plaintiffs and the California Sub-Class members to make their purchases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California Sub-Class members would not have purchased these vehicles, or would not have purchased these Class Vehicles at the prices they paid.

238.    Accordingly, Plaintiffs and California Sub-Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

239.    Defendants' violations present a continuing risk to Plaintiffs and California Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

240.    Plaintiffs request that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the California Sub-Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof Code § 17203 and Cal. Bus. & Prof Code § 3345, and for such other relief set forth below.

**CALIFORNIA COUNT II**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE§ 17500, ET SEQ.**

**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

241.    Plaintiffs Roxie Harris, Betty Walton, and Robert McCumsey (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the California Sub–Class against Defendants. The California False Advertising Law ("FAL"), Cal. Bus. & Prof Code § 17500, prohibits false advertising.

242.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

243.    Defendants, Plaintiffs, and California Sub-Class members are "persons" within the meaning of Cal. Bus. & Prof Code§ 17506.

244.    Defendants violated the FAL by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the safety of the Class Vehicles that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including California Sub-Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

245.    The misrepresentations and omissions regarding the reliability and safety of Class Vehicles as set forth herein were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did, in fact, deceive reasonable consumers, including Plaintiffs and California Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

246.    In purchasing or leasing their Class Vehicles, the California Sub-Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles are distributed with a dangerous safety defect, rendering the braking system hazardous in certain conditions.

247.    Plaintiffs and the other California Sub-Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive

practices. Had they known the truth, Plaintiffs and California Sub-Class members would not have purchased the Class Vehicles or paid significantly less for them.

248.    The California Plaintiffs and California Sub-Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and California Sub-Class members did not, and could not, unravel Defendants' deception on their own.

249.    Defendants had an ongoing duty to Plaintiffs and California Sub-Class members to refrain from unfair or deceptive practices under the California False Advertising Law in the course of their business. Specifically, the Defendants owed Plaintiffs and California Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Brake Defect from Plaintiffs and California Sub-Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

250.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

251.    Defendants' violations present a continuing risk to Plaintiffs and California Sub- Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

252.    Plaintiffs request that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to the California Sub- Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

### COUNT III
### BREACH OF EXPRESS WARRANTY CAL. COM. CODE§§ 2313 AND 10210
### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

253.    Plaintiffs Roxie Harris, Betty Walton, and Robert McCumsey (for the purposes of this

count, "Plaintiffs") bring this claim individually and on behalf of the California Sub- Class against Defendants.

254.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

255.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under§ 2103(1)(d).

256.    All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code§ 2103(1)(a).

257.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code§§ 2105(1) and 10103(a)(8).

258.    Defendants provided Plaintiffs and members of the California Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. As alleged herein, Defendants breached these warranties.

259.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. Such representations formed the basis of the bargain in Plaintiffs and members of the California Sub-Class's decisions to purchase the Class Vehicles. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiffs and members of the California Sub-Class.

260.    Plaintiffs and members of the California Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the California Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and

intended to benefit purchasers of the Class Vehicles only.

261.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the California Sub-Class purchased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew of the Brake Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

262.    Plaintiffs and members of the California Sub-Class were induced to purchase the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the California Sub-Class that the Class Vehicles contained the Brake Defect and failed to provide a suitable repair or replacement free of charge within a reasonable time.

263.    On information and belief, Defendants have not suitably repaired or replaced the Brake Defect free of charge for Plaintiffs and members of the California Sub-Class despite the existence of the Brake Defect in the Class Vehicles at the time of sale.

264.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition\.

265.    The time limits contained in Defendants' warranty periods were unconscionable and inadequate to protect Plaintiffs and members of the California Sub-Class. Among other things, Plaintiffs and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants

and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk. Defendants concealment of the Brake Defect and failure to repair or replace the defective braking system is unconscionable.

266.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

267.    Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

268.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the California Sub-Class have been damaged in an amount to be determined at trial.

269.    In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the California Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

270.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the California Sub-Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and

consequential damages as allowed.

## CALIFORNIA COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CAL. COM. CODE §§ 2314 AND 10212

#### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

271.  Plaintiffs Roxie Harris, Betty Walton, and Robert McCumsey (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the California Sub-Class against Defendants.

272.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

273.  Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code§§ 2104(1) and 10103(c), and "sellers" of motor vehicles under§ 2103(1)(d).

274.  All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code§ 2103(1)(a).

275.  The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code§§ 2105(1) and 10103(a)(8).

276.  The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code§§ 2105(1) and 10103(a)(8).

277.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

278.  The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause partial or total loss of braking capability, rendering the Class Vehicles inherently defective and

dangerous.

279.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis a vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the California Sub-Class. Among other things, Plaintiffs and members of the California Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the California Sub Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

280.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

281.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California Sub-Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT V**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT, BREACH OF IMPLIED WARRANTY**

**CAL CIV. CODE § 1790, ET SEQ.**

**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

282.    Plaintiffs Roxie Harris, Betty Walton, and Robert McCumsey (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the California Sub- Class against

Defendants.

283.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

284.    All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code§ 1791(b).

285.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

286.    Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code§ 1791G).

287.    Defendants impliedly warranted to Plaintiffs and the other members of the California Sub-Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code§§ 1791.l(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

288.    The Class Vehicles would not pass without objection in the automotive trade due to the Brake Defect. Because the Class Vehicles contain the Brake Defect, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

289.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the Brake Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

290.    The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiffs and California Sub-Class members who purchased the defective Class Vehicles. The amount of damages due will be proven at trial.

291.    Pursuant to Cal. Civ. Code§§ 1791.l(d) and 1794, Plaintiffs and California Sub- Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song- Beverly Consumer Warranty Act.

**B.    Colorado Counts**

**COLORADO COUNT** I:

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT COLO. REV. STAT. §**

**6-1-101 ET SEQ.**

**(ON BEHALF OF THE COLORADO SUB-CLASS)**

292.    Plaintiff Brandon Dueling (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Colorado Sub-Class against all Defendants.

293.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

294.    Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act "Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

295.    Plaintiff and Colorado Sub-Class members are "consumers" for purposes of Col. Rev. Stat§ 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

296.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado Sub-Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Defendants at the time of advertisement or sale with the intent to induce Colorado Sub-Class members to purchase, lease or retain the Class Vehicles.

297.    In the course of their business, Defendants violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

298.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Colorado CPA.

299. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Colorado Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

300. Defendants' scheme and concealment of the Brake Defect and true characteristics of the brake booster-housing unit in the Class Vehicles were material to Plaintiff and Colorado Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Colorado Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

301. Plaintiff and Colorado Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Colorado Sub-Class members did not, and could not, unravel Defendants' deception on their own.

302. Defendants had an ongoing duty to Plaintiff and Colorado Sub-Class members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed Plaintiff and Colorado Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Colorado Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

303. Defendants' violations present a continuing risk to the Colorado Sub-Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

304. Plaintiff and the Colorado Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners and lessees of Class Vehicles

suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**COLORADO COUNT** II:

**BREACH OF EXPRESS WARRANTY COLO. REV. STAT.§§ 4-2-313 AND 4-2.5-210**

**(ON BEHALF OF THE COLORADO SUB-CLASS)**

305.    Plaintiff Brandon Dueling (for the purposes of this count, "Plaintiff') brings this claim individually and on behalf of the Colorado Sub-Class against all Defendants.

306.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

307.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

308.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat.§ 4-2.5-103(1)(p).

309.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

310.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Colorado Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

311.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Colorado Sub-Class members unknowingly purchased or leased Class Vehicles that came equipped with the Brake Defect.

312.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Colorado Sub-Class members.

313.    Plaintiff and Colorado Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

314.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Colorado Sub-Class members.

315.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

316.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

317.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Colorado Sub-Class members have been damaged in an amount to be proven at trial.

**COLORADO COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY COLO. REV. STAT.§§ 4-2-314 AND 4-2.5-212**

**(ON BEHALF OF THE COLORADO SUB-CLASS)**

318.    Plaintiff Brandon Dueling (for the purposes of this count, "Plaintiff') brings this claim individually and on behalf of the Colorado Sub-Class against all Defendants.

319.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth

herein.

320.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

321.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

322.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

323.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212.

324.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect rendering the Class Vehicles inherently defective and dangerous.

325.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

326.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement

procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

327. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Colorado Sub-Class members have been damaged in an amount to be proven at trial.

C. Florida Counts FLORIDA COUNT I

VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT.§§ 501.201, *ET SEQ*.

(ON BEHALF OF THE FLORIDA SUB-CLASS)

328. Plaintiffs Francy Diaz Perez and Marcio Sinelli (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

329. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

330. Plaintiffs and the members of the Florida Sub-Class are "consumers" within the meaning of the FDUTPA, FLA. STAT.§ 501.203(7).

331. Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

332. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

333. In the course of their businesses, Defendants failed to disclose and actively concealed the Brake Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

334.    In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Brake Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the members of the Florida Sub-Class.

335.    Defendants actively suppressed the fact that the Brake Defect in Class Vehicles presents a safety hazard. Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Brake Defect within a reasonable time in violation of FDUTPA. Defendants also breached warranties as alleged below in violation of FDUTPA.

336.    As alleged above, Defendants knew or should have known of the Brake Defect contained in the Class Vehicles since at least 2009, if not before. Prior to installing the Brake Defect in the Class Vehicles, Defendants engaged in pre-production testing and failure mode analysis. Defendants should have known about the Brake Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Brake Defect.

337.    By failing to disclose and by actively concealing the Brake Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Brake Defect to cause partial or total loss of braking capability as well as the corresponding safety hazard to vehicle occupants.

338.    Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiffs and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Brake Defect, which were defective in design and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and

characteristics of the Class Vehicles, including the Brake Defect within their braking systems and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiffs and the members of the Florida Sub-Class did.

339.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiffs and members of the Florida Sub-Class. Defendants knew, or should have known, that the braking systems were defective in design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause a partial or total loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

340.    Defendants knew or should have known that their conduct violated the FDUTPA.

341.    Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles with the Brake Defect that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Brake Defect and its corresponding safety hazard.

342.    To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Brake Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles with the Brake Defect. Defendants allowed unsuspecting new and used car purchasers to continue to buy the Class Vehicles and continue to drive them, despite the safety risk they pose.

343.    Defendants owed Plaintiffs and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Brake Defect because Defendants:

            a.    Possessed exclusive knowledge of the Brake Defect and its associated safety hazard;

91

b. ~~Intentionally concealed the foregoing from Plaintiffs and the members of the Florida Sub-Class; and/or~~

c. ~~Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the members of the Florida Sub-Class that contradicted these representations.~~

~~344.    Because Defendants fraudulently concealed the Brake Defect in the braking systems of Class Vehicles, and now that the Brake Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiffs and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase.~~

~~345.    Defendants' failure to disclose and active concealment of the Brake Defect in the Class Vehicles are material to Plaintiffs and the members of the Florida Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports and remedies them.~~

~~346.    Plaintiffs and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiffs and the members of the Florida Sub-Class been aware of the Brake Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff and the members of the Florida Sub-Class either would not have paid as much for their vehicles or would not have purchased them at all. Plaintiff and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.~~

~~347.    Plaintiffs and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiffs, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.~~

~~348.    As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and~~

the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

349.    Plaintiffs and the members of the Florida Sub-Class are entitled to recover their actual damages, under FLA. STAT. § 501.211(2), and attorneys' fees under FLA. STAT. § 501.2105(1).

350.    Plaintiffs and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

### FLORIDA COUNT II

### BREACH OF EXPRESS WARRANTY FLA. STAT.§§ 672.313, 680.21, AND 680.1031 (ON BEHALF OF THE FLORIDA SUB-CLASS)

351.    Plaintiffs Francy Diaz Perez and Marcio Sinelli (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

352.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

353.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under§ 672.103(1)(d).

354.    The Class Vehicles are and were at all relevant times "goods" within the meaning ofFLA. STAT.§§ 672.105(1) and 680.1031(1)(h).

355.    Defendants provided Plaintiffs and members of the Florida Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. Under the warranties provided to Plaintiffs and the Florida Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners of the Class Vehicles. As alleged herein, Defendants breached these warranties.

356.    Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and

that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiffs and members of the Florida Sub-Class.

357.    Plaintiffs and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers of the Class Vehicles only.

358.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Florida Sub-Class purchased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew of the Brake Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

359.    Plaintiffs and members of the Florida Sub-Class were induced to purchase the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the Florida Sub-Class that the Class Vehicles contained the Brake Defect and failed to provide a suitable repair or replacement of the Brake Defect free of charge within a reasonable time.

360.    On information and belief, Defendants have not suitably repaired or replaced the Brake Defect free of charge for Plaintiffs and members of the Florida Sub-Class despite the existence of the Brake Defect in the Class Vehicles at the time of sale.

361.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with

Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

362.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

363.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

364.    Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

365.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Florida Sub-Class have been damaged in an amount to be determined at trial.

366.    In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Florida Sub-Class whole because, on information and

belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

367. Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Florida Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Florida Sub-Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

### FLORIDA COUNT III

### BREACH OF IMPLIED WARRANTY FLA. STAT.§§ 672.314, 372.315, AND 680.1031 (ON BEHALF OF THE FLORIDA SUB-CLASS)

368. Plaintiffs Francy Diaz Perez and Marcio Sinelli (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

369. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

370. Plaintiffs and members of the Florida Sub-Class purchased the Class Vehicles, manufactured by Defendants, from Defendants by and through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

371. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT.§§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under§ 672.103(1)(d).

372. The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.103 l(l)(h).

373. Defendants impliedly warranted that the Class Vehicles were in merchantable condition

and fit for ordinary purpose for which vehicles are used pursuant to FLA. STAT.

§ 672.314.

374.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation pursuant to FLA. STAT.§ 672.315. The Class Vehicles contain an inherent defect the Brake Defect (at the time of sale and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of merchantability.

375.    Defendants cannot disclaim their implied warranty as they knowingly sold a defective product.

376.    Plaintiffs and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Florida Sub- Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the implied warranty of merchantability provided with the Class Vehicles.

377.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and, on information and belief, have refused to repair or replace the Brake Defect free of charge within a reasonable time.

378.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement

procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

379.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Florida Sub-Class have been damaged in an amount to be proven at trial.

380.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-a-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Florida Sub-Class. Among other things, Plaintiffs and members of the Florida Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Florida Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

381.    Plaintiffs and members of the Florida Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

382.    Any applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

D.    Georgia Counts

GEORGIA COUNT I:

VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT GA. CODE ANN.§
10-1-390 ET SEQ.

(ON BEHALF OF THE GEORGIA SUB-CLASS)

383.    Plaintiffs Wender Jeudy and Letitia Matthews (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Georgia Sub-Class against all Defendants.

384.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth

herein.

385.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-l-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-l-393(b).

386.    In the course of their business, Defendants violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

387.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Ga. Code. Ann.§ 10-l-393(b).

388.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Georgia Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

389.    Defendants' scheme and concealment of the Brake Defect and true characteristics of the braking systems in the Class Vehicles were material to Plaintiffs and Georgia Sub-Class members, as Defendants intended. Had they known the truth, Plaintiffs and Georgia Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

390.    Plaintiffs and Georgia Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had

concealed or failed to disclose. Plaintiffs and Georgia Sub-Class members did not, and could not, unravel Defendants' deception on their own.

391.    Defendants had an ongoing duty to Plaintiffs and Georgia Sub-Class members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of their business. Specifically, Defendants owed Plaintiffs and Georgia Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Georgia Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

392.    Defendants' violations present a continuing risk to Plaintiffs and Georgia Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

393.    As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs and the Georgia Sub-Class has suffered injury-in-fact and/or actual damage.

394.    Plaintiffs and the Georgia Sub-Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

395.    Plaintiffs and the Georgia Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann.§ 10-1-399.

396.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of

warranties is excused and thereby deemed satisfied. Plaintiffs and the Georgia Sub-Class seek all damages and relief to which it is entitled.

### GEORGIA COUNT II:

### VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT GA. CODE ANN. § 10-1-370 ET SEQ.

### (ON BEHALF OF THE GEORGIA SUB-CLASS)

397. Plaintiffs Wender Jeudy and Letitia Matthews (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Georgia Sub-Class against all Defendants.

398. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

399. Defendants, Plaintiffs, and members of the Georgia Sub-Class are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

400. The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

401. In the course of their business, Defendants violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

402. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Georgia UDTPA.

403. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Georgia Sub-Class members, about the true safety and reliability of

Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

404. Defendants' scheme and concealment of the Brake Defect and true characteristics of the brake booster housing units in the Class Vehicles were material to Plaintiffs and Georgia Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Georgia Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

405. Plaintiffs and Georgia Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Georgia Sub-Class members did not, and could not, unravel Defendants' deception on their own.

406. Defendants had an ongoing duty to Plaintiffs and Georgia Sub-Class members to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Georgia Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Georgia Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

407. Defendants' violations present a continuing risk to Plaintiffs and Georgia Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

408. As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs and the Georgia Sub-Class have suffered injury in fact and/or actual damage.

409. Plaintiffs and the Georgia Sub-Class seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

**GEORGIA COUNT III:**

**BREACH OF EXPRESS WARRANTY GA. CODE ANN.§§ 11-2-313 AND 11-2A-210 (ON BEHALF OF THE GEORGIA SUB CLASS)**

410. Plaintiffs Wender Jeudy and Letitia Matthews (for the purposes of this count,

"Plaintiffs") bring this claim individually and on behalf of the Georgia Sub-Class against all Defendants.

411.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

412.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

413.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

414.   In connection with the purchase of Class Vehicles, the Defendants provided Plaintiffs and Georgia Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

415.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Georgia Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

416.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiffs and Georgia Sub-Class members.

417.   Plaintiffs and Georgia Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

418.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Georgia Sub-Class members.

419.   Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.

Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiffs and the Georgia Sub-Class seek all damages and relief to which it is entitled.

420.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Georgia Sub-Class members have been damaged in an amount to be proven at trial.

**GEORGIA COUNT IV:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY GA. CODE ANN.§§ 11-2-314 AND 11-2A-212**

**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

421.    Plaintiffs Wender Jeudy and Letitia Matthews (for the purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the Georgia Sub-Class against all Defendants.

422.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

423.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann.§§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under§ 11-2-103(1)(d).

424.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

425.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

426.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

427.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiffs and the Georgia Sub-Class seek all damages and relief to which it is entitled.

428.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Georgia Sub-Class members have been damaged in an amount to be proven at trial.

E.    Illinois Counts

ILLINOIS COUNT I:
VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
815 ILCS 505/1, ET SEQ. AND 720 ILCS 295/IA (ON BEHALF OF THE ILLINOIS SUB-CLASS)

429.    Plaintiff Leonardo Cacho (for the purposes of this count, "Plaintiff") bring this claim individually and on behalf of the Illinois Sub-Class against all Defendants.

430.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth

herein.

431.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/l(c).

432.    Members of the Illinois Sub-Class are "consumers" as that term is defined in 815 ILCS 505/l(e).

433.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

434.    In the course of their business, Defendants violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

435.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by 815 ILCS 505/2.

436.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Illinois Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

437.    Defendants' scheme and concealment of the Brake Defect and true characteristics of the brake booster housing units in the Class Vehicles were material to Plaintiff and Illinois Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Illinois Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

438.   Plaintiff and Illinois Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Illinois Sub-Class members did not, and could not, unravel Defendants' deception on their own.

439.   Defendants had an ongoing duty to Plaintiff and Illinois Sub-Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiff and Illinois Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Illinois Sub- Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

440.   Defendants' violations present a continuing risk to Plaintiff and Illinois Sub- Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

441.   Plaintiff and the Illinois Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

442.   As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and members of the Illinois Sub-Class have suffered injury-in-fact and/or actual damage.

443.   Pursuant to 815 ILCS 505/l0a(a), the Illinois Sub-Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

444.   Plaintiff and the Illinois Sub-Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and

proper relief available under 815 ILCS § 505/1 et seq.

**ILLINOIS COUNT** II:

**BREACH OF EXPRESS WARRANTY**

**810 ILL. COMP. STAT.§§ 5/2-313 AND 5/2A-210 (ON BEHALF OF THE ILLINOIS SUB-CLASS)**

445.    Plaintiff Leonardo Cacho (for the purposes of this count, "Plaintiff") bring this claim individually and on behalf of the Illinois Sub-Class against all Defendants.

446.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

447.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under§ 5/2-103(1)(d).

448.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat.§§ 5/2-105(1) and 5/2A-103(1)(h).

449.    In connection with the purchase of Class Vehicles, the Defendants provided Plaintiff and Illinois Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

450.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Illinois Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

451.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Illinois Sub-Class members.

452.    Plaintiff and Illinois Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

453.    Defendants knowingly breached their express warranties to repair defects in materials

and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Illinois Sub-Class members.

454.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiff and the Georgia Sub-Class seek all damages and relief to which it is entitled.

455.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Illinois Sub-Class members have been damaged in an amount to be proven at trial.

**ILLINOIS COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY 810 ILL. COMP. STAT. §§ 5/2-314 AND 5/2A-212**

**(ON BEHALF OF THE ILLINOIS SUB-CLASS)**

456.    Plaintiff Leonardo Cacho (for the purposes of this count, "Plaintiff") bring this claim individually and on behalf of the Illinois Sub-Class against all Defendants.

457.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

458.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3 ), and "sellers" of motor vehicles under§ 5/2-103(1)(d).

459.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810

Ill. Comp. Stat.§§ 5/2-105(1) and 5/2A-103(1)(h).

460.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

461.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

462.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

463.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Illinois Sub-Class members have been damaged in an amount to be proven at trial.

F.    **Indiana Counts**

**INDIANA COUNT I:
VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT IND. CODE §§
24-5-0.5-3, ET SEQ.
(ON BEHALF OF THE INDIANA SUB-CLASS)**

464.    Plaintiff James Powell (for purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Indiana Sub-Class against all Defendants.

465.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

466.    Defendants are "supplier[s]" within the meaning of the Indiana Deceptive Consumer Sales Act ("IDCSA"). Ind. Code § 24-5-0.5-2(a)(3).

467.    Plaintiffs are "person[s]" as defined by Ind. Code § 24-5-0.5-2(a)(2).

468.    In purchasing and/or leasing the Class Vehicles, a "consumer transaction" occurred between Plaintiffs and Defendants within the meaning of the IDCSA. Ind. Code § 24-5-0.5-2(a)(l).

469.    The IDCSA makes unlawful the "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). "Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction … [and] includes both implicit and explicit misrepresentations." *Id.*

470.    In the course of their business, Defendants violated the IDCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

471.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Ind. Code § 24-5-0.5-3.

472.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Indiana Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

473.    Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were

material to Plaintiffs and Indiana Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Indiana Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

474.    Plaintiffs and Indiana Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Indiana Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

475.    Defendants had an ongoing duty to Plaintiffs and Indiana Sub-Class members to refrain from unfair or deceptive practices under the IDCSA in the course of their business. Specifically, Defendants owed Plaintiffs and Indiana Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Indiana Sub- Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

476.    Defendants' violations present a continuing risk to Plaintiffs and Indiana Sub- Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

477.    Plaintiffs and the Indiana Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

478.    Pursuant to Ind. Code § 24-5-0.5-3, Plaintiffs and the Indiana Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

**INDIANA COUNT II:**

**BREACH OF EXPRESS WARRANTY IND. CODE§**
**26-1-2-313**

**(ON BEHALF OF THE INDIANA SUB-CLASS)**

479.    Plaintiff James Powell (for the purposes of this count, "Plaintiff") brings this claim on

behalf of himself and the Indiana Sub-Class against all Defendants.

480.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

481.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Ind. Code§ 26-1-2-103(1)(d).

482.    Plaintiffs are and were at all relevant times "buyer[s]" of motor vehicles under Ind. Code§ 26-1-2-103(1)(a).

483.    The Class Vehicles are and were at all relevant times "goods" within the meaning ofInd. Code§ 26-1-2-105.

484.    In connection with the purchase of Class Vehicles, Defendants provided Plaintiff and Indiana Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

485.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Indiana Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

486.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Indiana Sub-Class members.

487.    Plaintiff and Indiana Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

488.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Indiana Sub-Class members.

489.    Affording Defendants an opportunity to cure their breach of the warranties would be

unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

490. As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Indiana Sub-Class members have been damaged in an amount to be proven at trial.

INDIANA COUNT III:

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY IND. CODE§ 26-1-2-314

(ON BEHALF OF THE INDIANA SUB-CLASS)

491. Plaintiff James Powell (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Indiana Sub-Class against all Defendants.

492. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

493. Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Ind. Code§ 26-1-2-103(1)(d) and "merchant[s]" under§ 26-1-2-104.

494. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code§ 26-1-2-105.

495. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code § 26- 1-2-314(1).

496. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause

a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

497.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

498.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Indiana Sub-Class members have been damaged in an amount to be proven at trial.

G.    Louisiana Counts

LOUISIANA COUNT I:

VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

LA. STAT. ANN.§ 51:1401, ET SEQ.

(ON BEHALF OF THE LOUISIANA SUB-CLASS)

499.    Plaintiff Jennifer Walker (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Louisiana Sub-Class against all Defendants.

500.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

501.    Defendants, Plaintiff, and the Louisiana Sub-Class are "persons" within the meaning of the La. Rev. Stat.§ 51:1402(8)

502.    Plaintiff and Louisiana Sub-Class members are "consumers" within the meaning of La. Rev. Stat.§ 51:1402(1).

503.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. §

51:1402(10).

504.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

505.    In the course of their business, Defendants violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

506.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in one or more unfair or deceptive business practices prohibited by La. Rev. Stat.§ 51:1405(A).

507.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Louisiana Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

508.    Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiff and Louisiana Sub-Class members, as Defendants intended. Had they known the truth, Plaintiff and Louisiana Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

509.    Plaintiff and Louisiana Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiff and Louisiana Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

510.    Defendants had an ongoing duty to Plaintiff and Louisiana Sub-Class members to refrain from unfair or deceptive practices under the Louisiana CPL in the course of their business. Specifically,

Defendants owed Plaintiff and Louisiana Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Louisiana Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

511.    Defendants' violations present a continuing risk to Plaintiff and Louisiana Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

512.    Plaintiff and the Louisiana Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

513.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiff and the Louisiana Sub-Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

**LOUISIANA COUNT II:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/ WARRANTY AGAINST REDHIBITORY DEFECTS**
**LA. CIV. CODE ART. 2520, 2524**
**(ON BEHALF OF THE LOUISIANA SUB-CLASS)**

514.    Plaintiff Jennifer Walker (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Louisiana Sub-Class against all Defendants.

515.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

516.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

517.    A warranty that the Class Vehicles were in merchantable condition is implied by law in

the instant transactions.

518.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

519.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

520.    As a direct and proximate result of Defendants' breach of the warranty of merchantability, Plaintiff and Louisiana Sub-Class members have been damaged in an amount to be proven at trial.

H.    **Maryland Counts**

**MARYLAND COUNT I:**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT MD. CODE COM. LAW§ 13-101 ET SEQ.**
**(ON BEHALF OF THE MARYLAND SUB-CLASS)**

521.    Plaintiff Rulesha McKinney (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Maryland Sub-Class against all Defendants.

522.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth

herein.

523.    Defendants and the Maryland State Class are "persons" within the meaning of Md. Code Com. Law§ 13-l0l(h).

524.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law§ 13-303. Defendants participated in misleading, false, or deceptive acts that violated the Maryland CPA.

525.    In the course of their business, Defendants violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Maryland CPA.

526.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Maryland Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

527.    Defendants' scheme and concealment of the Brake Defect and true characteristics of the braking systems in the Class Vehicles were material to Plaintiff and Maryland Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Maryland Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

528.    Plaintiff and Maryland Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Maryland Sub-Class members did not, and could not,

unravel Defendants' deception on their own.

529.   Defendants had an ongoing duty to Plaintiff and Maryland Sub-Class members to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiff and Maryland Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Maryland Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

530.   Defendants' violations present a continuing risk to Plaintiff and Maryland Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

531.   As a direct and proximate result of Defendants' violations of the Maryland CPA, Plaintiff and the Maryland Sub-Class has suffered injury-in-fact and/or actual damage.

532.   Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiff and the Maryland Sub-Class seek all damages and relief to which it is entitled.

533.   Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**MARYLAND COUNT II:**

**BREACH OF EXPRESS WARRANTY MD. CODE COM. LAW§§ 2-313 AND 2A-210 (ON BEHALF OF THE**

120

MARYLAND SUB-CLASS)

534. Plaintiff Rulesha McKinney (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Maryland Sub-Class against all Defendants.

535. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

536. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

537. The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law§§ 2-105(1) and 2a-103(1)(h).

538. In connection with the purchase of Class Vehicles, the Defendants provided Plaintiff and Maryland Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

539. Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Maryland Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

540. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Maryland Sub-Class members.

541. Plaintiff and Maryland Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

542. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Maryland Sub-Class members.

543. Defendants were provided notice of the Brake Defect through their own testing, and by

numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiff and the Maryland Sub-Class seek all damages and relief to which it is entitled.

544.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Maryland Sub-Class members have been damaged in an amount to be proven at trial.

**MARYLAND COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY MD. CODE COM. LAW§§ 2-314 AND 2A-212**

**(ON BEHALF OF THE MARYLAND SUB-CLASS)**

545.    Plaintiff Rulesha McKinney (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Maryland Sub-Class against all Defendants.

546.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

547.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(l)(d).

548.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law§§ 2-105(1) and 2a-103(l)(h).

549.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law§§ 2-314, and 2a-212.

550. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

551. Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiff and the Maryland Sub-Class seek all damages and relief to which it is entitled.

552. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Maryland Sub-Class members have been damaged in an amount to be proven at trial.

I. **Mississippi Counts**

**MISSISSIPPI COUNT I:**

**VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT MISS. CODE. ANN.§ 75-24-1, ET SEQ.**

**(ON BEHALF OF THE MISSISSIPPI SUB-CLASS)**

553. Plaintiff Huey Williams (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Mississippi Sub-Class against all Defendants.

554. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth

herein.

555.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5.

556.    Defendants participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; and advertising Class Vehicles with the intent not to sell them as advertised.

557.    In the course of their business, Defendants violated the Mississippi CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

558.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Miss. Code. Ann. § 75-24-5.

559.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Mississippi Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

560.    Defendants' scheme and concealment of the Brake Defect and true characteristics of

the brake booster housing units in the Class Vehicles were material to Plaintiff and Mississippi Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Mississippi Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

561.    Plaintiff and Mississippi Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Mississippi Sub-Class members did not, and could not, unravel Defendants' deception on their own.

562.    Defendants had an ongoing duty to Plaintiff and Mississippi Sub-Class members to refrain from unfair or deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiff and Mississippi Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Mississippi Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

563.    Defendants' violations present a continuing risk to Plaintiff and Mississippi Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

564.    Mississippi Sub-Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Mississippi CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

565.    As a direct and proximate result of Defendants' violations of the Mississippi CPA, Mississippi Sub-Class members have suffered injury-in-fact and/or actual damage.

566.    Plaintiff seeks actual damages in an amount to be determined at trial any other just and

proper relief available under the Mississippi CPA.

**MISSISSIPPI COUNT II:**

**BREACH OF EXPRESS WARRANTY MISS. CODE §§ 75-2-313 AND 75-2A-210 (ON BEHALF OF THE MISSISSIPPI SUB-CLASS)**

567.    Plaintiff Huey Williams (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Mississippi Sub-Class against all Defendants.

568.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

569.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code§ 75-2-104(1) and "sellers" of motor vehicles under§ 75-2- 103(1)(d).

570.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

571.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code§§ 75-2-105(1) and 75-2A-103(1)(h).

572.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Mississippi Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

573.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Mississippi Sub-Class members unknowingly purchased or leased Class Vehicles that came equipped with the Brake Defect.

574.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Mississippi Sub-Class members.

575.    Plaintiff and Mississippi Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

576. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Mississippi Sub-Class members.

577. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

578. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

579. As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Mississippi Sub-Class members have been damaged in an amount to be proven at trial.

**MISSISSIPPI COUNT** III:

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY MISS. CODE §§ 75-2-314 AND 75-2A-212**

**(ON BEHALF OF THE MISSISSIPPI SUB-CLASS)**

580. Plaintiff Huey Williams (for the purposes of this count, "Plaintiff") bring this claim individually and on behalf of the Mississippi Sub-Class against all Defendants.

581. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

582. Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

583. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

584. The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

585. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2-314 and 75-2A-212.

586. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect rendering the Class Vehicles inherently defective and dangerous.

587. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

588. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

589.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Mississippi Sub-Class members have been damaged in an amount to be proven at trial.

J.  **New Jersey Counts**

**NEW JERSEY COUNT I**

**VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA")**

**N.J. STAT. ANN.§ 56:8-2 ET SEQ.**

**(ON BEHALF OF THE NEW JERSEY SUB-CLASS)**

590.  Plaintiffs Ruben Charles, Wanda Jones, Bianca Ortiz, Jeffrey Robinson, Thomas Stefanopoulos, and Antonio Wynn (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the New Jersey Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

591.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

592.  The NJCFA prohibits:

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. STAT. ANN.§ 56:8-2.

593.  Plaintiffs and members of the New Jersey Sub-Class are consumers who purchased Class Vehicles for personal, family, or household use.

594.  In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Brake Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold and failed to disclose the Brake Defect and corresponding safety risk in violation of the NJCFA.

595. Defendants' misrepresentations and fraudulent om1ss10ns were material to Plaintiffs and members of the New Jersey Sub-Class. When Plaintiffs and members of the New Jersey Sub-Class purchased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' braking systems were free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Brake Defect may fail and/or create an unavoidable safety risk, Plaintiffs and members of the New Jersey Sub-Class would not have purchased the Class Vehicles, or would have paid less for their vehicles.

596. Defendants knowingly concealed, suppressed and/or omitted the existence of the Brake Defect and safety risk in the Class Vehicles at the time of sale and at all relevant times thereafter.

597. Defendants knew that the Brake Defect was designed defectively and unconscionably limited the manufacturer's warranty coverage so that the Brake Defect would be excluded, thereby unlawfully transferring the costs of repair or replacement to Plaintiffs and members of the New Jersey Sub-Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

598. Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiffs and members of the New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Brake Defect and the risks associated with the Brake Defect. Rather than disclose the Brake Defect, Defendants intentionally concealed the Brake Defect with the intent to mislead Plaintiffs and members of the New Jersey Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the braking systems to Plaintiffs and members of the New Jersey Sub-Class.

599. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause complete or partial loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious death or serious injury.

600. Had Plaintiffs and members of the New Jersey Sub-Class known about the Brake Defect

at the time of purchase, including the safety hazard posed by the Brake Defect, they would not have bought the Class Vehicles or would have paid much less for them.

601. As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiffs and members of the New Jersey Sub-Class have suffered and continue to suffer harm by the threat of unexpected failure of their brakes and/or actual damages in the amount of the cost to replace the braking systems, and damages to be determined at trial. Plaintiffs and members of the New Jersey Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

602. As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiffs and members of the New Jersey Sub- Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J. STAT. ANN. § 56:8-19. Plaintiffs and members of the New Jersey Sub-Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA. *See* N.J. STAT. ANN.§ 56:8-19.

### NEW JERSEY COUNT II
### BREACH OF EXPRESS WARRANTY
### N.J. STAT. ANN.§§ 12A:2-314 AND 12A:2A-210 (ON BEHALF OF THE NEW JERSEY SUB-CLASS)

603. Plaintiffs Ruben Charles, Wanda Jones, Bianca Ortiz, Jeffrey Robinson, Thomas Stefanopoulos, and Antonio Wynn (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the New Jersey Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

604. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

605. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

606. The Class Vehicles are and were at all relevant times "goods" within the meaning ofN.J. STAT. ANN.§§ 12A:2-105(1) and 2A-103(1)(h).

607.    Defendants provided Plaintiffs and members of the New Jersey Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. Under the warranties provided to Plaintiffs and the New Jersey Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners of the Class Vehicles. As alleged herein, Defendants breached these warranties.

608.    Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiffs and members of the New Jersey Sub-Class.

609.    Plaintiffs and members of the New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers of the Class Vehicles only.

610.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the New Jersey Sub-Class purchased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew that the braking systems were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect. 611.    Plaintiffs and members of the New Jersey Sub-Class were induced to purchase the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the New Jersey Sub-Class that the Class Vehicles contained the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

612.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition.

613.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the New Jersey Sub-Class. Among other things, Plaintiffs and members of the New Jersey Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

614.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

615.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of

warranties is excused and thereby deemed satisfied.

616.    Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation. Indeed, Mercedes has explicitly informed owners that it is unsafe to drive their Class Vehicle.

617.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the New Jersey Sub-Class have been damaged in an amount to be determined at trial.

618.    In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the New Jersey Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

619.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the New Jersey Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the New Jersey Sub-Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

**NEW JERSEY COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**N.J. STAT. ANN.§§ 12A:2-314, 12A:2A-103, AND 12A:2A-212 (ON BEHALF OF THE NEW JERSEY SUB-CLASS)**

620.    Plaintiffs Ruben Charles, Wanda Jones, Bianca Ortiz, Jeffrey Robinson, Thomas Stefanopoulos, and Antonio Wynn (for purposes of this count, "Plaintiffs") bring this claim individually and on behalf of the New Jersey Sub-Class against Defendants on behalf of purchasers of the Class Vehicles.

621.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

622.    Defendants are and were at all relevant times "merchants" with respect to motor

vehicles under N.J. STAT. ANN.§ 12A:2-104(1), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

623. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN.§§ 12A:2-105(1) and 2A-103(1)(h).

624. Plaintiffs and members of the New Jersey Sub-Class purchased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

625. A warranty that the Class Vehicles with the Brake Defect were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. STAT. ANN.§§ 12A:2- 314 and 2A-212.

626. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect the Brake Defect (at the time of sale and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

627. Defendants cannot disclaim their implied warranty as they knowingly sold a defective product.

628. Plaintiffs and members of the New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

629. Defendants were provided notice of the Brake Defect through their own testing, and by

numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.

630.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

631.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the New Jersey Sub-Class have been damaged in an amount to be proven at trial.

632.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-a-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the New Jersey Sub-Class. Among other things, Plaintiffs and members of the New Jersey Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the New Jersey Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

633.    Plaintiffs and members of the New Jersey Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

634.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

K.    New York Counts

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW,
## ("NYGBL") N.Y. GEN. BUS. LAW § 349 (ON BEHALF OF THE NEW YORK SUB-CLASS)

635.    Plaintiff Linda Crea, Sr. (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

636.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

637.    Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles for personal or household use.

638.    Plaintiff and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the NYGBL. See N.Y. GEN. BUS. LAW

§ 349(h).

639.    Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYGBL. See N.Y. GEN. BUS. LAW§ 349(a).

640.    The NYGBL prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." See N.Y. GEN. BUS. LAW§ 349(a).

641.    Defendants violated the NYGBL by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

642.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Brake Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the New York Sub-Class. Plaintiff and members of the New York Sub-Class could not reasonably have known about the Brake Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

643.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiff and members of the

New York Sub-Class. Defendants knew, or should have known, that the Brake Defect was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause a partial or total loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

644. Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiff and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the Brake Defect and the risks associated with the manifestation of Brake Defect. Rather than disclose the Brake Defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transferred the cost of repair or replacement of the Brake Defect to Plaintiff and members of the New York Sub-Class.

645. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Brake Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiff and members of the New York Sub- Class.

646. At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Brake Defect and its corresponding safety risk were material to Plaintiff and members of the New York Sub-Class. When Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' braking systems were free from defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Brake Defect may fail and/or create an unavoidable safety risk, Plaintiff and members of the New York Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

647. Defendants had a continuous duty to Plaintiff and members of the New York Sub-Class to refrain from unfair and deceptive practices under the NYGBL and to disclose the Brake Defect. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Brake Defect and corresponding safety risk are substantially injurious to consumers. As a

result of Defendants' knowing, intentional concealment, suppression and/or omission of the Brake Defect in violation of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Brake Defect and/or actual damages in the amount of the cost to replace the Brake Defect and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

648.    Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

649.    Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Brake Defect and corresponding safety risk.

650.    Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiff and members of the New York Sub-Class as well as the public.

651    As a direct and proximate result of Defendants' violations of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

652.    As a result of Defendants' unlawful conduct, Plaintiff and members of the New York Sub-Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief See N.Y. GEN. BUS. LAW § 349(h).

**COUNT II**

**BREACH OF EXPRESS WARRANTY**

**N.Y. U.C.C. LAW §§ 2-313, 2A-103, AND 2A-210 (ON BEHALF OF THE NEW YORK SUB-CLASS)**

653.    Plaintiff Linda Crea, Sr. (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the

Class Vehicles.

654. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

655. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW§ 2-104(1), and "sellers" and "lessors" of motor vehicles under§ 2-103(1)(d) and§ 2A-103(1)(p).

656. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW§§ 2-105(1) and 2A-103(1)(h).

657. Defendants provided Plaintiff and members of the New York Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. Under the warranties provided to Plaintiff and the New York Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendants breached these warranties.

658. Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the brake booster housing unit at any time during the useful life of the Class Vehicle. Such representations formed the basis of the bargain in Plaintiff and members of the New York Sub-Class's decisions to purchase or lease the Class Vehicles.

659. Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiff and members of the New York Sub-Class.

660. Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers

were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

661.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew of the Brake Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

662.    Plaintiff and members of the New York Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the New York Sub-Class that the Class Vehicles contained the Brake Defect and failed to provide a suitable repair or replacement of the Brake Defect free of charge within a reasonable time.

663.    On information and belief, Defendants have not suitably repaired or replaced the Brake Defect free of charge for Plaintiff and members of the New York Sub-Class despite the existence of the Brake Defect in the Class Vehicles at the time of sale or lease.

664.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

665.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class. Among other things,

Plaintiff and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

666.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

667.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

668.    Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

669.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be determined at trial.

670.    In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the New York Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within

a reasonable time.

671.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the New York Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the New York Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### N.Y. U.C.C. §§ 2-314, 2A-103, AND 2A-212 (ON
### BEHALF OF THE NEW YORK SUB-CLASS)

672.    Plaintiff Linda Crea, Sr. (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

673.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

674.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW § 2-104(1), and "sellers" and "lessors" of motor vehicles under§ 2-103(1)(d) and§ 2A-103(1)(p).

675.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW§§ 2-105(1) and 2A-103(1)(h).

676.    Plaintiff and members of the New York Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

677.    A warranty that the Class Vehicles with the Brake Defect were in merchantable

condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.Y. U.C.C. LAW§§ 2-314 and 2A-212.

678.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect-the Brake Defect-(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

679.    Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

680.    The time limits contained m Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class. Among other things, Plaintiff and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Brake Defect posed a safety risk.

681.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

682. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

683. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

684. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-a-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class. Among other things, Plaintiff and members of the New York Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the New York Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

685. Plaintiff and members of the New York Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

686. The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

L.    **North Carolina Counts**

**NORTH CAROLINA COUNT** I:

**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT**

**N.C. GEN. STAT. § 75-1.1, ET SEQ.**

**(ON BEHALF OF THE NORTH CAROLINA SUB-CLASS)**

687. Plaintiff Tina Marie (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the North Carolina Sub-Class against all Defendants.

688. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

689. Plaintiff and North Carolina Sub-Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("NCUDTPA").

690. Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

691. The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

692. In the course of their business, Defendants violated the NCUDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

693. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen § 75-16.

694. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and North Carolina Sub-Class members, about the true safety and

reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

695. Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiffs and North Carolina Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and North Carolina Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

696. Plaintiffs and North Carolina Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and North Carolina Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

697. Defendants had an ongoing duty to Plaintiffs and North Carolina Sub-Class members to refrain from unfair or deceptive practices under the NCUDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and North Carolina Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and North Carolina Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

698. Defendants' violations present a continuing risk to Plaintiffs and North Carolina Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

699. Plaintiffs and the North Carolina Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

700. Pursuant to N.C. Gen. Stat.§ 75-16, Plaintiffs and the North Carolina Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

## NORTH CAROLINA COUNT II:
## BREACH OF EXPRESS WARRANTY N.C. GEN. STAT.§§ 25-2-313
## AND 252A-210 (ON BEHALF OF THE NORTH CAROLINA SUB-CLASS)

701.     Plaintiff Tina Marie (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the North Carolina Sub-Class against all Defendants.

702.     Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

703.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

704.     All North Carolina Sub-Class members who purchased Class Vehicles are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

705.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

706.     In connection with the purchase of Class Vehicles, the Defendants provided Plaintiffs and North Carolina Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

707.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and North Carolina Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

708.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiffs and North Carolina Sub-Class members.

709.     Plaintiffs and North Carolina Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

710.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached

~~their express warranties by providing a product containing defects that were never disclosed to~~ ~~Plaintiffs and North Carolina Sub-Class members.~~

~~711.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.~~

~~712.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and North Carolina Sub-Class members have been damaged in an amount to be proven at trial.~~

~~**NORTH CAROLINA COUNT** III:~~
~~**BREACH OF IMPLIED WARRANTY OF MERCHANT ABILITY**~~
~~**N.C. GEN. STAT.§§ 25-2-314 AND 252A-212 (ON BEHALF OF THE NORTH CAROLINA SUB-CLASS)**~~

~~713.    Plaintiff Tina Marie (for the purposes of this count, "Plaintiff") brings this claim individually and on behalf of the North Carolina Sub-Class against all Defendants.~~

~~714.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.~~

~~715.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under§ 25- 2-103(1)(d).~~

~~716.    All North Carolina Sub-Class members who purchased Class Vehicles are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).~~

~~717.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).~~

718.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212.

719.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

720.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

721.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and North Carolina Sub-Class members have been damaged in an amount to be proven at trial.

M.    Ohio Counts

OHIO COUNT I:

VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT OHIO REV. CODE ANN. §§ 1345.02, *ET SEQ.* (ON BEHALF OF THE OHIO SUB-CLASS)

722.    Plaintiff Carl Clark (for purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Ohio Sub-Class against all Defendants.

723.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though

fully set forth herein.

724.    Defendants are "supplier[s]" within the meaning of the Ohio Consumer Sales Practices Act ("OCSPA"). Ohio Rev. Code Ann. § 1345.0l(C).

725.    Plaintiffs are "consumer[s]" as defined by Ohio Rev. Code Ann. § 1345.0l(D).

726.    In purchasing and/or leasing the Class Vehicles, a "consumer transaction" occurred between Plaintiffs and Defendants within the meaning of the OCSPA. Ohio Rev. Code Ann. § 1345.0l(A).

727.    The OCSPA makes unlawful any "unfair or deceptive act or practice m connection with a consumer transaction." Ohio Rev. Code Ann.§ 1345.02(A). "Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." *Id.*

728.    In the course of their business, Defendants violated the OCSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the particular standard and qualities of reliability, safety, and performance of the Class Vehicles, as detailed above.

729.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Ohio Rev. Code Ann. § 1345.02.

730.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Ohio Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true standard and quality of the Class Vehicles.

731.    Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiffs and Ohio Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Ohio Sub-Class members would not have purchased the Class Vehicles, or would

have paid significantly less for them.

732.    Plaintiffs and Ohio Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Ohio Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

733.    Defendants had an ongoing duty to Plaintiffs and Ohio Sub-Class members to refrain from unfair or deceptive practices under the OCSPA in the course of their business. Specifically, Defendants owed Plaintiffs and Ohio Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Ohio Sub- Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

734.    Defendants' violations present a continuing risk to Plaintiffs and Ohio Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

735.    Plaintiffs and the Ohio Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

736.    Pursuant to Ohio Rev. Code Ann. § 1345.02, Plaintiffs and the Ohio Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

### OHIO COUNT II:

### VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT OHIO REV. CODE §§ 4165.02, *ET SEQ.*

### (ON BEHALF OF THE OHIO SUB-CLASS)

737.    Plaintiff Carl Clark (for purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Ohio Sub-Class against all Defendants.

738.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

739.    The Ohio Deceptive Trade Practices Act ("ODTPA") makes it unlawful to engage in "a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . [u]ses deceptive representations . . . in connection with good or services." Ohio Rev. Code§ 4165.02(A).

740.    Defendants constitutes "person[s]" within the meaning of the ODTPA. Ohio Rev. Code§ 4165.0l(D).

741.    In the course of their business, Defendants violated the ODTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

742.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Ohio Rev. Code§ 4165.02.

743.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create confusion and misunderstanding in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Ohio Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true standard and quality of the Class Vehicles.

744.    Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiffs and Ohio Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Ohio Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

745.    Plaintiffs and Ohio Sub-Class members had no way of discerning that the Defendants'

representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Ohio Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

746.    Defendants had an ongoing duty to Plaintiffs and Ohio Sub-Class members to refrain from unfair or deceptive practices under the ODTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Ohio Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Ohio Sub- Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

747.    Defendants' violations present a continuing risk to Plaintiffs and Ohio Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

748.    Plaintiffs and the Ohio Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

749.    Pursuant to Ohio Rev. Code § 4165.02, Plaintiffs and the Ohio Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

### OHIO COUNT III:
### BREACH OF EXPRESS WARRANTY OHIO REV. CODE § 1302.26
### (ON BEHALF OF THE OHIO SUB-CLASS)

750.    Plaintiff Carl Clark (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Ohio Sub-Class against all Defendants.

751.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

752. Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Ohio Rev. Code§ 1302.0l(A)(4).

753. Plaintiffs are and were at all relevant times "buyer[s]" of motor vehicles under Ohio Rev. Code§ 1302.0l(A)(l).

754. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code§ 1302.0l(A)(S).

755. In connection with the purchase of Class Vehicles, Defendants provided Plaintiff and Ohio Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

756. Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Ohio Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

757. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Ohio Sub-Class members.

758. Plaintiff and Ohio Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

759. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Ohio Sub-Class members.

760. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or

disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

761.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Ohio Sub-Class members have been damaged in an amount to be proven at trial.

**OHIO COUNT IV:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY OHIO REV. CODE** §
**1302.27**
**(ON BEHALF OF THE OHIO SUB-CLASS)**

762.    Plaintiff Carl Clark (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Ohio Sub-Class against all Defendants.

763.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

764.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Ohio Rev. Code § 1302.0l(A)(4) and "merchant[s]" under § 1302.0l(A)(5).

765.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code § 1302.0l(A)(5).

766.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code § 1302.27(A).

767.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

768.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have

known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

769.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Ohio Sub-Class members have been damaged in an amount to be proven at trial.

N.    **Texas Counts**

**TEXAS COUNT I:**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT TEX. BUS. & COM. CODE §§ 17.41, ET SEQ.**

**(ON BEHALF OF THE TEXAS SUB-CLASS)**

771.    Plaintiff Ellery Richard (for purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Texas Sub-Class against all Defendants.

772.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

773.    Plaintiff and Texas Sub-Class members are persons and consumers under the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPCPA"). Tex. Bus. & Com. Code § 17.45(3)-(4).

774.    Defendants' acts and practices complained of herein were performed in the course of Defendants' "trade" or business and thus occurred in or affected "commerce," as defined in Tex. Bus. & Com. Code § 17.45(6).

775.    The TDTPCPA makes unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a).

776.    In the course of their business, Defendants violated the TDTPCPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding

the reliability, safety, and performance of the Class Vehicles, as detailed above.

777.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Tex. Bus. & Com. Code § 17.46.

778.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead, create a false impression, and cause confusion or misunderstanding in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Texas Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

779.    Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiffs and Texas Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Texas Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

780.    Plaintiffs and Texas Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Texas Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

781.    Defendants had an ongoing duty to Plaintiffs and Texas Sub-Class members to refrain from unfair or deceptive practices under the TDTPCPA in the course of their business. Specifically, Defendants owed Plaintiffs and Texas Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Texas Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

782.    Defendants' violations present a continuing risk to Plaintiffs and Texas Sub-Class

members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

783.    Plaintiffs and the Texas Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

784.    Pursuant to Tex. Bus. & Com. Code§ 17.46, Plaintiffs and the Texas Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

**TEXAS COUNT II:**

**BREACH OF EXPRESS WARRANTY TEX. BUS. & COM. CODE§ 2.313**

**(ON BEHALF OF THE TEXAS SUB-CLASS)**

785.    Plaintiff Ellery Richard (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas Sub-Class against all Defendants.

786.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

787.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Tex. Bus & Com. Code§ 2.103(4).

788.    Plaintiffs are and were at all relevant times "buyer[s]" of motor vehicles under Tex. Bus. & Com. Code§ 2.103(1).

789.    The Class Vehicles are and were at all relevant times "goods" within the meaning ofTex. Bus & Com. Code§ 2.105.

790.    In connection with the purchase of Class Vehicles, Defendants provided Plaintiff and Texas Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

791.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff

159

and Texas Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

792.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Texas Sub-Class members.

793.    Plaintiff and Texas Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

794.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Texas Sub-Class members.

795.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

796.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Texas Sub-Class members have been damaged in an amount to be proven at trial.

**TEXAS COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY TEX. BUS & COM. CODE§ 2.314**

**(ON BEHALF OF THE TEXAS SUB-CLASS)**

797.    Plaintiff Ellery Richard (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas Sub-Class against all Defendants.

798.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

799.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Tex. Bus & Com. Code§ 2.103(4) and "merchant[s]" under§ 2.104.

800.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus & Com. Code§ 2.105.

801.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code§ 2.314(a).

802.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

803.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

804.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Texas Sub-Class members have been damaged in an amount to be proven at trial.

0.    Utah Counts

## UTAH COUNT I:

## VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT UTAH CODE ANN. § 13-11-1 ET SEQ.

## (ON BEHALF OF THE UTAH SUB-CLASS)

805.    Plaintiff Sean K. Lee (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Utah Sub-Class against all Defendants.

806.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

807.    Plaintiff and Utah Sub-Class members are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5). The sale of the Class Vehicles to Plaintiff and Utah Sub-Class members were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

808.    Defendants are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

809.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

810.    In the course of their business, Defendants violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

811.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Utah CSPA.

812.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Utah Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

813.    Defendants' scheme and concealment of the Brake Defect and true characteristics of the brake booster housing units in the Class Vehicles were material to Plaintiff and Utah Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Utah Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

814.    Plaintiff and Utah Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Utah Sub-Class members did not, and could not, unravel Defendants' deception on their own.

815.    Defendants had an ongoing duty to Plaintiff and Utah Sub-Class members to refrain from unfair or deceptive practices under the Utah CSPA in the course of their business. Specifically, Defendants owed Plaintiff and Utah Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Utah Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

816.    Defendants' violations present a continuing risk to Plaintiff and Utah Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

817.    Plaintiff and Utah Sub-Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Utah CSPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

in the course of Defendants' business.

818. Pursuant to Utah Code Ann.§ 13-11-4, Plaintiff and the Utah Sub-Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Utah Sub- Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

**UTAH COUNT** II:

**BREACH OF EXPRESS WARRANTY UTAH CODE§§
70A-2-313 AND 70-2A-210 (ON BEHALF OF THE
UTAH SUB-CLASS)**

819. Plaintiff Sean K. Lee (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Utah Sub-Class against all Defendants.

820. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

821. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code§ 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under§ 70A-2-103(1)(d).

822. The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code§§ 70A-2-105(1) and 70A-2a-103(1)(h).

823. In connection with the purchase of Class Vehicles, Defendants provided Plaintiff and Utah Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

824. Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Utah Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

825. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which

164

made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Utah Sub-Class members.

826. Plaintiff and Utah Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

827. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Utah Sub-Class members.

828. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

829. As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Utah Sub-Class members have been damaged in an amount to be proven at trial.

**UTAH COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UTAH CODE§§ 70A-2-314 AND 70-2A-212**

**(ON BEHALF OF THE UTAH SUB-CLASS)**

830. Plaintiff Sean K. Lee (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Utah Sub-Class against all Defendants.

831. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

832. Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under Utah Code§§ 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under§ 70A-2-103(1)(d).

833.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code§§ 70A-2-105(1) and 70A-2a-103(1)(h).

834.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2-314 and 70A-2a-212.

835.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

836.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

837.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Utah Sub-Class members have been damaged in an amount to be proven at trial.

P.  Wisconsin Counts

WISCONSIN COUNT I:

VIOLATION OF THE WISCONSIN DECEPTIVE TRADE
PRACTICES ACT WIS. STAT.§ 100.18

(ON BEHALF OF THE WISCONSIN SUB-CLASS)

838. Plaintiff Anthony Pyles (for purposes of this count, "Plaintiff") brings this claim individually and on behalf of the Wisconsin Sub-Class against all Defendants.

839. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

840. Defendants are corporations and/or associations who maintain intent to sell and distribute merchandise for sale and/or lease within the meaning of the Wisconsin Deceptive Trade Practices Act ("WDTPA"). Wis. Stat.§ 100.18(1).

841. The WDTPA makes unlawful the "advertisement, announcement, statement or representation contain[ing] any assertion, representation or state of fact which is untrue, deceptive or misleading. Wis. Stat.§ 100.18(1).

842. In the course of their business, Defendants violated the WDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

843. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Wis. Stat.§ 100.18.

844. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Wisconsin Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

845. Defendants' scheme and concealment of the Brake Defect in the Class Vehicles were material to Plaintiffs and Wisconsin Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Wisconsin Sub-Class members would not have purchased the Class Vehicles, or

would have paid significantly less for them.

846.    Plaintiffs and Wisconsin Sub-Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Wisconsin Sub-Class members did not, and could not, unravel the Defendants' deception on their own.

847.    Defendants had an ongoing duty to Plaintiffs and Wisconsin Sub-Class members to refrain from unfair or deceptive practices under the WDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Wisconsin Sub-Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Wisconsin Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

848.    Defendants' violations present a continuing risk to Plaintiffs and Wisconsin Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

849.    Plaintiffs and the Wisconsin Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

850.    Pursuant to Wis. Stat. § 100.18, Plaintiffs and the Wisconsin Sub-Class members and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

**WISCONSIN COUNT** II:

**BREACH OF EXPRESS WARRANTY WIS. STAT.§ 402.313**

**(ON BEHALF OF THE WISCONSIN SUB-CLASS)**

851.    Plaintiff Anthony Pyles (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Wisconsin Sub-Class against all Defendants.

852.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

853.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Wis. Stat.§ 402.103(1)(d).

854.    Plaintiffs are and were at all relevant times "buyer[s]" of motor vehicles under Wis. Stat.§ 402.103(1)(a).

855.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat.§ 402.105.

856.    In connection with the purchase of Class Vehicles, Defendants provided Plaintiff and Wisconsin Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

857.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Wisconsin Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Brake Defect.

858.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Brake Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Wisconsin Sub-Class members.

859.    Plaintiff and Wisconsin Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

860.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Brake Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Wisconsin Sub-Class members.

861.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have

known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

862.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Wisconsin Sub-Class members have been damaged in an amount to be proven at trial.

**WISCONSIN COUNT III:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY WIS. STAT. § 402.314**
**(ON BEHALF OF THE WISCONSIN SUB-CLASS)**

863.    Plaintiff Anthony Pyles (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Wisconsin Sub-Class against all Defendants.

864.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

865.    Defendants are and were at all relevant times "seller[s]" with respect to motor vehicles under Wis. Stat. § 402.103(1)(d) and "merchant[s]" under § 402.104.

866.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. § 402.105.

867.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. § 402.314(1).

868.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake Defect, which may cause a partial or total loss of braking capability, rendering the Class Vehicles inherently defective and dangerous.

869.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

870.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Wisconsin Sub-Class members have been damaged in an amount to be proven at trial.

## IX VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and State Sub-Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Brake Defect in the braking systems in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

D.      Appropriate injunctive and equitable relief;

E.      A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

F.      An order awarding costs, restitution, ~~disgorgernent~~disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, overpayment damages, and out-of-pocket costs in an amount to be determined at trial;

G.      An order awarding any applicable statutory and civil penalties;

H.      A declaration that Defendants are required to engage in corrective advertising;

I.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs, expenses and attorneys' fees as permitted by law; and

K.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## ~~X~~IX.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

~~DATED: August 4, 2022~~                    ~~Respectfully submitted,~~

~~James E. Cecchi*~~
~~Caroline F. Bartlett*~~
~~Jordan M. Steele*~~                         ~~/s/ Timothy W Emery~~
~~**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY** &~~    ~~/s/ Patrick B. Reddy~~
~~**AGNELLO, P.C.**~~                         ~~Timothy W. Emery, WSBA No. 34078~~
~~5 Becker Farm Road Roseland, New Jersey 07068~~    ~~Patrick B. Reddy, WSBA No. 42092~~
~~Telephone: (973) 994-1700 Facsimile: (973)~~    ~~**EMERY REDDY, PLLC**~~
~~994-1744 jcecchi@carellabyme.corn~~         ~~600 Stewart Street, Suite 1100~~
~~cbartlett@carellabyme.com~~                 ~~Seattle, Washington 98101~~
~~jsteele@carellabyme.com~~                   ~~Telephone: 206.442.9106~~
                                             ~~Facsimile: 206.441.9711~~
                                             ~~erneryt@erneryreddy.corn~~
                                             ~~reddyp@erneryreddy.corn~~

Zachary S. Bower*
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO, P.C.
2222 Ponce DeLeon Blvd. Miami, Florida 33134
Telephone: 973-422-5593 Facsimile: 973-994-1744
zbower@carellabyme.corn

Christopher A. Seeger*
Christopher L. Ayers*
SEEGER WEISS LLP
55 Challenger Road,
6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

Kirn D. Stephens, WSBA No. 11984
Rebecca L. Solomon, WSBA No. 51520
TOUSLEY BRAIN STEPHENS, PLLC
1200 Fifth Avenue, Ste. 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
kstephens@tousley.com
rsolornon@tousley.corn

Scott P. Schlesinger*
Jeffrey L. Haberman*
Jonathan R. Gdanski*
Sarah J. Schultz*
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue Ft. Lauderdale, FL
33316 Telephone: (954) 467-8800
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com
jgdanski@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiffs and the Putative Class
* Admitted pro hac vice*

DATED: June 28, 2024
James E. Cecchi
*Pro Hac Vice application*
*forthcoming* **CARELLA, BYRNE,**
**CECCHI, BRODY & AGNELLO,**
**P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
Zachary A. Jacobs
*Pro Hac Vice application*
*forthcoming* **CARELLA, BYRNE,**
**CECCHI, BRODY & AGNELLO,**
**P.C.**
222 S. Riverside Plaza
Chicago IL  60606
Telephone: (973) 994-1700
Facsimile:    973-994-1744
zjacobs@carellabyrne.com
Christopher A. Seeger
*Pro Hac Vice application*
*forthcoming*
Christopher L. Ayers
*Pro Hac Vice application*
*forthcoming*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey
07660 Telephone: (973) 639-9100
Facsimile:             (973)
679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com
Scott P. Schlesinger
*Pro Hac Vice application*
*forthcoming*
Jeffrey L. Haberman
*Pro Hac Vice application*
*forthcoming*
Jonathan R. Gdanski
*Pro Hac Vice application*

*forthcoming*
Sarah J. Schultz
*Pro Hac Vice application*
*forthcoming* **SCHLESINGER LAW**
**OFFICES, P.A.**
1212 SE Third Avenue
Ft. Lauderdale, FL
33316
Telephone: (954) 467-8800
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com

Respectfully submitted,

/s/ Michael A. Caplan

Michael A. Caplan Georgia Bar No. 601039

T. Brandon Waddell Georgia Bar No. 252639 **CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

mcaplan@caplancobb.com

bwaddell@caplancobb.com

Timothy W. Emery
*Pro Hac Vice application forthcoming*
Patrick B. Reddy
*Pro Hac Vice application forthcoming*
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
Telephone:  206.442.9106

Facsimile: 206.441.9711

emeryt@emeryreddy.com

reddyp@emeryreddy.com

Kim D. Stephens
*Pro Hac Vice application forthcoming*
Rebecca L. Solomon
*Pro Hac Vice application forthcoming* **TOUSLEY BRAIN STEPHENS, PLLC**
1200 Fifth Avenue, Ste. 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

kstephens@tousley.com

rsolomon@tousley.com

jgdanski@schlesingerlaw.com
sarah@schlesingerlaw.com
*Attorneys for Plaintiffs and the Putative Class*

| Summary report: Litera Compare for Word 11.10.1.2 Document comparison done on 12/11/2024 9:50:21 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2022-08-10 (Dkt. 41) Second Amended Complaint(3).docx | |
| **Modified filename:** USDC Northern District of Georgia-1-28tc2077(3).docx | |
| **Changes:** | |
| Add | 661 |
| Delete | 1547 |
| Move From | 10 |
| Move To | 10 |
| Table Insert | 17 |
| Table Delete | 2 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 1 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 2248 |